# EXHIBIT A

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

FILED
8/23/2022 3:12 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH08293
Calendar, 11
19202815

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| TONI KUKOC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **2022CH08293** |
| v. | ) | Case No. _____ |
| | ) | |
| BANCA SVIZZERA ITALIANA and | ) | |
| EFG INTERNATIONAL AG, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Toni Kukoc ("Kukoc"), individually, for his Complaint against Defendant, Banca Svizzera Italiana ("BSI") and EFG International AG ("EFG"), states as follows:

### I.   NATURE OF THE CASE

1.   This action arises out of a series of transactions in the late 2000s in which Kukoc's ostensible friend and financial advisor, Paolo Banfi ("Banfi"), with the assistance of Kukoc's personal banker at BSI, Paolo Zola ("Zola"), defrauded Kukoc by stealing over $11,000,000 from Kukoc's BSI accounts.[1]

---

[1] Kukoc had various accounts at BSI. Some of the accounts were based in USD, and some were based in Swiss Francs ("CHF"). This Complaint alleges Kukoc's losses in USD. The conversion rate used is 1 CHF = 1.05 USD, which was the approximate conversion rate on August 4, 2022.

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

2.      Crucial to the looting of Kukoc's accounts was BSI's knowing participation in Banfi's fraud and misappropriation. Starting in 2004, Zola became Kukoc's personal banker. However, despite knowing that Banfi was *not* authorized to execute transactions on Kukoc's behalf without Kukoc's express consent, BSI and Zola knowingly processed transactions by Banfi to loot and encumber Kukoc's BSI accounts for millions of dollars, while keeping Kukoc completely in the dark. Zola and BSI authorized and approved each transaction in which Banfi misappropriated funds from Kukoc's BSI accounts without any documentation or direct communication from Kukoc authorizing the transactions even though BSI had direct contact information for Kukoc.

3.      As a result of BSI's knowing participation in Banfi's fraud and misappropriation and BSI's breach of duties to its customer, Kukoc lost millions of dollars that he has been unable to recover through Swiss authorities.

4.      For its part, Defendant EFG merged with and acquired all assets of BSI. As the successor to BSI, EFG is responsible for losses BSI caused Kukoc through BSI's participation in Banfi's scheme to defraud Kukoc and misappropriate millions of dollars from Kukoc's BSI accounts.

## II.    PARTIES

### A. Plaintiff

5.      Toni Kukoc is a citizen of the United States. At all times relevant to this complaint, he has resided in Highland Park, Illinois. At all times, Kukoc was the sole owner of the bank accounts that BSI helped Banfi fraudulently loot and encumber.

FILED DATE: 8/23/2022 3:12 PM  2022CH08293

**B. Defendants**

6.      Defendant Banca Svizzera Italiana was a Swiss bank headquartered in Lugano, Switzerland. Paolo Zola, a former banker at BSI, was Kukoc's personal banker who aided and abetted Banfi's fraudulent conduct.

7.      Defendant EFG International AG is a Swiss Private Bank Aktiengesellschaft (AG) headquartered in Zurich, Switzerland. "Aktiengesellschaft" is a German word that translates to "stock corporation."

8.      In February 2016, EFG announced that it would be acquiring BSI, pursuant to a merger agreement executed on February 21, 2016.

9.      EFG's merger with BSI was finalized on November 1, 2016. EFG, as BSI's successor entity, is liable for conduct perpetrated by BSI prior to the merger, such as the conduct alleged in this Complaint.

10.      EFG's combination with BSI was a merger, and not an asset purchase. For example, an EFG presentation from November 1, 2016, discussing the EFG–BSI merger notes that "[t]he combined business will have a solid capital and liquidity position" and that "[t]he combined group benefits from complementary geographic footprints, substantial scale and will offer an even broader and more attractive value proposition to clients and CROs."[2]

---

[2] EFG International, *Successful and timely closing of the acquisition of BSI* (Nov. 1, 2016), *available at* https://www.efginternational.com/doc/jcr:c5538e4f-8bc4-4d23-94b0-92ce0fad713b/20161101_EFGI_Closing_Presentation_final.pdf/lang:en/20161101_EFGI_Closing_Presentation_final.pdf.

