**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TONI KUKOC,

                Plaintiff,

     v.

BANCA SVIZZERA ITALIANA and
EFG INTERNATIONAL AG,

                Defendants.

Case No. 23 C 261

Judge Sharon Johnson Coleman

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS**

Jonathan S. Quinn (jquinn@nge.com)
Andrew G. May (amay@nge.com)
Benjamin Boris (bboris@nge.com)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL  60602-3801
(312) 269-8000

*Counsel for Defendants BSI SA,
incorrectly named as Banca Svizzera
Italiana, and EFG International AG*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

ARGUMENT ................................................................................................................. 5

I.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2) ............ 5

     A.     The Court Lacks Specific Personal Jurisdiction Over Defendants ........... 6

II.     THE DOCTRINE OF FORUM NON CONVENIENS REQUIRES THAT
PLAINTIFF'S CLAIMS BE LITIGATED IN SWITZERLAND ....................... 9

     A.     The Swiss Forum Selection Clause Controls ............................................ 9

     B.     Switzerland Is an Available and Adequate Forum and the Public
and Private Factors Weigh in Favor of Switzerland Being the
Forum for this Litigation ......................................................................... 11

          1.     Switzerland is an "available and adequate" forum ..................... 11

          2.     Public and Private Interest Factors Weigh in Favor of
Dismissal to Switzerland ............................................................. 13

III.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) ......... 17

     A.     Plaintiff's Claims Are Barred By The Illinois Statute Of
Limitations .............................................................................................. 17

          1.     Plaintiff's Aiding and Abetting Claims are Barred by the
Five-Year Statute of Limitations ................................................. 17

          2.     Plaintiff's Breach of Contract Claim is Barred by the Ten-
Year Statute of Limitations ......................................................... 19

     B.     Plaintiff's Claims Are Substantively Deficient ...................................... 20

          1.     Plaintiff Fails to Adequately Plead A Claim For Aiding
And Abetting Fraud Under Illinois Law ...................................... 21

          2.     Plaintiff Fails to Adequately Plead A Claim For Breach Of
Contract Under Illinois Law ........................................................ 23

     C.     Plaintiff Fails to Adequately Plead A Theory Of Successor
Liability And Thus All Causes Of Action Against EFG Should Be
Dismissed ................................................................................................ 25

          1.     Plaintiff's Claims of Successor Liability Fail Under Swiss
Law ............................................................................................... 25

          2.     Plaintiff's Claims of Successor Liability Fail Under Illinois
Law ............................................................................................... 26

CONCLUSION ............................................................................................................ 28

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*68th Street Site Work Group v. Airgas, Inc.*,
   No. SAG-20-3385, 2021 U.S. Dist. LEXIS 176789 (D. Md. Sept. 16, 2021).........................28

*In re Alcon Shareholder Litigation*,
   719 F. Supp. 2d 263 (S.D.N.Y. 2010)....................................................................................12

*In re Automotive Refinishing Paint. Antitrust Litig.*,
   358 F.3d 288 (3d Cir. 2004)...................................................................................................16

*Baker Dental Corp. v. Aurex Dental, Inc.*,
   No. 13 CV 8181, 2014 U.S. Dist. LEXIS 123851 (N.D. Ill. Sept. 5, 2014).............................7

*Baxi v. Ennis Knupp & Assocs.*,
   Case No. 10-cv-6346, 2011 U.S. Dist. LEXIS 99857 (N.D. Ill. Sept. 2, 2011) ...............26, 27

*Bovinett v. HomeAdvisor, Inc.*,
   Case No. 17 C 6229, 2018 U.S. Dist. LEXIS 39404 (N.D. Ill. Mar. 9, 2018) .......................26

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*,
   Case No. 16 CV 10969, 2018 U.S. Dist. LEXIS 245714 (N.D. Ill. Sept. 7,
   2018) ................................................................................................................................24, 25

*Broadmark Capital Corp. v. GlobalNet, Inc.*,
   169 F. Supp. 2d 873 (N.D. Ill. 2001) ....................................................................................20

*Brown Bark III, L.P. v. Haver*,
   219 Cal. App. 4th 809 (Cal. Ct. App. 2013) ..........................................................................25

*Bryant v. Mufflers 4 Less III, Inc.*,
   Case No. 1:19-cv-03238, 2020 U.S. Dist. LEXIS 139925 (N.D. Ill. Aug. 5,
   2020) ......................................................................................................................................17

*Burke v. Nationstar Mortg., LLC*,
   Case No. 21-cv-1549, 2022 U.S. Dist. LEXIS 54765 (N.D. Ill. Mar. 25, 2022)..............21, 22

*CBF Indústria de Gusa S/A v. Amci Holdings, Inc.*,
   13-cv-2581, 2023 U.S. Dist. LEXIS 6916 (S.D.N.Y. Jan. 13, 2023) .....................................26

*Cenco Inc. v. Seidman & Seidman*,
   686 F.2d 449 (7th Cir. 1982) .................................................................................................21

*Colman v. Greenfield*,
    Case No. 05 C 3894, 2005 U.S. Dist. LEXIS 23498 (N.D. Ill. Oct. 11, 2005) ................22, 23

*Continental Assurance Co. v. Geothermal Resources Int'l, Inc.*,
    Case No. 89 C 8858, 1991 U.S. Dist. LEXIS 13925 (N.D. Ill. Sept. 26, 1991) .....................18

*Corridor Capital LLC v. Perla Global Capital Advisors, LLC*,
    No. 15 C 5757, 2016 U.S. Dist. LEXIS 17730 (N.D. Ill. Feb 12, 2016) ..........................10, 11

*Dickson Marine v. Air Sea Broker*,
    969 F. Supp. 389 (E.D. La. 1997) .........................................................................................12

*Dobrowolski v. Intelius, Inc.*,
    No. 17 CV 1406, 2017 U.S. Dist. LEXIS 138587 (N.D. Ill. Aug. 29, 2017) .......................6, 9

*Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*,
    No. 06 C 3183, 2007 U.S. Dist. LEXIS 80130 (N.D. Ill. Oct. 30, 2007) ...............................25

*Grabianski v. Bally Total Fitness Holding Corp.*,
    891 F. Supp. 2d 1036 (N.D. Ill. 2012) ............................................................................23, 24

*Greenhill v. Vartanian*,
    917 F.3d 984 (7th Cir. 2019) ........................................................................................17, 18

*United States ex rel. Gross v. Aids Research Alliance-Chicago*,
    415 F.3d 601 (7th Cir. 2005) ...............................................................................................22

*Hefferman v. Bass*,
    467 F.3d 596 (7th Cir. 2006) ...............................................................................................21

*Heiman v. Bimbo Foods Bakeries Distrib. Co.*,
    No. 17 CV 4065, 2017 U.S. Dist. LEXIS 172183 (N.D. Ill. Oct. 18, 2017) ..........................17

*Hobart Corp. v. Dayton Power & Light Co.*,
    Case No. 3:13-cv-115, 2014 U.S. Dist. LEXIS 20952 (S.D. Ohio Feb. 18,
    2014) ....................................................................................................................................27

*Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.*,
    523 F.2d 543 (7th Cir. 1975) ...............................................................................................27

*Hogan v. Amazon.com, Inc.*,
    Case No. 21 C 3169, 2022 U.S. Dist. LEXIS 58347 (N.D. Ill. Mar. 30, 2022) .....................20

*ISA Chi. Wholesale, Inc. v. Swisher Int'l, Inc.*,
    Case No. 08-CV-6538, 2009 U.S. Dist. LEXIS 88779 (N.D. Ill. Sept. 25,
    2009) ..............................................................................................................................10, 11

*Jimenez v. Illinois*,
 Case No. 11-cv-4707, 2012 U.S. Dist. LEXIS 6993 (N.D. Ill. Jan. 18, 2012) ...................... 18

*JP Morgan Chase Bank v. Kowalski*,
 No. 19-cv-05770, 2020 U.S. Dist. LEXIS 205649 (N.D. Ill. Nov. 4, 2020) ......................... 18

*LaSala v. UBS, AG*,
 510 F. Supp. 2d 213 (S.D.N.Y. 2007) ........................................................................... 12, 20

