**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TONI KUKOC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-CV-00261 |
| | ) | |
| BANCA SVIZZERA ITALIANA and | ) | |
| EFG INTERNATIONAL AG, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| | ) | Magistrate Judge Beth W. Jantz |
| | ) | |
| Defendants. | ) | |
| | ) | |

**JOINT STATUS REPORT**
**<u>REGARDING LIMITED JURISDICTIONAL DISCOVERY</u>**

Plaintiff, Toni Kukoc ("Plaintiff"), and Defendants, Banca Svizzera Italiana ("BSI") and EFG International AG ("EFG" and collectively "Defendants," and with Plaintiff the "Parties"), pursuant to the Court's June 23, 2023 Minute Entry (ECF No. 50), submit the following Joint Status Report regarding the status of limited jurisdictional discovery.

**<u>STATUS OF DISCOVERY</u>**

As part of the meet-and-confer process, the Parties met via videoconference on May 26, 2023, in a good-faith effort to resolve discovery issues raised by Defendants' objections and responses to Plaintiff's jurisdictional interrogatories and document requests. Since that meeting, the Parties have diligently attempted to resolve their discovery disputes. The Parties have been working collaboratively to identify potentially relevant tranches of documents. Plaintiff agreed to narrow his discovery requests to documents related to specific bank accounts, while Defendants agreed to gather and review potentially relevant documents for production. Defendants identified eight bank accounts that may contain relevant documents. The Parties then conferred on these

accounts, and Plaintiff further narrowed the sub-categories of documents to be produced for each account. Specifically, Plaintiff requested that Defendants produce the following folders of documents from the account files:

- Letters
- Payment Advice
- Portfolio Performance Detail Private Banking
- Portfolio Performance Private Banking
- Tax statements
- Fee Transfer Advice
- Payment Advice
- Account Statement Short
- Account Statement Long
- Foreign Exchange Advice
- Security Event Notifications
- Lettera US/Confidenziale
- Incoming Payment Advice
- CCRE-Correispondenza Titoli
- CTIT-CORRISPONDENZA CREDITI

Defendants produced documents from the above files relating to one bank account in Plaintiff's name ("Account 1"). Plaintiff also requested that the Defendants produce similar documents for one other bank account previously identified by Defendants ("Account 2"). Defendants declined to provide this information. This issue remains in dispute, and the Parties respectfully ask that the Court provide a ruling on this sole discovery matter.

## <u>POSITIONS OF THE PARTIES</u>

For the consideration of the Court, and pursuant to the Court's previous rulings, below are the positions of the respective Parties regarding the documents related to Account 2.

## PLAINTIFF'S POSITION

The Account 2 documents are relevant to the limited question of personal jurisdiction because Plaintiff expects them to show Defendants' repeated contacts with Plaintiff in Illinois – including illegal transfers of money from his bank accounts. As such, Plaintiffs can use the

documents in Account 2 to demonstrate that the Defendants have availed themselves of the benefits of Illinois law through repeated contacts with the forum. *See, e.g., Citadel Group Ltd. v. Washington Regional Medical Center,* 536 F.3d 757, 764 (7th Cir. 2008) (finding sufficient contacts with Illinois justifying personal jurisdiction); *Agri-Best Holdings, LLC v. Atlanta Cattle Exchange, Inc.,* 812 F.Supp.2d 898, 904 (N.D. Ill. 2011) (finding sufficient personal contacts where the parties engaged in a long-term business relationship); *Triad Capital Mgmt., LLC v. Private Equity Capital Corp*., No. 07 C 3641, 2008 WL 4104357, at *5 (N.D. Ill. Aug. 25, 2008) ("even when [contract-related] contact takes place only via telephone or email, it can create a substantial connection between the defendant and the forum state"). Like Account 1, Account 2 should contain the requested account information and banking statements, which will show Defendants' continuing and longstanding relationship with an Illinois resident (Mr. Kukoc), as well as Defendants' knowing and substantial participation in defrauding an Illinois customer (also Mr. Kukoc).

Defendants have no good faith basis to refuse to produce the Account 2 documents. Defendants informed Plaintiff that they would not produce documents relating to Account 2 because Plaintiff has not made a prima facie showing of personal jurisdiction. But the Court already ruled that limited jurisdictional discovery was warranted (Status Hearing of March 21, 2023, ECF No. 32 at p. 7, l. 3-25) and Defendants agreed that the Court's ruling concerning such limited jurisdictional discovery "makes sense." (ECF no. 32 at p. 7, l. 20-21.) As such, Defendants have no valid basis to refuse to review and produce documents.

