UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONI KUKOC, | ) |
| | ) |
| Plaintiff, | ) Case No. 23-cv-00261 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| BANCA SVIZZER ITALIANA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Toni Kukco ("Plaintiff") brings a four-count complaint against Defendants BSI SA ("BSI"), incorrectly named as Banca Svizzer Italiana, and EFG International AG ("EFG") (together "Defendants"). Plaintiff alleges the following against BSI, and EFG (via successor liability): (1) aiding and abetting fraud; (2) aiding and abetting civil theft; (3) aiding and abetting breach of fiduciary duty; and (4) breach of contract. Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] For the reasons below, the Court grants Defendants' motion to dismiss [35].

**Facts**

Plaintiff is a citizen of the United States and during all relevant times resided in Highland Park, Illinois. Defendant BSI was a Swiss bank headquartered in Lugano, Switzerland. Defendant EFG is a Swiss Bank headquartered in Zurich, Switzerland. At some point after Plaintiff began banking with BSI, EFG acquired BSI. Two relevant third parties, not named in the complaint, are Paolo Zola ("Zola") and Paolo Banfi ("Banfi"). Zola is a former BSI banker and Banfi was Plaintiff's friend and financial advisor. Banfi was never a BSI employee.

---

[1] Defendants also move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Court dismisses this case for lack of personal jurisdiction, the Court does not address the parties' 12(b)(6) arguments.

The relationship between Plaintiff and BSI started on December 9, 1991, after Banfi encouraged him to open an account. Plaintiff's Illinois address was recorded on his banking profile. Zola became Plaintiff's BSI banker in January 2004. In June 2004, Plaintiff signed a power-of-attorney document, which gave Zola and BSI power to authorize the mortgage and transactions discussed below.

On December 19, 2006, Zola drafted mortgage documents for Plaintiff's Switzerland hotel project. Plaintiff asserts, that unknown to him, this mortgage encumbered his BSI accounts. Although Plaintiff alleges that he did not know of the mortgage until 2011, he also alleges that in 2007 Banfi requested that he sign additional mortgage documents. Plaintiff alleges Banfi represented these documents were necessary to finalize the hotel project, but Plaintiff did not know he would never receive interest in the hotel. When the parties executed this documentation, Zola signed it as if he was in Illinois, even though he was not. In fact, Plaintiff and Zola never met in Illinois. Plaintiff states Zola's signature violates BSI's protocol that customers must sign documents in the presence of BSI employees. Plaintiff also asserts someone forged his signature on other mortgage documentation.

Plaintiff further alleges that Banfi and Zola's fraudulent activity continued as they executed over 300 fraudulent transactions exceeding $11 million from Plaintiff's BSI accounts into Banfi's accounts.

Plaintiff states BSI sent mailings to his Illinois home and made wire transfers for his benefit, which contained his Illinois address. One of the mailings, dated December 19, 2006, confirms Plaintiff's mortgage, and the other, dated December 13, 2013, concerns general tax disputes in the banking market. The wire receipts provide no detail of whether the transferee account was a Swiss or Illinois bank account.

2

Plaintiff claims he first learned of the potential causes of action against BSI in 2014, leading to this suit after unsuccessful litigation efforts in Switzerland.

**Legal Standard**

A motion to dismiss under Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2); *Curry v. Revolution Labs.*, LLC, 949 F.3d 385, 392 (7th Cir. 2020). Although the plaintiff bears the burden of establishing personal jurisdiction, "[w]hen the district court bases its determination solely on written materials and not an evidentiary hearing, plaintiffs must only make a prima facie showing of personal jurisdiction over the defendants to survive their motion to dismiss." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (citation omitted). "In evaluating whether the prima facie standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quotations and citation omitted).

**Discussion**

The Court must begin by determining whether it has personal jurisdiction over Defendants. The key issue is whether the Defendants have sufficient "minimum contacts" with Illinois such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction can be general or specific. *Id.* at 701–02. Because Plaintiff does not attempt to establish general jurisdiction, the Court focuses on whether specific jurisdiction exists. The Court will find specific personal jurisdiction where (1) the defendant's contacts with the forum state show that it "purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state;" (2) the plaintiff's alleged injury arises out of or relates to the defendant's forum-related activities; and (3) the

3

exercise of personal jurisdiction would "comport with traditional notions of fair play and substantial justice." *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 794 (N.D. Ill. 2021) (Kness, J.), *aff'd*, 46 F.4th 614 (7th Cir. 2022).

Defendants argue they did not have minimum contacts with Illinois because they are both Swiss banks with no business in Illinois, besides BSI's contract with Plaintiff. Defendants point out that Plaintiff does not allege BSI solicited his business in Illinois, negotiated the relevant contracts in Illinois, or visited Illinois. Defendants assert it is not enough for Plaintiff to merely allege he is a resident of Illinois and suffered injuries in Illinois for the Court to exert personal jurisdiction over them.

Plaintiff responds that specific jurisdiction exists because he received "extensive mailings" to his Illinois address, BSI made wire transfers for Plaintiff, and he was injured in Illinois. Plaintiff also alleges his banking profile has his Illinois address and that he had interactions with BSI employees.