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

11.     Under general principles of successor liability, a merged entity assumes the liabilities of the merging entities.

12.     Therefore, EFG, as BSI's successor entity and the leader of the "combined business," is liable for actionable conduct perpetrated by BSI prior to the merger, such as the conduct alleged in this Complaint.

13.     On information and belief, EFG assumed all of BSI's assets. In addition, EFG assumed certain BSI employees, including, in particular, Zola, who is currently an EFG employee.

**C.  Relevant Non-Defendant Entities**

14.     Paolo Banfi was Kukoc's "friend" and financial advisor since 1991. At the beginning of 2004, Banfi began to defraud Kukoc out of millions of dollars.

15.     Paolo Zola, a former banker at BSI, became Kukoc's personal banker in January 2004 and remained his personal contact at BSI throughout the period alleged.

**III.     JURISDICTION AND VENUE**

16.     Kukoc does not assert any federal claims or causes of action, nor is there any federal question jurisdiction.

17.     This Complaint pleads a justiciable matter. Accordingly, this Court has subject matter jurisdiction over this action pursuant to Ill. Const. art. VI, § 9.

18.     This Court has personal jurisdiction over this action pursuant to 735 ILCS 5/2-209. Throughout the time period relevant to this Complaint during which BSI helped Banfi misappropriate millions of dollars from Kukoc's BSI accounts, Kukoc was an

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

Illinois resident. All injuries associated with Defendants' conduct were suffered in Illinois. Kukoc's Highland Park address was specifically identified as the contact information and place of residence in BSI's internal records and customer identification information.

19.    Moreover, specific events giving rise to Kukoc's cause of action took place in Illinois. In January 2007, Kukoc signed BSI banking documents in Chicago, Illinois. BSI, through Zola, misrepresented that BSI was in Kukoc's presence in Chicago, Illinois, when Kukoc signed those BSI banking documents in January 2007.

20.    The conduct giving rise to personal jurisdiction over BSI is imputed to EFG via principles of successor liability. Thus, this Court has personal jurisdiction over EFG.

21.    Further, this is the only forum in which Kukoc can obtain justice for the actions alleged. Kukoc has tried to obtain relief in Switzerland, but those efforts have been unsuccessful.

22.    Due to the fraudulent conduct alleged in this Complaint, Kukoc does not have sufficient assets to retain a Swiss lawyer to pursue claims in Switzerland.

23.    In addition, Swiss banks have a longstanding history of a cozy relationship with Swiss courts, legislators, and policymakers. This makes Kukoc's prospects for justice in Switzerland against a Swiss bank tenuous, even if Kukoc had the resources to pursue his claims in Switzerland.[3]

---

[3] *See, e.g.*, Nick Shaxson, Tax Justice Network, *The Swiss banking clean-up is a mirage* (Feb. 22, 2022), *available at* https://taxjustice.net/2022/02/22/the-swiss-banking-clean-up-is-a-mirage/ ("The Swiss laws might look good, to the casual observer. But practically, . . . Switzerland has carefully carved out exceptions to help their bankers – and the world's criminal classes.").

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

24.     Venue is appropriate in this county pursuant to 735 ILCS 5/2-101. Specifically, part of the conduct and events giving rise to Kukoc's Complaint occurred in Cook County.

## IV.   FACTUAL BACKGROUND

25.     While serving as Kukoc's personal banker at BSI, Zola helped Banfi defraud Kukoc out of millions of dollars. The principal means by which Zola aided and abetted Banfi's fraud was by executing transactions on Kukoc's account, at the request of Banfi, for which Zola knew certain authorization protocols were required and not followed. These protocols were designed to protect Kukoc from fraudulent activity. Nevertheless, Zola executed transactions to Kukoc's detriment, knowing that the transactions were not authorized as required by BSI. At times, Zola made affirmative misrepresentations in BSI files to execute the fraudulent transactions that Banfi wanted in order to raid Kukoc's BSI accounts.

26.     First, Banfi and Zola worked together to deceive Kukoc and encumber Kukoc's BSI accounts with a mortgage loan of $7,560,000 (CHF 7,200,000). Unbeknownst to Kukoc, Banfi wanted to obtain the loan to support a hotel project in Madulain, Switzerland. Neither Zola nor Banfi ever informed Kukoc that his BSI accounts would be encumbered with the mortgage, and Kukoc never received any of the loan proceeds. To execute the mortgage, Zola knowingly misrepresented compliance with BSI's procedures designed to prevent the misappropriation of BSI client funds. Specifically, Zola misrepresented, with his signature, that he was in Kukoc's presence in Chicago, Illinois,

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

when Kukoc executed documentation related to the mortgage. Zola and Kukoc never actually met in person in Chicago for any reason, much less for Kukoc to sign mortgage documents. Ultimately, Kukoc was forced to pay the entire loan amount from his BSI accounts.

27. In addition to the fraudulent mortgage, Banfi and Zola worked together to execute a series of unauthorized money transfers in which millions more dollars were transferred from Kukoc's BSI accounts into Banfi's pockets. These transfers were executed exclusively by Banfi and Zola. Kukoc had no knowledge of the transfers and Kukoc did not approve of them. Moreover, Zola never informed Kukoc about the transfers.

28. BSI, as Zola's employer, is liable for conduct that Zola performed in the course of executing his employment duties. This includes liability for the conduct alleged herein. Moreover, EFG, as BSI's successor entity, assumed BSI's liabilities, including BSI's liability for Zola's actions.

29. In addition, BSI failed to monitor or supervise Zola in his administration of Kukoc's BSI accounts. While serving as Kukoc's personal banker, Zola routinely failed to follow BSI's safeguards designed to prevent fraudulent activity on customer accounts. Had BSI properly monitored Zola to ensure he was following BSI's security protocols, Zola and Banfi would have been unable to steal millions of dollars from Kukoc.

30. During its existence, BSI had a pattern of failing to monitor its employees to ensure compliance with BSI's policies, as well as applicable laws and regulations.

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

31.     For example, on March 30, 2015, BSI became the first Swiss bank to reach a resolution with the Department of Justice ("DOJ") under the DOJ's Swiss Bank Program.[4] Exhibit A to the BSI-DOJ non-prosecution agreement notes: "For decades prior to and through in or about 2013, BSI conducted a U.S. cross-border banking business that aided and assisted thousands of U.S. clients in opening and maintaining undeclared accounts in Switzerland and concealing the assets and income they held in these accounts."[5]

32.     As another example, on May 24, 2016, the Swiss Financial Market Supervisory Authority ("FINMA") concluded that BSI was "in serious breach of money laundering regulations" in its dealings in Malaysia.[6]

33.     As part of FINMA's investigation of BSI, FINMA determined, among other matters: (1) that BSI "repeatedly, systematically and for an extended period breached its obligation to establish the necessary documentation for transactions with increased risks"[7]; (2) that a BSI client advisor was "repeatedly notably uncooperative in terms of compliance, particularly in dealing with the inadequate clarification of transactions" and that "[m]anagement was aware of the situation but gave their support to the client

---

[4] Department of Justice, *BSI SA of Lugano, Switzerland, is First Bank to Reach Resolution Under Justice Department's Swiss Bank Program* (Mar. 30, 2015), *available at* https://www.justice.gov/opa/pr/bsi-sa-lugano-switzerland-first-bank-reach-resolution-under-justice-department-s-swiss-bank.
[5] Exhibit A to BSI Non-Prosecution Agreement (Mar. 30, 2015), ¶ 9, *available at* https://www.justice.gov/file/385821/download.
[6] FINMA Press Release pg. 1, *BSI in serious breach of money laundering regulations* (May 24, 2016), *available at* https://www.finma.ch/~/media/finma/dokumente/dokumentencenter/8news/medienmitteilungen/2016/05/20160524-mm-verfahren-bsi_de.pdf?sc_lang=en.
[7] *Id.* at 2.

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

advisor instead of the Compliance department"[8]; (3) that the "management of the BSI group . . . did not adequately supervise its subsidiary in Singapore"; (4) that "BSI was [] in serious breach of the requirements for proper business conduct"[9]; and (5) that "[r]ight up to top management level there was a lack of critical attitude needed to identify, limit and oversee [] substantial legal and reputational risks."[10]

34.     FINMA also noted that it "approved the full takeover of BSI by EFG International under the condition that BSI must be completely integrated and dissolved within 12 months."[11]

35.     In an October 22, 2020 press release, EFG noted that FINMA reduced its disgorgement penalty against BSI from CHF 95 million to CHF 70 million, but that "EFG's financial results will not be impacted."[12]

36.     Zola is currently an employee of EFG. Zola has worked at EFG since EFG's merger with, and absorption of, BSI.

## V.    FACTUAL ALLEGATIONS

37.     Kukoc became a customer of BSI on December 9, 1991. Kukoc became a BSI customer on the advice of Kukoc's ostensible friend and financial advisor, Banfi. Banfi was a well-known financial adviser to European athletes, and in particular, European

---

[8] *Id.* at 3.
[9] *Id.*
[10] *Id.*
[11] *Id.* at 4.
[12] EFG Media Release, *FINMA decision in BSI legacy case* (Oct. 22, 2020), *available at* https://www.efginternational.com/doc/jcr:626206f2-f709-464f-93a5-a6e7ec4d6032/EFG%20International%20Media%20Release_221020_EN.pdf/lang:en/EFG%20International%20Media%20Release_221020_EN.pdf.

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

professional basketball players. The funds held in Kukoc's BSI accounts were principally funds Kukoc made playing professional basketball in Europe before he came to the United States to play for the Chicago Bulls.

38.     Banfi was previously convicted for misappropriating Kukoc's money, as well as the money of other athletes who Banfi worked with.

39.     From 1991 through December 2003, Kukoc's personal banker at BSI was a BSI employee named Giacomo Venturato. While Venturato served as Kukoc's personal banker, Kukoc did not have any issues with fraudulent activity on his BSI accounts.

40.     Starting in January 2004, Zola became Kukoc's personal banker at BSI.

41.     On December 19, 2006, Zola prepared documents for Kukoc authorizing Kukoc to obtain a mortgage loan from BSI in the amount of $7,560,000 (CHF 7,200,000).

42.     However, even though the mortgage would encumber Kukoc's BSI holdings, Zola prepared the mortgage documents at the request of Banfi, not Kukoc. Kukoc did not see the mortgage documents until years later. Moreover, Zola never told Kukoc anything about the $7,560,000 (CHF 7,200,000) mortgage until 2011, more than four years after Zola worked with Banfi to approve the mortgage.

43.     The mortgage documents purport to show that Kukoc signed some of the mortgage documents in Lugano, Switzerland, in December 2006. However, Kukoc was not in Lugano, Switzerland, at this time, and never signed the documents. Instead, upon information and belief, either Banfi, Zola, or someone acting under their direction forged Kukoc's signature. Unbeknownst to Kukoc, Banfi wanted to obtain the loan to support a hotel project in Madulain, Switzerland.

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

44.     In January 2007 in Kukoc's home in Chicago, Kukoc signed a BSI application for opening a custody account. At the time, Banfi explained to Kukoc that the document was necessary to finalize arrangements for Kukoc's hotel, which was soon to be opened. Kukoc was never informed that Banfi was misappropriating Kukoc's funds, nor that Kukoc would never obtain any interest in the hotel at all.

45.     BSI's authorization protocols stated that, for a customer such as Kukoc to open a new account (such as the $7,560,000 (CHF 7,200,000) mortgage), the customer must sign the documents in the presence of a bank employee (in this case, Zola).

46.     The documents show that Zola confirmed, with his signature, that he was in Kukoc's presence when Kukoc signed the documents in Chicago, Illinois. However, Zola was not in Chicago, Illinois, around this time. Thus, Zola's signature constitutes an affirmative misrepresentation that Zola made to help Banfi in his scheme to defraud Kukoc and misappropriate Kukoc's financial assets. Zola's willingness to falsify his signature suggests that he knew Banfi was misappropriating Kukoc's funds. At the very least, Zola and BSI knowingly transferred Kukoc's assets without requiring Banfi to comply with appropriate bank procedures designed to prevent the unauthorized transfer of client funds, which is precisely what occurred here.

47.     Furthermore, on June 1, 2004, Kukoc signed and caused to be delivered to Zola and BSI a power-of-attorney document requiring that future transfers and disbursements for the hotel project be made only in instances of a written instruction signed by two individuals to indicate dual authorization.

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

48.     Yet, in addition to the fraudulent mortgage, between March 2004 and July 2007, Banfi worked with Zola to execute more than 300 money transfer orders in which millions more dollars were transferred out of Kukoc's accounts at BSI and into Banfi's pockets. All of these transfers were executed exclusively between Banfi and Zola following telephone calls by Banfi instead of the dual-authorization written instructions required by Kukoc's June 1, 2004 power of attorney to Banfi. Kukoc had no knowledge of the transfers, Kukoc did not approve them, and Zola, despite being Kukoc's personal banker, never informed Kukoc about the transfers.

49.     Moreover, Zola—and therefore BSI—knew that Banfi was not authorized to transfer funds out of Kukoc's BSI accounts. And Zola knew that Banfi transferring money out of Kukoc's accounts, without Kukoc's consent, was contrary to BSI's policies and procedures designed to prevent the unauthorized transfer of client funds. Nevertheless, Zola and BSI knowingly executed a series of unauthorized money transfers from Kukoc's accounts to Banfi's pockets, all while keeping Kukoc in the dark.

50.     Despite the evidence incriminating Zola, on October 2, 2020, a Lugano state attorney announced that Zola would not be criminally charged. However, the Lugano state attorney also concluded that neither Zola nor Banfi had Kukoc's power of attorney that would allow Banfi or Zola to make any kind of money transfers from Kukoc's bank accounts.

51.     Kukoc first learned of his potential causes of action against BSI in 2014. Prior to this time, Kukoc reasonably believed that BSI followed the customer-safety protocols that BSI agreed to when Kukoc decided to deposit his money with BSI.

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

52.     Starting on January 22, 2014, Kukoc filed requests for debt enforcement proceedings in Switzerland. Kukoc filed his last request for debt enforcement proceedings on December 28, 2021. Under Swiss law, Kukoc's request for debt enforcement proceedings tolls the applicable statute of limitations, making all of Kukoc's claims against BSI and EFG timely through at least September 23, 2022.

53.     Moreover, in light of Kukoc's ongoing requests for debt enforcement proceedings, BSI and EFG are estopped from asserting a statute of limitations defense.

## VI.   SUCCESSOR LIABILITY

### COUNT I
### (Aiding and Abetting Fraud by BSI, and, via successor liability, EFG)

54.     Kukoc repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

55.     Banfi represented himself as Kukoc's friend and financial advisor who would help Kukoc responsibly manage Kukoc's money. Banfi made these representations to cozy himself up with Kukoc, ultimately so Banfi could use his position of trust to steal Kukoc's money. As Kukoc's financial advisor, Banfi owed Kukoc fiduciary duties.

56.     Kukoc relied on Banfi to manage Kukoc's money responsibly, and not to enrich himself at Kukoc's expense.

57.     Banfi's representations as Kukoc's friend and financial advisor were false, and Banfi knew they were false. Instead of responsibly managing Kukoc's money, Banfi

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

worked closely with BSI and Zola over the course of several years to steal millions of dollars from Kukoc's BSI accounts.

58.    Banfi's scheme to defraud Kukoc would not have been possible without knowing and substantial assistance from BSI and Zola. Indeed, as Kukoc's personal banker at BSI, Zola had to approve and authorize every instance in which Banfi personally enriched himself with money from Kukoc's BSI accounts. BSI, given that Kukoc was a client, had a duty of care to protect Kukoc's BSI funds from misappropriation.

59.    Zola and BSI knowingly and substantially assisted Banfi's fraudulent conduct. First, despite being Kukoc's (and not Banfi's) personal banker, Zola authorized withdrawals from Kukoc's BSI accounts that went into Banfi's pockets. All of these transfers were executed exclusively between Banfi and Zola, and BSI and Zola authorized the transfers even though they knew that the transfers did not comply with BSI's procedures designed to prevent unauthorized withdrawals of client funds. Kukoc did not have knowledge of the transfers, Kukoc did not approve them, and Zola, despite being Kukoc's personal banker, never informed Kukoc of the transfers.

60.    Without Zola's approval and execution of the transfers, Banfi would not have been able to misappropriate Kukoc's money. Zola assisted Banfi's fraud despite the fact that Zola's actions were contrary to BSI's policies, and despite the fact that Zola knew that Banfi was not authorized to withdraw money from Kukoc's BSI accounts, or otherwise to encumber Kukoc's BSI accounts.

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

61.     Further, to assist Banfi in his fraudulent conduct, Zola at times made affirmative misrepresentations on the bank documents that authorized Banfi's plundering of Kukoc's accounts. For example, to execute the fraudulent mortgage on Kukoc's BSI accounts, Zola confirmed, with his signature, that he was in Kukoc's presence when Kukoc signed mortgage documents in Chicago, Illinois, in January 2007. However, Zola was not in Chicago, Illinois, around this time.

62.     Zola's willingness to work closely with Banfi over the course of four years to steal money from Kukoc's accounts (without informing Kukoc of the transfers, even though Kukoc, not Banfi, was Zola's client), coupled with Zola's willingness to make misrepresentations on banking documents to further Banfi's fraud, suggests that Zola (and by extension, BSI) had knowledge of Banfi's fraudulent scheme to steal money from Kukoc, as well as an awareness of their role in helping Banfi misappropriate Kukoc's assets.

63.     Because Zola was acting within the scope of his employment duties while assisting Banfi in his scheme to defraud Kukoc, Zola's knowledge and assistance of Banfi's fraud is imputed to BSI.

64.     EFG, as BSI's successor entity, is liable for BSI's conduct in aiding and abetting Banfi's fraud.

## COUNT II
### (Aiding and Abetting Civil Theft by BSI, and, via successor liability, EFG)

65.     Kukoc repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

66.     Banfi orchestrated a series of unauthorized transactions from Kukoc's BSI accounts that ultimately transferred millions of dollars from Kukoc to Banfi's pockets.

67.     Banfi stole this money from Kukoc—Kukoc did not know of the transfers, was never informed of them, and did not authorize them. Banfi used his position of trust, and BSI's willingness to execute the unauthorized transactions, to misappropriate the money from Kukoc's BSI accounts.

68.     Zola and BSI substantially assisted Banfi in his theft of Kukoc's money from Kukoc's BSI accounts. Despite lacking proper authorization, Zola had to approve and execute every instance in which Banfi misappropriated money from Kukoc's BSI accounts. Indeed, without Zola's (and BSI's) involvement, Banfi could not have stolen any money from Kukoc's BSI accounts.

69.     BSI, given that Kukoc was a client, had a duty of care to protect Kukoc's BSI funds from misappropriation.

70.     Zola worked closely with Banfi over the course of four years to steal money from Kukoc's accounts. During this time, Zola never informed Kukoc of the transfers, even though Kukoc, not Banfi, was BSI's client. Moreover, Zola knew that Banfi lacked the authority to transfer funds out of Kukoc's BSI accounts, but nevertheless knowingly executed transfers that did not comply with BSI's safeguards designed to prevent the unauthorized withdrawal of client funds. Finally, at times, Zola made affirmative misrepresentations on banking documents to help Banfi steal Kukoc's money. These facts suggest that Zola (and by extension, BSI) had knowledge of Banfi's theft of Kukoc's BSI

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

assets, as well as an awareness of BSI's role in helping Banfi misappropriate Kukoc's assets.

71.     Because Zola was acting within the scope of his employment duties while assisting Banfi in his theft of Kukoc's BSI assets, Zola's knowledge and assistance of Banfi's theft are imputed to BSI.

72.     EFG, as BSI's successor entity, is liable for BSI's conduct in aiding and abetting Banfi's theft.

<u>COUNT III</u>
**(Aiding and Abetting Breach of Fiduciary Duty by BSI, and, via successor liability, EFG)**

73.     Kukoc repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

74.     Banfi was Kukoc's financial advisor. Accordingly, Kukoc placed Banfi in a position of trust, and Banfi owed Kukoc fiduciary duties.

75.     Banfi violated the fiduciary duties he owed Kukoc by abusing his position of trust to steal money from Kukoc's BSI accounts.

76.     Zola (and by extension, BSI), substantially assisted Banfi's breach of fiduciary duties. Without Zola's authorizations, Banfi would not have been able to enrich himself with money from Kukoc's BSI accounts.

77.     Zola (and by extension, BSI) had knowledge of the fiduciary relationship between Zola and Kukoc. Zola knew that Banfi was acting as Kukoc's financial advisor. Accordingly, Zola knew that Banfi was Kukoc's fiduciary. Moreover, BSI, given that

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

Kukoc was a client, had a duty of care to protect Kukoc's BSI funds from misappropriation.

78.     Zola knew that Banfi was not authorized to remove money from Kukoc's BSI accounts. Nevertheless, Zola worked closely with Banfi over the course of four years to steal money from Kukoc's accounts. During this time, Zola never informed Kukoc of the transfers, even though Kukoc, not Banfi, was Zola's client. At times, Zola made affirmative misrepresentations on banking documents to help Banfi steal Kukoc's money. These facts suggest that Zola (and by extension, BSI) had knowledge of Banfi's fiduciary breaches, but nevertheless assisted Banfi in his theft of Kukoc's BSI assets. Moreover, these facts suggest that Zola and BSI were aware of their role in helping Banfi misappropriate Kukoc's assets.

79.     Because Zola was acting within the scope of his employment duties while assisting Banfi in breaching fiduciary duties owed to Kukoc, Zola's knowledge and assistance of Banfi's fiduciary breaches are imputed to BSI.

80.     EFG, as BSI's successor entity, is liable for BSI's conduct in aiding and abetting Banfi's breaches of fiduciary duties.

## <u>COUNT IV</u>
**(Breach of Contract by BSI, and, via successor liability, EFG)**

81.     Kukoc repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

FILED DATE: 8/23/2022 3:12 PM    2022CH08293

82.    When Kukoc decided to entrust his money with BSI, Kukoc and BSI executed various agreements. In one of these agreements, BSI agreed to follow protocols to prevent the misappropriation of Kukoc's money.

83.    In particular, BSI agreed to follow authorization protocols to prevent the unauthorized transfer of Kukoc's money. Under these protocols, BSI agreed to obtain Kukoc's express consent before any money was transferred from Kukoc's BSI accounts, or before Kukoc's BSI accounts were encumbered.

84.    BSI, through Zola, breached this agreement by working with Banfi to execute unauthorized withdrawals from Kukoc's BSI accounts (without Kukoc's express consent).

85.    BSI, though Zola, also breached this agreement by allowing Banfi to encumber Kukoc's accounts with the $7,560,000 (CHF 7,200,000) mortgage that Kukoc did not expressly authorize.

86.    Furthermore, Kukoc's June 1, 2004 power of attorney to Banfi required dual-authorization written instructions for any future transfers and disbursements for the hotel project.

87.    BSI, through Zola, breached its agreement to follow authorization protocols when it worked with Banfi to execute hundreds of money transfer orders, totaling millions of dollars, following telephone calls by Banfi instead of the dual-authorization written instructions required by Kukoc's June 1, 2004 power of attorney.

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

88.     Kukoc fully performed under the agreement by depositing his money with BSI under the expectation that BSI would comply with its authorization protocols designed to prevent the unauthorized transfer of client money.

89.     Because BSI executed unauthorized transactions on Kukoc's BSI accounts, in breach of the authorization protocols that BSI agreed to follow, Kukoc lost millions of dollars.

90.     EFG, as BSI's successor entity, is liable for the damages Kukoc incurred caused by BSI's contractual breaches.

## PRAYER FOR RELIEF

WHEREFORE, Kukoc respectfully requests that this Court enter a judgment in his favor and against EFG that includes the following relief:

A.     An award of compensatory damages to be established at trial, including, but not limited to, the value of the money that was misappropriated and encumbered from Kukoc's BSI accounts by Banfi and BSI from 2004–2007;

B.     An award of pre- and post-judgment interest;

C.     An award of the costs incurred in instituting and prosecuting this action; and

D.     Such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Kukoc demands a trial by jury for all matters triable by jury.

FILED DATE: 8/23/2022 3:12 PM   2022CH08293

Respectfully submitted,

Scott F. Hessell (No. 6275119)
shessell@sperling-law.com
William M. Strom (No. 6314092)
wstrom@sperling-law.com
SPERLING & SLATER, P.C.
55 West Monroe Street
Chicago, IL  60603
Phone: 312-641-3200
Fax: 312-641-6492

*Attorneys for Plaintiff Toni Kukoc*