*Lexington Ins. Co. v. Hotai Ins. Co.*,
 938 F.3d 874 (7th Cir. 2019) .................................................................................... 5, 6, 9

*Life Spine, Inc. v. Aegis Spine, Inc.*,
 No. 19 CV 7092, 2021 U.S. Dist. LEXIS 120962 (N.D. Ill. June 29, 2021) ......................... 24

*Livingston v. Hoffmann-La Roche Inc.*,
 No. 17 C 7650, 2018 U.S. Dist. LEXIS 36788 (N.D. Ill. Mar. 7, 2018) ................................. 7

*Robbins ex rel. Martins v. Physicians for Women's, LLC*,
 90 A.3d 925 (Conn. 2014) ................................................................................................ 25

*Medicor AG v. Arterial Vascular Eng'g*,
 No. 97-15465, 1998 U.S. App. LEXIS 5528 (9th Cir. Mar. 19, 1998) ................................ 11

*Michael Lewis Co. v. Int'l Consol. Airlines Grp., S.A.*,
 2022 U.S. Dist. LEXIS 50349 (N.D. Ill. Mar. 22, 2022) ................................................. 8, 14

*Mitek Corp. v. Diedrich*,
 18 C 1453, 2018 U.S. Dist. LEXIS 179099 (N.D. Ill. Oct. 18, 2018) ................................ 6, 9

*Mueller v. Apple Leisure Corp.*,
 880 F.3d 890 (7th Cir. 2018) ................................................................................... 9, 10, 13

*N. Ins. Co. v. Silverton Marine Corp.*,
 No. 10 CV 345, 2010 U.S. Dist. LEXIS 62112 (N.D. Ill. June 23, 2010) ............................ 23

*NewSpin Sports, Ltd. Liability Co. v. Arrow Electronics, Inc.*,
 910 F.3d 293 (7th Cir. 2018) ............................................................................... 17, 18, 19

*Northern Grain Mktg., LLC v. Greving*,
 743 F.3d 487 (7th Cir. 2014) ................................................................................. 5, 6, 7, 8

*Perdue v. Hy-Vee, Inc.*,
 455 F. Supp. 3d 749 (C.D. Ill. 2020) ............................................................................... 24

*Philips Med. Sys. (Cleveland), Inc. v. Buan*,
 No. 19-cv-02648, 2021 U.S. Dist. LEXIS 140744 (N.D. Ill. July 28, 2021) ........................ 14

*Rosario Veiga v. World Meteorological Organisation*,
    486 F. Supp. 2d 297 (S.D.N.Y. 2007) ................................................................. 12

*Schwarz v. Sellers Mkts., Inc.*,
    812 F. Supp. 2d 932 (N.D. Ill. 2011) ................................................................. 10

*SEC v. Stanford Int'l Bank, Ltd.*,
    776 F. Supp. 2d 323 (N.D. Tex. 2011) .............................................................. 16

*Singleton v. Chicago Sch. Reform Bd. of Trustees of the Bd. of Educ.*,
    2000 U.S. Dist. LEXIS 8484 (N.D. Ill. June 13, 2000) ...................................... 8

*Siswanto v. Airbus Americas, Inc.*,
    No. 15-CV-5486, 2016 U.S. Dist. LEXIS 171027 (N.D. Ill. Dec. 9, 2016) ......... 13

*Stroitelstvo Bulg. Ltd. v. Bulgarian-American Enter. Fund*,
    589 F.3d 417 (7th Cir. 2009) ....................................................................... *passim*

*Szplett v. Kenco Logistic Services, LLC*,
    No. 19 C 2500, 2020 U.S. Dist. LEXIS 70661 (N.D. Ill. Apr. 22, 2020) ........... 21

*Triple Crown Am., Inc. v. Biosynth AG*,
    Civ. No. 96-CV-7476, 1998 WL 227886 (E.D. Pa. Apr. 30, 1998) .................... 16

*Troya Int'l, Ltd. Sti. v. Bird-X, Inc.*,
    Case No. 15 C 9785, 2017 U.S. Dist. LEXIS 201223 (N.D. Ill. Dec. 7, 2017) .... 19

*Walden v. Fiore*,
    571 U.S. 277 (2014) ....................................................................................... 6, 9

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) ........................................................................ 11

**Statutes**

735 ILCS 5/13-205 ............................................................................................... 18

735 ILCS 5/13-206 .......................................................................................... 19, 20

805 ILCS 5/11.50 .................................................................................................. 26

## <u>INTRODUCTION</u>

Roughly fifteen years after the alleged transactions underlying this lawsuit, and more than eight years since learning of his potential causes of action, Plaintiff Toni Kukoc commenced this action against two foreign banks with no ties to Illinois to recoup funds stolen by a third-party unaffiliated with either defendant. Plaintiff's lawsuit suffers from a host of fatal defects—both jurisdictional and substantive—and should be dismissed with prejudice for at least the following reasons.

*First*, this Court lacks personal jurisdiction over the Defendants. Defendants are both Swiss entities headquartered in Lugano and Zurich, Switzerland respectively with no business presence in or connection to the State of Illinois. The mere fact that Plaintiff happens to be an Illinois resident and maintained a bank account with Defendant BSI in Switzerland is insufficient to confer jurisdiction here in Illinois. Plaintiff had no business relationship with Defendant EFG at all and his attempt to impute personal jurisdiction to EFG under a successor liability theory fails both legally and factually.

*Second*, Illinois is not the appropriate forum in which to litigate this dispute because Plaintiff must pursue his claims in Switzerland under the doctrine of *forum non conveniens*. The operative agreement between Plaintiff and Defendant BSI contains a forum selection clause which mandates that Plaintiff's claims be litigated in Switzerland. In addition, venue is more appropriate in Switzerland because all relevant witnesses and documents are in Switzerland, the relevant documents are predominantly in Italian (one of Switzerland's official languages), and the operative agreement between Plaintiff and BSI contains a choice-of-law provision in favor of Swiss law.

*Third*, even if Plaintiff could overcome these jurisdictional deficiencies, his claims are barred by the applicable statute of limitations. Plaintiff concedes that he "first learned of his potential causes of action against BSI in 2014" – nearly a decade ago. Yet, Plaintiff's three "aiding

and abetting" causes of action are all subject to a five-year statute of limitations under Illinois law. Those claims expired in 2019, three years before this suit was ever filed. Likewise, Plaintiff's breach of contract claim is premised on events that occurred prior to 2009 and, therefore, is untimely under the ten-year statute of limitations for breach of contract claims.

*Fourth*, Plaintiff's claims against BSI are substantively flawed. The operative agreement between Plaintiff and BSI contains a choice-of-law provision in favor of Swiss law. There is not a precise analogue to aiding and abetting under Swiss law, and consequently, Plaintiff's various theories of aiding and abetting fail as a matter of Swiss law. Moreover, even under Illinois law, half of Plaintiff's claims are not adequately pled to survive a motion to dismiss. Plaintiff seeks to hold BSI liable for "aiding and abetting" the allegedly fraudulent activities of an independent third-party but fails to plead the requisite underlying fraudulent conduct necessary to sustain an aiding and abetting theory. Likewise, Plaintiff's claim for breach of contract (which notably fails to attach or quote from the operative contract at issue) fails to identify any contractual obligations that were breached.

*Finally*, Plaintiff's claims against Defendant EFG—which are premised solely on a theory of successor liability—fail because Plaintiff fails to state a claim against BSI in the first instance, and in any event, such claims fail under either Swiss or Illinois law.

For each of these separate and independent reasons, the Complaint fails as a matter of law and should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff claims that he was defrauded by his ostensible friend and financial adviser Paolo Banfi who allegedly stole millions of dollars from one of Kukoc's bank accounts in Switzerland. (Complaint, ¶ 1.) Banfi is not a Defendant in this lawsuit. Nor is Banfi alleged to have been an

employee or agent of either Defendant at any time. Rather, the focus of this lawsuit is on the bank where Plaintiff kept the money that Banfi stole.

Defendant BSI SA (incorrectly named as Banca Svizzera Italiana) ("BSI") is a Swiss bank headquartered in Lugano, Switzerland. (Complaint, ¶¶ 6.) Plaintiff maintained a bank account with Defendant BSI in Switzerland. (*See* Complaint, ¶¶ 6, 37.) Defendant EFG International AG ("EFG") is also a Swiss bank headquartered in Zurich, Switzerland. (*Id.*) Plaintiff did not have any business relationship or dealings with EFG whatsoever; instead, Plaintiff claims "EFG merged with and acquired all of the assets of BSI" and, therefore, proceeds against EFG solely on a theory of successor liability. (Complaint, ¶¶ 4, 12.)

Plaintiff alleges that the banker with whom he worked at BSI, Paolo Zola ("Zola"), assisted Banfi in his alleged fraud and theft of Plaintiff's funds. (*Id.*, ¶¶ 1, 25-27.) Through Zola, Plaintiff alleges that BSI "knowingly processed transactions by Banfi to loot and encumber Kukoc's BSI accounts for millions of dollars." (*Id.*, ¶ 2.) The transactions at issue occurred "in the late 2000s." According to Plaintiff, "between March 2004 and July 2007, Banfi worked with Zola to execute more than 300 money transfer orders in which millions more dollars were transferred out of Kukoc's accounts at BSI and into Banfi's pockets." (*Id.*, ¶ 48.) Plaintiff has been aware of his potential causes of action against BSI since 2014. (*Id.*, ¶ 51.)

The Complaint casts a spotlight on two transactions. First, Plaintiff alleges that a mortgage loan in December 2006 was fraudulently obtained by Banfi on Plaintiff's behalf, and that encumbered his BSI holdings. (Complaint, ¶¶ 41-44.) According to Plaintiff, BSI's alleged role in this transaction was preparing the mortgage documents. (Complaint, ¶ 42.) Plaintiff alleges that his signature was forged on the mortgage documents because he was not in Lugano, Switzerland at the time they were allegedly signed, despite the mortgage documents reflecting

3

otherwise.  (Complaint, ¶ 43.)  On "information and belief," Plaintiff claims that either Banfi or Zola was responsible for the forgery.  (*Id.*)

Second, Plaintiff alleges that in January 2007, he "signed a BSI application for opening a custody account" which Banfi explained "was necessary to finalize arrangements for [Plaintiff's] hotel," in which Plaintiff never obtained an interest.  (Complaint, ¶ 44.)  The only allegation with respect to BSI concerning this transaction is that Zola represented via his signature that he was in Plaintiff's presence when he signed the documents, but that in fact, "Zola was not in Chicago, Illinois around this time."  (Complaint, ¶ 46.)  Plaintiff claims that this action violated "BSI's authorization protocols that, for a customer such as Kukoc to open a new account…, the customer must sign the documents in the presence of a bank employee."  (Complaint, ¶ 45.)  Plaintiff does not attach the custody account agreement or alleged protocols to his Complaint, nor does he allege whether a custody account application constitutes such a document for the purposes of BSI's authorization protocols.

There are no allegations in the Complaint that Zola or BSI ever received any of the funds misappropriated by Banfi or otherwise benefited from the assistance allegedly provided to Banfi. Plaintiff does not identify a motive for why Zola allegedly "aided and abetted" Banfi in his fraudulent scheme.  And, whereas Plaintiff alleges that "Banfi was previously convicted for misappropriating Kukoc's money, as well as the money of other athletes who Banfi worked with" (*id.*, ¶ 38), Plaintiff acknowledges that Zola was never convicted or criminally charged for anything.  (*Id.*, ¶ 50.)

Plaintiff does not allege that either BSI or EFG have any business presence in Illinois, or for that matter, that anyone from BSI or EFG has ever set foot in Illinois.  Nor does Plaintiff allege that Zola or anyone from BSI ever solicited Plaintiff as a client in Illinois, negotiated any

agreement with Plaintiff in Illinois, traveled to Illinois to meet with Plaintiff, or that any of the banking services provided by BSI or any of the transactions complained of were performed in Illinois.

## ARGUMENT

## I. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2)

The Due Process Clause of the United States Constitution limits a court's authority to exercise personal jurisdiction over a foreign defendant. *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019). To satisfy due process for the purposes of personal jurisdiction, a foreign defendant must have "certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* "The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).

Personal jurisdiction takes two forms—general and specific. *Lexington Ins. Co.*, 938 F.3d at 878. Plaintiff does not allege that the Defendants are subject to general jurisdiction in Illinois. Nor could he. Defendants are both Swiss entities headquartered in Switzerland with no business presence or regular contacts with Illinois. (Complaint, ¶¶ 6-7); *Lexington Ins. Co.*, 938 F.3d at 878 (no general jurisdiction unless contacts are "so continuous and systematic" as to render them "essentially at home" in the forum). Accordingly, to be able to proceed in Illinois, Plaintiff must be able to show that the Defendants are subject to specific personal jurisdiction in Illinois. As set forth below, the Complaint fails to allege sufficient facts to confer personal jurisdiction over either BSI or EFG in Illinois and, therefore, dismissal is appropriate.

## A.    The Court Lacks Specific Personal Jurisdiction Over Defendants

The Court lacks specific personal jurisdiction over Defendants because the Complaint contains no allegations that Defendants have the requisite minimum contacts with Illinois. The mere fact that Plaintiff happens to be an Illinois resident—standing alone—is not enough to confer jurisdiction over Defendants in Illinois. The Complaint fails to allege that Defendants ever solicited Plaintiff's business in Illinois, visited Illinois, negotiated their business relationship in Illinois, or performed their agreement in Illinois. Plaintiff fails to plead sufficient facts to confer personal jurisdiction over Defendants.

To establish the "minimum contacts" necessary for the exercise of specific personal jurisdiction: (1) the defendant must have "purposefully directed" its activities at the forum state; and (2) the plaintiff's injury must have "arise[n] out of" the defendant's forum-related activities. *Id.* Importantly, the focus of this inquiry must be on the *defendant*, not the plaintiff. "[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Where the plaintiff himself is the only alleged connection between the defendants and the forum, specific personal jurisdiction is lacking. *Mitek Corp. v. Diedrich*, 18 C 1453, 2018 U.S. Dist. LEXIS 179099, *8 (N.D. Ill. Oct. 18, 2018); *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 U.S. Dist. LEXIS 138587, *13 (N.D. Ill. Aug. 29, 2017).

Here, the only jurisdictional nexus alleged by Plaintiff is that BSI entered into a contractual relationship with Plaintiff, and Plaintiff happens to live in Illinois. However, "it is well established that an individual's contract with an out-of-state party doesn't suffice on its own to establish sufficient minimum contacts in the other party's home forum." *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)); *see also Lexington Ins. Co.*, 938 F.3d at 880; *see also Northern Grain Mktg.,*

6

*LLC*, 743 F.3d at 493 ("A contract with a forum resident is not enough, standing alone, to establish jurisdiction in that forum."). Rather, the "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other" must demonstrate the defendant's efforts were "purposefully directed toward residents of a forum state." *Northern Grain Mktg., LLC*, 743 F.3d at 493. Where the defendant's only connection to Illinois is "contracting with and receiving money from [the plaintiff]," there is no relevant connection to justify specific personal jurisdiction over the defendant. *Id.* at 495.

Plaintiff fails to plead any facts demonstrating that BSI "purposefully directed" its efforts toward Illinois. *Northern Grain Mktg., LLC*, 743 F.3d at 493. There are no allegations that BSI solicited Plaintiff's business in Illinois. To the contrary, Plaintiff concedes that he "became a BSI customer on the advice of [Plaintiff's] ostensible friend and financial advisor, Banfi." – not any outreach on the part of BSI. (Complaint, ¶ 37.) There are no allegations that BSI negotiated its business relationship with Plaintiff in Illinois. In fact, Plaintiff acknowledges that "Zola and [Plaintiff] never actually met in person in Chicago for any reason." (*Id.*, ¶ 26.) There are no allegations that the parties' course of dealing or course of performance took place in Illinois, or for that matter, that BSI has ever performed any banking services in Illinois at all. Under such circumstances, the exercise of specific jurisdiction is not permitted. *Northern Grain Mktg., LLC*, 743 F.3d at 493-95; *Livingston v. Hoffmann-La Roche Inc.*, No. 17 C 7650, 2018 U.S. Dist. LEXIS 36788, *768-69 (N.D. Ill. Mar. 7, 2018) (granting motion to dismiss for lack of personal jurisdiction because all of the foreign defendants' alleged conduct giving rise to plaintiff's claims occurred outside of Illinois); *Baker Dental Corp. v. Aurex Dental, Inc.*, No. 13 CV 8181, 2014 U.S. Dist. LEXIS 123851, *10-11 (N.D. Ill. Sept. 5, 2014).

Paradoxically, Plaintiff's theory of liability against BSI is *inconsistent* with BSI having subjected itself to personal jurisdiction in Illinois. The only facts that are pled about BSI's relationship to Illinois are that BSI was *not present* in Illinois for the signing of certain contractual documents by Plaintiff. (Complaint, ¶ 19) ("BSI, through Zola, misrepresented that BSI was in Kukoc's presence in Chicago, Illinois, when Kukoc signed [] BSI banking documents in January 2007.") Moreover, as will be addressed below, the very same account agreement signed by Plaintiff in January 2007 (the "2007 Account Agreement") includes a forum selection clause that acknowledges the "exclusive venue for all legal actions, shall be the location of the [BSI] office with which the contractual relationship exists" – *i.e.*, the Lugano, Switzerland Office. A true and correct copy of that 2007 Account Agreement is attached as **<u>Exhibit A</u>** to the Declaration of Athos Padlina submitted in support of this motion. (*See* Padlina Decl., ¶¶ 5-7; Ex. A.)[1]

It is not enough to simply allege, as Plaintiff has here, that "Plaintiff was an Illinois resident" and his "Highland Park address was specifically identified as the contact information and place of residence in BSI's internal records and customer identification information." (Complaint, ¶ 18.) A defendant's knowledge that the plaintiff resided in a given forum when it entered into contracts with the plaintiff does not amount to the sufficient minimum contacts necessary to support the forum court's exercise of personal jurisdiction over the defendant. *Northern Grain Mktg., LLC*, 743 F.3d at 496 (holding that personal jurisdiction was lacking even though defendant delivered goods to customer in Illinois over nine years "knowing that Northern Grain was based

---

[1]     It is well settled that documents "referred to in the plaintiff's complaint and are central to his claim" may be attached to the motion to dismiss without converting it into one for summary judgment. *Michael Lewis Co. v. Int'l Consol. Airlines Grp., S.A.*, 2022 U.S. Dist. LEXIS 50349, *6 (N.D. Ill. Mar. 22, 2022); *see also Singleton v. Chicago Sch. Reform Bd. of Trustees of the Bd. of Educ.*, 2000 U.S. Dist. LEXIS 8484, *11 (N.D. Ill. June 13, 2000) ("While all well-pleaded facts in the complaint are accepted as true, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Because Plaintiff repeatedly refers to his agreement with BSI and purports to base a claim on that agreement (but does not attach it to his Complaint), the contract may be properly considered by this Court.

in Illinois").  As the Seventh Circuit has noted, "deliberate contact with the *resident* of a state is not the same thing as deliberate contact with the *state itself*."  *Lexington Ins. Co*., 938 F.3d at 879 (emphasis added).  Likewise, the fact that the alleged "injuries associated with Defendants' conduct were suffered in Illinois" is insufficient because a "mere injury to a forum resident is not a sufficient connection" alone to establish specific personal jurisdiction.  *Walden*, 571 U.S. at 290. Because Plaintiff himself is the only link between the Defendants and Illinois, the Complaint fails to allege the requisite "minimum contacts" required for the Court to exercise specific personal jurisdiction over Defendants.  *Mitek Corp*., 2018 U.S. Dist. LEXIS 179099 at *8; *Dobrowolski*, 2017 U.S. Dist. LEXIS 138587 at *13.

## II.     THE DOCTRINE OF *FORUM NON CONVENIENS* REQUIRES THAT PLAINTIFF'S CLAIMS BE LITIGATED IN SWITZERLAND

Even if Plaintiff could establish personal jurisdiction over Defendants in Illinois (which he cannot), Switzerland—not Illinois—is the appropriate venue for this dispute.  As set forth below, the contractual agreement between Plaintiff and BSI includes a forum selection clause which mandates that all disputes between Plaintiff and BSI be litigated in Switzerland and under Swiss law.  Furthermore, all relevant witnesses and documents are located in Switzerland, the relevant documents are predominantly in Italian, and the 2007 Account Agreement between Plaintiff and BSI contains a Swiss choice-of-law provision.  For these reasons, the case should be dismissed based on *forum non conveniens.*

### A.      The Swiss Forum Selection Clause Controls

"A forum-selection clause channeling litigation to a nonfederal forum is enforced through the doctrine of forum non conveniens."  *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 892 (7th Cir. 2018).  Although a *forum non conveniens* analysis typically involves the consideration of public and private interest factors, where a forum selection clause is involved, "the practical result

9

is that forum-selection clauses should control except in unusual cases." *Id.* In this respect, mandatory forum selection clauses are routinely upheld – even where they designate a foreign country as the forum. *Schwarz v. Sellers Mkts., Inc.*, 812 F. Supp. 2d 932, 941 (N.D. Ill. 2011) (citing *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 886 (7th Cir. 2004) (forum selection clause designating Bermuda enforced); *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 754-55 (7th Cir. 1992) (forum selection clause designating Germany enforced)). A forum selection clause that is part of an enforceable contract is presumed valid, and where such a clause designates a specific venue with "mandatory or obligatory language, the clause will be enforced." *Corridor Capital LLC v. Perla Global Capital Advisors, LLC*, No. 15 C 5757, 2016 U.S. Dist. LEXIS 17730, *9 (N.D. Ill. Feb 12, 2016). The coupling of the phrases "any legal disputes" and "shall be resolved" indicates the forum selection clause is mandatory. *ISA Chi. Wholesale, Inc. v. Swisher Int'l, Inc.*, Case No. 08-CV-6538, 2009 U.S. Dist. LEXIS 88779, *10 (N.D. Ill. Sept. 25, 2009).

Plaintiff alleges that in January 2007 he "signed a BSI application for opening a custody account." (Complaint, ¶ 44.) In that 2007 Account Agreement, on the very same page as Plaintiff's signature, is a mandatory forum selection clause. (Ex. A to Padlina Decl., p. 4.) The forum selection clause states that the "**exclusive venue for all legal actions shall be the location of the Bank's office with which the contractual relationship exists**." (Ex. A to Padlina Decl., p. 4.) (bold in original). The contractual relationship between Plaintiff and BSI existed exclusively out of BSI's Lugano, Switzerland headquarters. (Padlina Decl., ¶ 9.)

The coupling of the phrases "exclusive venue for all legal actions" and "shall be" indicate this is a mandatory forum selection clause. *See ISA Chi. Wholesale, Inc.*, 2009 U.S. Dist. LEXIS 88779 at *10. On this basis alone, the Court should enforce this mandatory forum selection clause

10

which designates Lugano, Switzerland as the contractually agreed upon forum. *Corridor Capital LLC*, 2016 U.S. Dist. LEXIS 17730 at *9-10; *ISA Chi. Wholesale, Inc.,* 2009 U.S. Dist. LEXIS 88779 at *10.

**B.** **Switzerland Is an Available and Adequate Forum and the Public and Private Factors Weigh in Favor of Switzerland Being the Forum for this Litigation**

Not only is Switzerland the situs designated by the parties in the 2007 Account Agreement's forum selection clause, it is also the most appropriate venue for this dispute. The threshold issue in a *forum non conveniens* analysis is whether the alternative forum is both "available and adequate." *Stroitelstvo Bulg. Ltd. v. Bulgarian-American Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). If so, the district court then considers whether *forum non conveniens* dismissal would serve the private interests of the parties and the public interests of the alternative forums. *Id.* at 424. As set forth below, both elements are satisfied here.

**1.** **Switzerland is an "available and adequate" forum**

An alternative forum is "available" if all the parties are amenable to process and within the forum's jurisdiction. *Deb*, 832 F.3d at 807. As Defendants are both headquartered in Switzerland, (Complaint, ¶¶ 6-7), Defendants are subject to process within Switzerland's jurisdiction, rendering it an "available" forum. *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 421 (finding defendant bank subject to jurisdiction of Bulgaria for purposes of *forum non conveniens* analysis where it maintained office in Bulgaria).

An alternative forum is "adequate" when it provides some potential avenue for redress and will treat the parties fairly. *Deb*, 832 F.3d at 807. Courts have repeatedly recognized Switzerland as an adequate forum in cases such as this. *See, e.g.*, *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1177 (10th Cir. 2009) ("Swiss courts have routinely been held adequate for contract and tort claims [such as fraud]."); *Medicor AG v. Arterial Vascular Eng'g*, No. 97-15465, 1998 U.S. App. LEXIS

11

5528, at *2 (9th Cir. Mar. 19, 1998) ("Switzerland offers a clearly adequate forum."); *Dickson Marine v. Air Sea Broker*, 969 F. Supp. 389, 392 (E.D. La. 1997) ("This Court finds that Switzerland represents an adequate forum."); *In re Alcon Shareholder Litigation*, 719 F. Supp. 2d 263, 279 (S.D.N.Y. 2010) (rejecting Plaintiff's argument that "Switzerland [is] an inadequate forum for resolution of this dispute."). Swiss law recognizes civil claims based on contract and tort and portions of Swiss law are even designed specifically "to prevent banks from facilitating money laundering." *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007); *do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 304 (S.D.N.Y. 2007). Moreover, as Plaintiff himself acknowledges, he has been litigating civil claims, specifically requests for debt enforcement, in Switzerland since January 22, 2014, presumably with the assistance of Swiss counsel. (Complaint, ¶ 52.) Plaintiff's most recent request for a debt enforcement proceeding was filed on December 28, 2021. (*Id.*)

Plaintiff's allegation that he "tried to obtain relief in Switzerland, but those efforts have been unsuccessful" does not render Switzerland an inadequate forum. (Complaint, ¶ 21.) Importantly, the Court "need not be certain" Plaintiff will succeed on his claims in Switzerland in order to find it an "adequate" forum, and it is "not necessary that the forum's legal remedies be as comprehensive or as favorable as the claims a plaintiff might bring in an American court." *Stroitelstvo Bulg. Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 422-23 (7th Cir. 2009). "[T]he alternative forum inquiry does not ask courts to evaluate whether a foreign court permits the same cause of action or whether it would offer the same remedy as a United States court." *In re Alcon*, 719 F. Supp. 2d at 273. "Instead, this alternative forum inquiry directs courts to consider whether the foreign court would be capable of litigating the 'essential subject matter' of the dispute." *Id.* A plaintiff may not defeat a *forum non conveniens* motion by "merely showing

that the law that would be applied in the alternative forum is less favorable to Plaintiffs than that of the United States" or that the alternative forum has "different or less generous discovery procedures than are available under American rules." *Siswanto v. Airbus Americas, Inc.*, No. 15-CV-5486, 2016 U.S. Dist. LEXIS 171027, at *23 (N.D. Ill. Dec. 9, 2016) (holding that Indonesia was an adequate forum). The only salient question is whether the alternative forum "provides the plaintiff with a fair hearing to obtain some remedy for the alleged wrong." *Id.*

Plaintiff postulates that "Swiss banks have a longstanding history of a cozy relationship with Swiss courts, legislators, and policymakers." (Complaint, ¶ 23.) But such "generalized, anecdotal complaints of corruption" are inadequate to conclude Switzerland's legal system is "so corrupt that it can't serve as an adequate forum." *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 421 (finding Bulgaria an "adequate forum" despite "public perception of corruption in the Bulgarian courts" and expert testimony regarding the same where "no attempt to quantify this purported corruption or document particular plaintiffs or claims that were treated unfairly"). Because Switzerland is both an available and adequate forum, it is the appropriate venue for this dispute.

### 2. Public and Private Interest Factors Weigh in Favor of Dismissal to Switzerland

As noted above, the public and private interest factor analysis is typically superfluous where, as here, the parties have a forum selection clause in their agreement. *Mueller*, 880 F.3d at 892. But even if the Court were to analyze the public and private interest factors involved here, those factors only reinforce why Switzerland is the more appropriate forum for this dispute.

Public interest factors include: (1) "the administrative difficulties stemming from court congestion"; (2) "the local interest in having localized disputes decided at home"; (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"; (4) "the avoidance of unnecessary problems in conflicts of laws or in the application of

foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19-cv-02648, 2021 U.S. Dist. LEXIS 140744, *14 (N.D. Ill. July 28, 2021).  The 2007 Account Agreement signed by Kukoc contains a Swiss choice-of-law provision, mandating that the "**legal relationship between [Plaintiff] and [BSI] shall be subject to Swiss law**."  (Ex. A to Padlina Decl., p. 4.) (bold in original).  Where a contract underlying the dispute contains a foreign choice-of-law provision, dismissal to the foreign jurisdiction is favored.  *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 426.  Given that Plaintiff's claims turn on the application of Swiss law, it makes sense to have this case litigated "in a forum that is at home with the law that must govern the action" and where the Court can avoid problems arising from the "application of foreign law." *Philips*, 2021 U.S. Dist. LEXIS 140744 at *14.  Moreover, the absence of any "local interest in having localized controversies decided at home" weighs against dismissal pursuant to *forum non conveniens* where the local interest is not exceptional or unusual.  *Michael Lewis Co.*, 2022 U.S. Dist. LEXIS 50349 at *15-16 (holding local interest not exceptional enough to override forum selection clause where the complaint was "brought by an Illinois company . . . regarding services that were provided in Illinois").  Dismissal based on *forum non conveniens* is appropriate here where Plaintiff has not even alleged any services that were provided in Illinois by either Defendant.

Private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to compel the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses"; (3) "whether the premises may be viewed"; (4) "[t]he enforceability of the judgment, if one is obtained"; and (5) "all other practical problems that make trial [] easy, expeditious[,] and inexpensive." *Philips Med. Sys. (Cleveland), Inc.*, 2021 U.S. Dist. LEXIS 140744 at *13.  Where the witnesses and documents pertaining to the dispute

14

are located primarily in a foreign forum, it "follows that most of the discovery in this case will take place in [the foreign forum], and transporting all of the evidence and witnesses to Chicago would be unnecessarily expensive." *Stroitelstvo Bulg. Ltd*., 589 F.3d at 425 (holding private interest factors weigh in favor of dismissal).

Here, all employees who performed work on or in connection with Plaintiff's BSI bank accounts, including Zola, did so at BSI's Lugano, Switzerland headquarters. (Padlina Decl., ¶ 10.) All funds deposited by Plaintiff into his BSI bank accounts would have been held in Lugano, Switzerland for the entirety of the time period during which Plaintiff was an account holder at BSI. (*Id.*, ¶ 13.) And all documents relevant to this dispute are kept and maintained by EFG in Switzerland. (*Id.*, ¶¶ 2, 14.) An overwhelming number of these documents are in Italian and would require translation to English were discovery to proceed. (*Id.*, ¶ 14.)

Conducting document discovery in this forum would be further complicated by the expectation that any discovery on a Swiss-based entity would necessarily require Plaintiff to comply with the Hague Evidence Convention. Plaintiff would be required to prepare a Letter of Request issued from this Court asking the Swiss judicial authorities to authorize the conduct of discovery on Swiss soil. Depositions would be conducted according to Swiss civil procedure rules which require witnesses to be examined by the court, in the absence of other witnesses, but a motion for leave for the attorney of the parties to confront a witness may be sought. 4 U.S.T. 2558-2559, T.I.A.S. No. 7444.

Furthermore, Switzerland takes a narrow approach to foreign courts or other foreign authorities conducting acts of sovereignty on Swiss territory. Even when all parties engage voluntarily, the unauthorized conduct of discovery on Swiss soil in connection with U.S. judicial proceedings is considered an infringement of Swiss sovereignty and attracts Swiss criminal law

prohibitions. Article 271 of the Swiss Penal Code, which "prohibits Swiss bank employees from 'turning over the [sought-after] documents to their colleagues in the United States for purposes of 'production' in [Switzerland], because it is the act of facilitating the improper production abroad that constitutes the violation of Article 271.'" *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323 (N.D. Tex. 2011). While American courts are not required to adhere blindly to the directives of foreign "blocking statutes," Article 271 would add a layer of procedural complexity to the document discovery process which, for the reasons identified above, will already be laborious and time-consuming. Thus, the private interest factors also weigh in favor of dismissal of this lawsuit to be litigated in Switzerland.

This court has an "'overriding interest' in the prompt and efficient resolution of litigation" before it. *Triple Crown Am., Inc. v. Biosynth AG*, Civ. No. 96-CV-7476, 1998 WL 227886, *3 (E.D. Pa. Apr. 30, 1998) (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 543 (1987)). It is simply not possible to determine how long it would take to proceed with a deposition in Switzerland (or another foreign country) under the Hague Convention. It has been the experience of many courts that utilization of Hague procedures are slow and cumbersome and usually take far longer than discovery procedures under the Federal Rules. *See, e.g.*, *In re Automotive Refinishing Paint. Antitrust Litig.*, 358 F.3d 288, 300 (3d Cir. 2004) ("The Convention procedures are often unduly time-consuming and expensive, and less likely to produce needed evidence than direct use of the Federal Rules."); *Triple Crown*, 1998 WL 227886, at *3 ("it appears that it would be difficult if not impossible for plaintiff to secure depositions of Biosynth AG in Switzerland in a manner as prompt, efficient and effective as that contemplated by the Federal Rules of Civil Procedure.").

For these reasons, dismissal pursuant to *forum non-conveniens* is appropriate.

16

### III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Though the Court need not reach the merits of this dispute for the reasons outlined above, the Complaint also fails to state a claim upon which relief can be granted because, as set forth below, Plaintiff's claims are both time-barred and substantively deficient.

### A.    Plaintiff's Claims Are Barred By The Illinois Statute Of Limitations

Plaintiff's claims are barred by the applicable Illinois statute of limitations. "[I]n Illinois, '[s]tatutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought, and do not alter substantive rights.'" *NewSpin Sports, Ltd. Liability Co. v. Arrow Electronics, Inc*., 910 F.3d 293, 300 (7th Cir. 2018) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351, 770 N.E.2d 177, 194 (Ill. 2002)). Under Illinois's choice of law rules, all "procedural" matters are governed by Illinois law, regardless of the applicable substantive law. *Id.*; *Paulsen*, 39 F.4th at 477. "This is so even when the parties have included a choice-of-law provision in their contract." *Heiman v. Bimbo Foods Bakeries Distrib. Co.*, No. 17 CV 4065, 2017 U.S. Dist. LEXIS 172183, *10 (N.D. Ill. Oct. 18, 2017). Thus, because Plaintiff filed this lawsuit in an Illinois forum, the Illinois statute of limitations applies.

### 1.    Plaintiff's Aiding and Abetting Claims are Barred by the Five-Year Statute of Limitations

The overwhelming majority of Plaintiff's allegations are premised on various "aiding and abetting" theories. Plaintiff alleges causes of action for (1) Aiding and Abetting Fraud (Count I); (2) Aiding and Abetting Civil Theft"[2] (Count II); and (3) "Aiding and Abetting Breach of Fiduciary

---

[2]    "Civil theft" is not a recognized cause of action under Illinois law, but it is properly classified as a cause of action for conversion. *Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019); *see also Bryant v. Mufflers 4 Less III, Inc*., Case No. 1:19-cv-03238, 2020 U.S. Dist. LEXIS 139925, *5 (N.D. Ill. Aug. 5, 2020).

Duty (Count III). (Complaint, ¶¶ 54-80.) Each of these claims expired long before this lawsuit was filed.

"To determine whether an aiding and abetting claim is timely, the court must look to the statute of limitations for the primary violation." *Continental Assurance Co. v. Geothermal Resources Int'l, Inc.*, Case No. 89 C 8858, 1991 U.S. Dist. LEXIS 13925, at *13 (N.D. Ill. Sept. 26, 1991) (citing *Hochfelder v. Midwest Stock Exch.*, 503 F.2d 364, 374-75 (7th Cir. 1974)). In Illinois, claims for fraud, conversion, and breach of fiduciary duty are each governed by a five-year statute of limitations. *See* 735 ILCS 5/13-205; *NewSpin Sports*, 910 F.3d at 310 (fraud); *Greenhill*, 917 F.3d at 988 (conversion); *JP Morgan Chase Bank v. Kowalski*, No. 19-cv-05770, 2020 U.S. Dist. LEXIS 205649, *7 (N.D. Ill. Nov. 4, 2020) (breach of fiduciary duty). The five-year statute of limitations accrues pursuant to the discovery rule. *NewSpin Sports*, 910 F.3d at 310. In other words, the five-year limitations period begins to run "when the injured party 'knows or reasonably should know' of the injury and its cause." *Greenhill*, 917 F.3d at 988.

Plaintiff concedes that "**Kukoc first learned of his potential causes of action against BSI in 2014**." (Complaint, ¶ 51) (emphasis added). Therefore, according to Plaintiff's own allegations, the statute of limitations on those claims ran in 2019 – five years after the Plaintiff admits he "learned" of his claims in 2014. But fatally, Plaintiff did not file this lawsuit until August 23, 2022. By that time, Plaintiff's lawsuit was three years too late. Because Plaintiff's aiding and abetting claims are time-barred by the allegations on the face of the Complaint, dismissal is appropriate. *Jimenez v. Illinois*, Case No. 11-cv-4707, 2012 U.S. Dist. LEXIS 6993, *13-14 (N.D. Ill. Jan. 18, 2012) (holding that a statute-of-limitations defense is properly raised in a 12(b)(6) motion to dismiss where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense...").

2.      **Plaintiff's Breach of Contract Claim is Barred by the Ten-Year Statute of Limitations**

Plaintiff's remaining claim for breach of contract (Count IV) fares no better.  (Complaint, ¶¶ 81-90.)  In Illinois, claims for breach of a written contract are governed by a ten-year statute of limitations.  735 ILCS 5/13-206; *NewSpin Sports, LLC*, 910 F.3d at 301.  The ten-year limitation period on "[a]n action for breach of contract accrues when the breach of contractual duty occurs." *Troya Int'l, Ltd. Sti. v. Bird-X, Inc*., Case No. 15 C 9785, 2017 U.S. Dist. LEXIS 201223, *26 (N.D. Ill. Dec. 7, 2017).  Each breach of a contract requiring continuing performance is separately actionable and subject to its own accrual date and limitations period.  *Id.* at *26-27.

Plaintiff's breach of contract claim alleges that "BSI agreed to follow protocols to prevent the misappropriation of Kukoc's money" and BSI breached this obligation "by allowing Banfi to encumber Kukoc's accounts with the $7,560,000 (CHF 7,200,000) mortgage that Kukoc did not expressly authorize."  (Complaint, ¶¶ 82, 85.)  Elsewhere in the Complaint, Plaintiff alleges the $7,560,000 mortgage was fraudulently executed in December 2006.  (Complaint, ¶¶ 41-43.)  Thus, even construing the allegations in the light most favorable to Plaintiff, the limitations period applicable to Plaintiff's cause of action for breach of contract based on "allowing Banfi to encumber Kukoc's accounts" with the $7,560,000 mortgage began to run in December 2006. *Troya Int'l, Ltd. Sti*., 2017 U.S. Dist. LEXIS 201223 at *26.  Plaintiff is time barred from asserting breach of contract on this basis, since the Complaint was filed well after 2016.  735 ILCS 5/13-206.

Plaintiff also alleges Defendant BSI committed a breach of contract by working with Banfi to execute "unauthorized withdrawals from Kukoc's BSI accounts" and "hundreds of money transfer orders."  (Complaint, ¶¶ 84, 87.)  The Complaint does not directly allege when these purported unauthorized withdrawals began or ended.  However, the opening paragraph of the

Complaint acknowledges that his claims "arise[] out of a series of transactions in the late 2000s" – *i.e.*, *before* 2010. (Complaint, ¶ 1.) As pled, the last possible date BSI could have conceivably "breached" the agreement was December 31, 2009. Thus, any potential bases for Plaintiff's claim for breach of contract were time-barred as of the filing of the Complaint in 2022. 735 ILCS 5/13-206.

### B. Plaintiff's Claims Are Substantively Deficient

Not only are Plaintiff's claims untimely, they are substantively deficient as well. As noted above, the 2007 Account Agreement that governs the relationship between Plaintiff and BSI contains a Swiss choice-of-law provision which states that "**The legal relationship between the Account Holder and the Bank shall be subject to Swiss law**." (Ex. A to Padlina Decl., p. 4) (bold in original). Where a valid contract between the parties contains a choice-of-law provision, "Illinois respects a contract's choice-of-law provision as long as . . . the law chosen is not contrary to Illinois' fundamental public policy." *Hogan v. Amazon.com, Inc.*, Case No. 21 C 3169, 2022 U.S. Dist. LEXIS 58347, *9 (N.D. Ill. Mar. 30, 2022). That the law chosen differs from Illinois law does not render it contrary to Illinois fundamental public policy, as "Illinois courts have enforced choice of law provisions even when the foreign law is arguably inconsistent with an Illinois statute." *Broadmark Capital Corp. v. GlobalNet, Inc.*, 169 F. Supp. 2d 873, 879 (N.D. Ill. 2001). As such, the Court should enforce the 2007 Account Agreement's Swiss choice-of-law provision and apply Swiss law when evaluating all substantive issues in this lawsuit. *Hogan*, 2022 U.S. Dist. LEXIS 58347 at *9.

Under Swiss law, Plaintiff's attempt to hold Defendants civilly liable is unavailing. Plaintiff's first three claims are based entirely on a theory of "aiding and abetting." (*See* Complaint, ¶¶ 54-80.) But Swiss law does not recognize a cause of action for aiding and abetting that is analogous to the theory of liability Plaintiff alleges here. *LaSala v. UBS, AG*, 510 F. Supp.

2d 213, 222 (S.D.N.Y. 2007) (holding that "Switzerland does not recognize a cause of action for aiding and abetting a breach of fiduciary duty parallel to that brought by plaintiffs" and Swiss law generally "recognizes aiding and abetting liability only in criminal context"). Accordingly, Plaintiff's aiding and abetting claims asserted here fail under Swiss law. However, even if Plaintiff's claims were analyzed under Illinois law, Count I for Aiding and Abetting Fraud and Count IV for Breach of Contract are not adequately pled.[3]

## 1. Plaintiff Fails to Adequately Plead A Claim For Aiding And Abetting Fraud Under Illinois Law

The Complaint also should be dismissed because Plaintiff has failed to plead the requisite elements necessary to state a cause of action for fraud under Illinois law.

"[T]here is no tort of aiding and abetting under Illinois law." *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 452 (7th Cir. 1982). Rather, "aiding and abetting is a theory for holding the person who aids and abets" others in committing a tort "liable for the tort itself." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). "Without any other actionable tort, aiding and abetting cannot serve as a theory of liability for any defendant." *Szplett v. Kenco Logistic Services, LLC*, No. 19 C 2500, 2020 U.S. Dist. LEXIS 70661, at *12-13 (N.D. Ill. Apr. 22, 2020).

To state a claim for aiding and abetting fraud, a plaintiff must first plead the elements of common law fraud: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Burke v. Nationstar Mortg., LLC*, Case No. 21-cv-1549, 2022 U.S.

---

[3] Defendants argue the Complaint's lack of substantive merit under Illinois law to further underscore that this case does not belong in the Northern District of Illinois. These arguments in the alternative under Illinois law do not operate as a waiver of Defendants' position that Swiss law applies to the substantive issues of this action. To the contrary, Defendants reserve their right to advance further and more-developed arguments under Swiss law should the Complaint survive this Motion.

Dist. LEXIS 54765, *36 (N.D. Ill. Mar. 25, 2022). In addition, the plaintiff must allege: "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Id.* Under Federal Rule of Civil Procedure 9(b), "[t]he circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Colman v. Greenfield*, Case No. 05 C 3894, 2005 U.S. Dist. LEXIS 23498, *8 (N.D. Ill. Oct. 11, 2005).

The major shortcoming of Plaintiff's fraud allegations is the omission of sufficient facts regarding any alleged "false statement of material fact" by Banfi that Plaintiff relied on. For example, Plaintiff alleges that his signature was forged on the December 2006 mortgage loan from BSI, prepared by Zola. (Complaint, ¶¶ 41-43.) But Plaintiff does not allege a "false statement of material fact" made by Banfi in connection with this transaction, let alone one pled with the requisite particularity. (*Id.*) While Plaintiff alleges Zola never told him about the mortgage until 2011, he does not allege the same for Banfi. (Complaint, ¶ 42.) Plaintiff alleges that he did not see the mortgage documents until years later, but does not state that he did not know about them. (*Id.*) In sum, Plaintiff's allegations surrounding the December 2006 mortgage loan "shed no light on the nature or content of the [mortgage loan documents] or why any particular false statement" induced Plaintiff to act or refrain from acting fail to satisfy the pleading requirements of Rule 9(b). *See United States ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005).

The allegations surrounding the 2007 Account Agreement similarly suffer from the same deficiency. *See BookXchange FL, LLC*, 2019 U.S. Dist. LEXIS 70360 at *11-13. Plaintiff admits

to seeing and signing the application to open a BSI custody account in January 2007. (Complaint, ¶ 44.) But Plaintiff alleges that at the time, "Banfi explained to Kukoc that the document was necessary to finalize arrangements for Kukoc's hotel, which was soon to be opened." (*Id.*) Plaintiff does not allege this was a false statement. Instead, Plaintiff alleges Banfi never told him he "was misappropriating [his] funds" at that time, but it is not pled how Banfi's alleged misappropriation of funds or Kukoc's hotel are related to the 2007 Account Agreement.

Despite alleging Banfi defrauded him out of $11 million dollars via the execution of over three hundred transactions, Plaintiff provides almost no detail regarding the misrepresentations made to him by Banfi regarding these transactions. Where, as here, the circumstances of the alleged fraud do not identify misrepresentations made to the plaintiff, who made the misrepresentations, the time, place and content of the misrepresentations, and the method by which the misrepresentations were communicated to the plaintiff, the heightened pleading requirement of Rule 9(b) has not been satisfied. *Colman*, 2005 U.S. Dist. LEXIS at *8; *BookXchange FL, LLC*, 2019 U.S. Dist. LEXIS 70360 at *11-15.

### 2. Plaintiff Fails to Adequately Plead A Claim For Breach Of Contract Under Illinois Law

A complaint for breach of contract under Illinois law must allege facts to support the existence of a valid and enforceable contract, the plaintiff's substantial performance under the contract, breach of the contract by the defendant and damages suffered by the plaintiff as a result. *N. Ins. Co. v. Silverton Marine Corp.*, No. 10 CV 345, 2010 U.S. Dist. LEXIS 62112, *5 (N.D. Ill. June 23, 2010). But to survive a 12(b)(6) motion to dismiss, a complaint alleging breach of contract must "at a minimum allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion." *Grabianski v. Bally Total Fitness Holding Corp.*, 891 F. Supp. 2d 1036, 1046 (N.D. Ill. 2012). It is "axiomatic that only duties

arising out of a contract itself can give rise to a breach." *Life Spine, Inc. v. Aegis Spine, Inc*., No. 19 CV 7092, 2021 U.S. Dist. LEXIS 120962, *5 (N.D. Ill. June 29, 2021).

The gist of Plaintiff's breach of contract count is that he and BSI entered into "various agreements" and that BSI agreed to follow certain authorization protocols, which were allegedly breached, in "one of these agreements." (Complaint, ¶¶ 82-83.) Yet, Plaintiff does not identify any specific provision of any agreement that he contends was breached. Federal Rule Civil Procedure 8(a) allows a plaintiff suing for breach of a written contract to set forth the contract "verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect." *Brickstructures, Inc. v. Coaster Dynamix, Inc*., Case No. 16 CV 10969, 2018 U.S. Dist. LEXIS 245714, *17-18 (N.D. Ill. Sept. 7, 2018). Where, as here, the plaintiff pursues the latter course, "[plaintiff] must allege enough facts that identify a certain contract or provision." *Perdue v. Hy-Vee, Inc*., 455 F. Supp. 3d 749, 765 (C.D. Ill. 2020) (dismissing breach of contract claim where plaintiffs only vaguely allude to unspecified contracts and argue the defendant "knows what agreements Plaintiffs are referring to"); *see also Grabianski*, 891 F. Supp. 2d at 1046. Plaintiff has not alleged sufficient facts to provide Defendants notice of what agreement they allegedly breached. *Perdue*, 455 F. Supp. 3d at 765.

Plaintiff states that under the authorization protocols, BSI was required to "obtain Kukoc's express consent before any money was transferred from Kukoc's BSI accounts, or before Kukoc's BSI accounts were encumbered." (Complaint, ¶ 83.) But Plaintiff provides no further detail regarding the alleged authorization protocols or the contractual context in which they allegedly appear. For example, Plaintiff does not identify whether the authorization protocols were included in the body of the unspecified agreement forming the basis for its breach of contract claim or incorporated therein by reference. Nor does Plaintiff identify any other contractual provisions or

the general purpose of the unidentified agreement to allow Defendants or the Court to ascertain the essential terms of said agreement. And where "essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Brickstructures, Inc.*, 2018 U.S. Dist. LEXIS 245714 at *10. Accordingly, Count IV of the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C. Plaintiff Fails to Adequately Plead A Theory Of Successor Liability And Thus All Causes Of Action Against EFG Should Be Dismissed

As noted above, Plaintiff's claims against EFG are premised solely on successor liability. Because the claims against BSI fail for the reasons articulated above, there is no basis to hold EFG liable under a "successor liability" theory. *See, e.g.*, *Robbins ex rel. Martins v. Physicians for Women's, LLC*, 90 A.3d 925, 926 (Conn. 2014) ("[T]he liability of a successor corporation is derivative in nature, and the successor may be held liable for the conduct of its predecessor only to the same extent as the predecessor"); *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 823 (Cal. Ct. App. 2013) ("Successor liability requires an underlying cause of action and merely extends the liability on that cause of action to a corporation that would not otherwise be liable."). But even if the claims against BSI survived the motion to dismiss, Plaintiff's attempt to impute the actions of BSI to EFG fails under both Swiss and Illinois law.

### 1. Plaintiff's Claims of Successor Liability Fail Under Swiss Law

Plaintiff's claims of successor liability are governed by Swiss law and fail because Swiss law does not recognize the doctrine of successor liability.

"Successor liability is a matter of corporate law to which Illinois courts apply the 'most significant contacts' test" for purposes of a choice of law analysis. *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc*., No. 06 C 3183, 2007 U.S. Dist. LEXIS 80130, at *7 (N.D. Ill. Oct. 30, 2007). Switzerland would undoubtedly have the "most significant contacts" in the alleged

merger or acquisition of two Swiss banks located in Switzerland. As noted recently in a federal court decision just three months ago, "Swiss law is quite different than federal common law on successor liability." *CBF Indústria de Gusa S/A v. Amci Holdings, Inc*., 13-cv-2581, 2023 U.S. Dist. LEXIS 6916, *42-43 (S.D.N.Y. Jan. 13, 2023). In Switzerland, "there exists no doctrine in Swiss law which is substantially similar to the…doctrine of 'successor liability'" under U.S. law. *Id.* at *43 n.19. Thus, even if Plaintiff's claims against BSI were sound, EFG cannot be held responsible for BSI's conduct because successor liability is not recognized under Swiss law.

## 2.     Plaintiff's Claims of Successor Liability Fail Under Illinois Law

Even if the Court analyzed Plaintiff's successor liability claims against EFG under Illinois law, Plaintiff has failed to allege sufficient facts to sustain a claim for successor liability.

Under Illinois common law, the general rule is that a successor entity does not assume the liability of its predecessor. *Baxi v. Ennis Knupp & Assocs*., Case No. 10-cv-6346, 2011 U.S. Dist. LEXIS 99857, *54 (N.D. Ill. Sept. 2, 2011). This rule is subject to only four narrow exceptions: "(1) [w]here there is an express or implied agreement of assumption; (2) anywhere the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligation." *Id.* at *54-55; *Bovinett v. HomeAdvisor, Inc*., Case No. 17 C 6229, 2018 U.S. Dist. LEXIS 39404, *8-9 (N.D. Ill. Mar. 9, 2018).

Plaintiff alleges in conclusory fashion that "EFG's combination with BSI was a merger, not an asset purchase" – apparently seeking to invoke the second exception. (Complaint, ¶ 10.) Yet, Plaintiff does not plead any facts to support this naked allegation, nor can his allegations be squared with BSI's inclusion as a defendant in this case. There are two types of mergers: *de jure* (or actual) mergers and *de facto* mergers. *Baxi*, 2011 U.S. Dist. LEXIS 99857 at *55. In the case of a *de jure* merger, the merged corporation ceases to exist following the merger. 805 ILCS

5/11.50 ("The separate existence of all corporations parties to the plan of merger or consolidation, except the surviving or new corporation, shall cease."); *see also Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.*, 523 F.2d 543, 548 (7th Cir. 1975) ("the proposition that separate corporations lose their separate identity after merger is too evident for much discussion.").  A *de facto* merger, on the other hand, may occur when the following elements are present: "(1) there is a continuity of the business enterprise between seller and buyer, including continuity of management, employees, location, and assets; (2) there is a continuity of shareholders, in that shareholders of the seller become shareholders of the buyer; (3) the seller ceases operations and dissolves as soon as possible after the transaction; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business." *Baxi*, 2011 U.S. Dist. LEXIS 99857 at *55 (quoting *Reavley v. Toyota Motor Sales US Corp.*, Case No. 00 C 3676, 2001 U.S. Dist. LEXIS 1555, at *3 (N.D. Ill. Feb. 14, 2001)).

Plaintiff does not specify whether he contends the alleged combination of EFG and BSI was a *de jure* or a *de facto* merger.  It would be implausible to suggest that this transaction was a *de jure* merger given that Plaintiff has separately named and served BSI as a defendant, indicating that BSI continues to maintain an existence that is independent of and distinct from EFG.  (*See* Certificate of Service, Dkt. 25) (noting that Plaintiff served "BSI SA at Viale Franscini 8, 6900 Lugano").  Nor has Plaintiff alleged any of the requisite elements sufficient to plead the existence of a *de facto* merger.  For example, Plaintiff has not alleged whether there has been a continuity of the business enterprise, whether there is an identity of officers, directors and stockholders, or whether EFG assumed the liabilities of BSI.  Plaintiff's conclusory allegation that "EFG's combination with BSI was a merger"—without more—is insufficient to state a claim for successor liability against EFG.  *See, e.g., Hobart Corp. v. Dayton Power & Light Co.*, Case No. 3:13-cv-

115, 2014 U.S. Dist. LEXIS 20952, at *14 (S.D. Ohio Feb. 18, 2014) (dismissing successor liability claim as premised on "conclusory legal allegations" not "supported by specific factual allegations" where plaintiff alleged defendant was "the legal successor in interest under the theories of de facto merger and/or mere continuation and/or assumption of liabilities to [predecessor company]"); *68th Street Site Work Group v. Airgas, Inc.*, No. SAG-20-3385, 2021 U.S. Dist. LEXIS 176789, at *43 (D. Md. Sept. 16, 2021) (dismissing successor liability claim where plaintiff alleged that defendant became corporate successor "via a series of mergers and acquisitions and name changes"). Accordingly, Plaintiff's successor liability claim against EFG fails as a matter of law and must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants BSI SA (incorrectly named as Banca Svizzera Italiana) and EFG International AG respectfully request that the Complaint be dismissed in its entirety with prejudice, and that the Court grant any other and further relief it deems just and appropriate.

Dated: April 10, 2023

Respectfully submitted,

DEFENDANTS  BSI SA, incorrectly named as BANCA SVIZZERA ITALIANA, and EFG INTERNATIONAL AG

By:  */s/ Jonathan S. Quinn*
　　One of Their Attorneys

Jonathan S. Quinn (jquinn@nge.com)
Andrew G. May (amay@nge.com)
Benjamin Boris (bboris@nge.com)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL  60602-3801
(312) 269-8000

**<u>CERTIFICATE OF SERVICE</u>**

Jonathan S. Quinn, an attorney, certifies that on April 10, 2023, he caused a copy of the

***Memorandum In Support of Defendants' Motion to Dismiss*** )to be filed via this Court's

CM/ECF System, which will send notice of this electronic filing to all counsel of record

receiving electronic notification.

*/s/ Jonathan S. Quinn*

29