Defendants' other arguments are likewise unavailing. First, Defendants argued that the Account 2 documents are irrelevant. That is not the case; as shown above, these documents are directly relevant to the question of personal jurisdiction because they show Defendants' contacts

with Illinois. And Defendants' assertion that Account 2 is not necessarily in Plaintiff's name (which Plaintiff cannot verify) does not mean that these records are irrelevant to the question of personal jurisdiction. It is Plaintiff's understanding (supported, in part, by references to Account 2 in the Account 1 documents) that these accounts were used to funnel money away from an Illinois resident and will further demonstrate that there were longstanding contacts with an Illinois resident (namely, Mr. Kukoc).

Finally, Defendants cannot contend that the request for these documents is unreasonable or unduly burdensome. This is a very narrow tranche of documents, seeking information relating to Plaintiff's own finances and the account of the allegedly fraudulent enterprise described in the Complaint. Of the eight identified accounts, Plaintiff only seeks documents from two accounts (Account 1 and Account 2). Further, Plaintiff is not requesting any and all documents from either of these accounts; rather, Plaintiff has significantly limited its original document requests to a discrete set of relevant sub-categories of documents contained in the account file. Thus, Plaintiff requests that the Court order the production of these documents.

**DEFENDANTS' POSITION**

Defendants oppose Plaintiff's request for additional documents for several reasons. After the Status Hearing held on March 21, 2023 (the "Status Hearing") referred to by Plaintiff above, Plaintiff propounded interrogatories and requests for production, to which Defendants promptly objected and responded. Among other things, Defendants objected to the production of *any* documents on the basis that Plaintiff had failed to allege a *prima facie* case of personal jurisdiction in his Complaint and that the production of documents would be unduly burdensome. A copy of Defendants' objections and responses to Plaintiff's Requests for Production of Documents is attached hereto as **Exhibit A** and a copy of Defendants' objections and responses to Plaintiffs'

First Set of Interrogatories is attached hereto as **Exhibit B.** In an effort to avoid motion practice over this discovery dispute, Defendants agreed, without prejudicing or waiving their objections, to produce the entirety of the account file for the account to which Plaintiff referred in his Complaint, defined above by Plaintiff as "Account 1" (hereinafter, "Account 1"). Defendants have already produced all "transactional documents" for Account 1 and intend to produce shortly the "contractual documents" for Account 1 once Defendants' Swiss counsel has finished reviewing them. The "transactional documents" and "contractual documents" comprise the entirety of the Defendant BSI's file for Account 1. Plaintiff is now requesting an additional 4,000 pages of documents from a second account file (hereinafter, "Account 2"). As set forth below, Plaintiff's request for these additional documents from Account 2 is neither warranted nor justified under the circumstances for several reasons.

For starters, Plaintiff has not demonstrated that he is entitled to *any* jurisdictional discovery because a "plaintiff must establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted." *Calloway v. AT&T Corp*., 2019 U.S. Dist. LEXIS 166374, *6 (N.D. Ill. Sept. 26, 2019); *Pentwater Equity Opportunities Master Fund, Ltd. v. Baker*, 2016 U.S. Dist. LEXIS 152077, *3 (N.D. Ill. November 2, 2016). Plaintiff's sparse allegations concerning personal jurisdiction are confined to paragraphs 18 to 23 of his Complaint, in which he alleges that (1) he was an Illinois resident during the time of the events at issue, and thus "[a]ll injuries associated with Defendants' conduct were suffered in Illinois"; (2) his "Highland Park address" was identified in Defendant BSI's internal bank records; and (3) Plaintiff himself signed "BSI banking documents in Chicago" outside the presence of any of the Defendants.

These allegations fall far short of establishing a *prima facie* case of personal jurisdiction, and as such, Plaintiff should not be entitled to any jurisdictional discovery beyond the Account 1

documents Defendants already voluntarily produced or will produce shortly. *See Caddo Sys. v. Siemens Aktiengesellschaft (AG)*, No. 20 C 05927, 2022 U.S. Dist. LEXIS 41634, at *19-20 (N.D. Ill. March 9, 2022) (denying request for jurisdictional discovery and noting that "[f]oreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists"); *Medline Indus., Inc. v. Diversey, Inc.*, No. 20 C 4424, 2020 U.S. Dist. LEXIS 177579, at *4-5 (N.D. Ill. Sept. 28, 2020) (granting motion to dismiss for lack of personal jurisdiction, denying jurisdictional discovery, and commenting that "[g]enerally, courts grant jurisdictional discovery if the factual record is ambiguous or unclear on the issue, but when a lack of personal jurisdiction is clear, jurisdictional discovery would serve no purpose and should not be permitted"); *Rawlins v. Special Select Hosp. of Nw. Indiana, Inc*., No. 13 C 7557, 2014 U.S. Dist. LEXIS 57076, at *5-6 (N.D. Ill. Apr. 23, 2014) (holding that no prima facie showing of personal jurisdiction was made for purposes of jurisdictional discovery where court was granting motion to dismiss); *Ticketreserve, Inc. v. Viagogo, Inc*., 656 F. Supp. 2d 775, 782-83 (N.D. Ill. 2009) (granting motion to dismiss for lack of personal jurisdiction, and denying jurisdictional discovery where plaintiff could not make prima facie showing of jurisdiction as the record was "not ambiguous or unclear" on the jurisdiction issue); *Brown v. Swagway*, No. 3:15-cv-588-JVB-CAN, 2016 U.S. Dist. LEXIS 200588, at *2 (N.D. Ind. Aug. 2, 2016) (denying motion for jurisdictional discovery where court concluded that based on the pleading and an unrefuted affidavit from the party contesting personal jurisdiction, the movant had not established a prima facie case justifying personal jurisdiction); *ASEA/AFSCME Local 52 Health Benefits Trust v. Abbott Labs*., No. 17-cv-6704, 2018 U.S. Dist. LEXIS 101652, at *9-10 (N.D. Ill. June 18, 2018) ("Jurisdictional discovery, however, is only warranted *after* a prima facie showing of personal jurisdiction has been made.") (emphasis in original); *Sullivan v. Sony Music Entm't*, No. 14 CV

731, 2014 U.S. Dist. LEXIS 152771, *17 (N.D. Ill. October 28, 2014) (granting motion to dismiss and denying request for jurisdictional discovery "concerning SME's sales, solicitation of sales, …and other activities in Illinois" where plaintiff failed to establish prima facie case of personal jurisdiction).

Plaintiff's assertion that the Court already ruled that limited jurisdictional discovery was warranted, or that Defendants' counsel assented to such discovery, mischaracterizes what took place at that Status Hearing. In response to Defendants' oral request that all discovery be stayed pending the resolution of Defendants' motion to dismiss, Judge Coleman agreed to stay all merits discovery, but noted that certain jurisdictional discovery *may* be appropriate and made a referral to Judge Jantz for that determination:

> THE COURT: All right. Then so cutting through that, sometimes we need preliminary discovery. If you're talking about jurisdictional issues, forum non conveniens, it's difficult for the Court to rule on that, maybe. It depends on how thorough your presentations are. But I would say that I would leave it open for that purpose to be able to get discovery on those issues. I will stay discovery on the substantive part of the case, but as far as what is germane to jurisdictional issues and where the case is going to proceed and if it can proceed here, I would give you time to do that and have a magistrate judge oversee it. Who is the magistrate judge, Yvette?
>
> THE CLERK: Judge Jantz.
>
> THE COURT: Oh, yes. We'll have Magistrate Judge Beth Jantz will be referred to the discovery for this limited purpose right now. We can always expand it later. And as to the rest of discovery, it would be stayed. All right.
>
> MR. MAY: Thank you, Your Honor. We think that makes sense.
>
> (Status Hearing, ECF No. 32, at p. 7, 3-21).

As evident from the colloquy above, Judge Coleman neither ruled that Plaintiff was entitled to any jurisdictional discovery nor opined about what the extent of that discovery (if any) should be. To the contrary, Judge Coleman noted only that jurisdictional discovery "maybe" appropriate ("it depends") and referred that issue to Judge Jantz to resolve. While Defendants agreed that it "ma[de] sense" to refer the disposition of that issue to Judge Jantz , Defendants in no way conceded

that jurisdictional discovery was appropriate (let alone the broad jurisdictional discovery Plaintiff has propounded). Indeed, Defendants have consistently maintained that such discovery is not permissible here. (*See* Defs.' Obj. and Resps., Ex. A; April 17, 2023 Joint Status Report, ECF No. 38, at p. 2.)

Despite Defendants' unwavering position that Plaintiff has failed to state a *prima facie* case of personal jurisdiction, in an attempt to avoid a discovery dispute, Defendants searched their archive of records in Switzerland in order to locate, scan and produce the entire contents of the one Toni Kukoc-titled bank account that best matched the description of the account opened in January 2007 referred to in the Complaint—*i.e.,* Account 1. (Complaint, at ¶ 44.) This was a labor-intensive and time-consuming effort given the manner in which the documents are kept in Switzerland and the need to ensure strict compliance with Swiss privacy and banking laws. Defendants agreed to produce the entire contents of Account 1, hoping it would avoid the necessity of motion practice. Plaintiff now seeks the production of additional records from Account 2, despite not having pled any facts about Account 2 (such as the name of the account, the account number, when it was opened, the account holder, etc.).

Putting aside Plaintiff's lack of entitlement to Account 2 records, he contends such records are relevant because they will reflect transfers of money from Plaintiff's bank accounts. Even if that were true (which Defendants do not concede), Plaintiff has yet to demonstrate how the existence of documents evidencing wire transfers either to or from Plaintiff's Illinois bank accounts would in any way change the personal jurisdiction analysis in this case. Nor can he. As Judge Coleman herself has recognized, "wire transfers from an Illinois account are insufficient to establish personal jurisdiction over the defendants." *PNC Bank, Nat'l Ass'n v. Rising Sun Holdings, Inc.*, No. 17-cv-2245, 2019 U.S. Dist. LEXIS 233471, at *1-3 (N.D. Ill. Mar. 29, 2019)

(Coleman, J.); *see also Elm One Call Locators, Inc. v. Midcontinent Commc'ns*, No. 21-cv-1176, 2022 U.S. Dist. LEXIS 71569, at *6-8 (C.D. Ill.) ("sending or receiving payments to or from a company in Illinois, without more, does not render a defendant subject to the personal jurisdiction of Illinois courts"); *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989) (rejecting plaintiff's argument that personal jurisdiction existed by virtue of defendant making telephone calls and sending payments to the forum, especially where the parties' contract was negotiated and accepted in another forum);

The decisions cited by Plaintiff above to support his theory of personal jurisdiction miss the mark, because all three cases arose from disputes over contracts that involved or contemplated services performed in Illinois. *Agri-Best Holdings, LLC v. Atlanta Cattle Exch., Inc.*, 812 F. Supp. 2d 898, 904 (out-of-state defendant initiated contact with plaintiff in Illinois to supply plaintiff with meat products in Illinois); *Citadel Group, Ltd. v. Wash. Reg'l Med. Ctr*., 536 F.3d 757, 764 (out-of-state defendant authorized plaintiff to begin performing project development services in Illinois before reneging on contract); *Triad Capital Mgmt., LLC v. Private Equity Capital Corp*., No. 07 C 3641, 2008 U.S. Dist. LEXIS 75983, at *13-15 (N.D. Ill. Aug. 25, 2008) (out-of-state defendant negotiated contract with Illinois plaintiff to provide plaintiff capital necessary to acquire company). Here, all banking services rendered by BSI were performed in Switzerland.

Requiring Defendants to review and produce additional documents at this juncture would impose a significant burden on Defendants. The Account 2 documents Plaintiff has requested are not a "narrow tranche" as Plaintiff claims. Plaintiff has requested well over half of the Account 2 file—comprising over 4,000 pages of documents—all of which Defendants would have to review individually to determine whether they correspond to any of the fifteen subcategories of documents Plaintiff has requested. To produce such Documents, Defendants would also have to incur the

substantial expense of having Swiss counsel to review each line of all 4,000 pages to determine whether any third-party information must be redacted prior to production pursuant to the Swiss Federal Act on Data Protection. Given the voluminous nature of the Account 2 records, the time and labor associated with reviewing and preparing those documents for production, and the limited (or non-existent) probative value of those documents as they relate to the arguments presented in Defendants' motion to dismiss, the burden of producing additional documents is not proportionate to the needs of the case.

Plaintiff has had the benefit of Defendants' brief in support of their motion to dismiss now for over three months. His response is due on July 31, 2023. Defendants are entitled to have that motion decided without any further delay.

## CONCLUSION

For the above-stated reasons, the Parties request a ruling on this discovery dispute, as well as any other relief that this Court deems appropriate.

Jointly submitted,

*/s/Jonathan S. Quinn*

Jonathan S. Quinn
jquinn@nge.com
Andrew G. May
amay@nge.com
Benjamin Boris
bboris@nge.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602-3801
(312) 269-8000

*Attorneys for Defendants*

*/s/Sean M. Koller*

Scott F. Hessell
shessell@sperling-law.com
Sean M. Koller
skoller@sperling-law.com
SPERLING & SLATER, P.C.
55 West Monroe Street
Chicago, IL 60603
Phone: 312-641-3200
Fax: 312-641-6492

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

Sean M. Koller, an attorney, certifies that on July 14, 2023 he caused a copy of the foregoing to be filed via this Court's CM/ECF System, thereby causing a copy of the same to be served on all parties of record.

*/s/ Sean M. Koller*