Defendants dispute Plaintiff's characterization of the two letters he labels as "extensive mailings." Specifically, Defendants note that, based on Plaintiff's allegations, he would not have received the first letter and that the second letter was generic and sent to all of BSI's customers. Concerning the wire transfers, although the accounts were Plaintiff's, Defendants argue that the wires were sent between two Swiss accounts. Defendants also explain that Plaintiff's injuries did not arise from forum-related activities, as the alleged torts and breach occurred in Switzerland.

For the Court to determine whether Defendants directed its activities at Illinois, such that Defendants "purposefully availed" themselves, the Court must consider the type of claims at issue. *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).

For a breach of contract purposeful availment analysis the Court considers "(1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present

4

in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois." *AS Engine Leasing, LLC v. Vision Airlines, Inc.*, No. 14 C 1436, 2014 WL 6461760, at *3 (N.D. Ill. Nov. 18, 2014) (Holderman, J.) (citing *Citadel Grp. Ltd. v. Merle West Med. Ctr., Inc.*, No. 06-C-6162, 2007 WL 5160444, at *3 (N.D. Ill. June. 13, 2007) (Lefkow, J.)).

The contracts at issue for Plaintiff's breach of contract claim arises from Plaintiff's general banking relationship agreements and Plaintiff's authorization for Zola and BSI to be his power-of-attorney. Plaintiff fails to show that Defendants purposefully availed themselves to Illinois regarding the breach of contract claim. First, Plaintiff fails to allege how and where these contracts were negotiated or executed. Wherever the contracts were negotiated, they were performed in Switzerland, as they concerned BSI's control and access of Plaintiff's Swiss accounts. Second, Plaintiff does not allege payments were made in Illinois. While Plaintiff points out that wire transfers were made to benefit him, Plaintiff does not allege that the transferee accounts were based in Illinois. Third, Plaintiff alleges Zola, acting on behalf of BSI, never met or had discussions with him in Illinois. Fourth, Plaintiff initiated the contract, not BSI, as Banfi encouraged Plaintiff to bank with BSI. Fifth, Plaintiff fails provide any details of the communications he had with BSI employees, and the only mailings Plaintiff cites were sent after the parties entered into the contracts. Notably, a breach of contract purposeful-availment analysis focuses on the conduct during the contract formation. *See Clifton,* 682 F.3d 665, 674 (7th Cir. 2012) (stating if the plaintiff brought only a breach of contract claim, the analysis would likely be limited to Defendant's conduct during the contract formation). Thus, this Court lacks jurisdiction over Plaintiff's breach of contract claim.

Concerning Plaintiff's intentional tort claims, the Court analyzes whether the Defendants purposefully availed themselves by assessing whether they engaged in intentional and tortious conduct, aimed at the forum state, with the knowledge that the tortious conduct would injure the

5

Plaintiff. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). The intentional torts at issue is BSI's alleged breach of their fiduciary duty, fraud, and civil theft. Although Plaintiff alleges intentional and tortious conduct and that he has suffered injuries, he does not sufficiently allege the conduct was aimed at the forum state.

Plaintiff asserts there were extensive communications between the parties, and relies on *Levin v. Posen Found.*, 62 F. Supp. 3d 733, 740 (N.D. Ill. 2014) (Lefkow, J) to support his assertion that such communication constitutes purposeful availment. In *Levin*, the plaintiff cited eighteen communications between them and the defendant, six of which were fraudulent. Here, Plaintiff cites to two communications—the mortgage and tax dispute letter—neither of which he asserts *assisted* in the ongoing tortious conduct. *See Clifton*, 682 F.3d 665, 676 (7th Cir. 2012) (explaining the motion to dismiss for lack of personal jurisdiction did not depend on whether the relevant communications deceived the plaintiff, rather that the communications kept the fraudulent activity going). The correspondence in *Levin* not only assisted in the fraud but caused the plaintiff to act on the fraudulent representations. *See Levin*, 62 F. Supp. 3d at 737. Simply, the mailed communications Plaintiff cites did not keep the fraudulent activity going. And, because the Court does not know the nature of the "conversations" Plaintiff had with BSI employees, it cannot conclude these conversations assisted in the tortious conduct either.

Plaintiff fails to allege BSI aimed the intentional torts at Illinois for additional reasons. First, the breach of fiduciary duty occurred in Switzerland and Plaintiff does not allege Zola was anywhere else conducting his fraudulent activities. Second, the wire transfer from Plaintiff's Switzerland account went to Banfi's, which Plaintiff does not allege was an Illinois account. Third, a central theory of Plaintiff's fraud claim, related to the mortgage, is that Zola signed the mortgage documentation even though he was not in Illinois, refuting personal jurisdiction on its face. In other words, it is essential to Plaintiff's claim that Zola *did not* sign the documents in Illinois. Finally, the

6

mortgage was for a Swiss hotel project. The Court also lacks personal jurisdiction over Plaintiff's tort claims.

Considering the total picture, exerting jurisdiction over Defendants would not comport with the notions of fair play and substantial justice, as Plaintiff fails to show Defendants purposefully availed themselves of the forum state. Consequently, Plaintiff did not suffer from *forum-related* activities. Because the Court holds that it does not have jurisdiction in this case, it does not have authority to consider the other arguments raised by the parties.

**Conclusion**

For the reasons above, the Court grants Defendants' motion to dismiss [35]. The Court gives Plaintiff 30 days to cure the deficiencies stated herein.

IT IS SO ORDERED.

Date: 3/29/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge