**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TONI KUKOC,

                Plaintiff,

v.

BANCA SVIZZERA ITALIANA and
EFG INTERNATIONAL AG,

                Defendants.

Case No. 23 C 261

Judge Sharon Johnson Coleman

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Jonathan S. Quinn (jquinn@nge.com)
Andrew G. May (amay@nge.com)
Benjamin Boris (bboris@nge.com)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street
Chicago, IL  60602-3801
(312) 269-8000

*Counsel for Defendants BSI SA, incorrectly
named as Banca Svizzera Italiana, and
EFG International AG*

## TABLE OF CONTENTS

**Page**

I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ........................................................................ 6

    A.   Plaintiff's Breach of Contract Claim Fails to Adequately Plead Personal Jurisdiction Over the Defendants ........................................................ 7

    B.   Plaintiff's Intentional Tort Claims Fail to Adequately Plead Personal Jurisdictional Over the Defendants ...................................................... 8

    C.   The Acts of Banfi Cannot be Imputed to BSI to Establish Personal Jurisdiction……………………………………………………………12

II.   THE DOCTRINE OF FORUM NON CONVENIENS REQUIRES THAT PLAINTIFF'S CLAIMS BE LITIGATED IN SWITZERLAND ............................ 13

    A.   The Swiss Forum Selection Clauses Control ...................................... 13

    B.   Switzerland Is an Available and Adequate Forum and the Public and Private Factors Weigh in Favor of Switzerland Being the Forum for this Litigation .......................................................................................... 15

        1.   Switzerland is an "available and adequate" forum ................... 15

        2.   Public and Private Interest Factors Weigh in Favor of Dismissal .......... 17

III.   THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM .................................................................................... 19

    A.   Plaintiff's Claims Are Barred by The Illinois Statute Of Limitations ................. 19

        1.   Plaintiff's Tort Claims Are Barred by the Five-Year Statute of Limitations .................................................................... 19

        2.   Plaintiff's Breach of Contract Claim is Barred by the Ten-Year Statute of Limitations .......................................................... 21

    B.   Plaintiff's Aiding and Abetting Claims Fail Under Swiss Law ........................ 22

    C.   Plaintiff Fails to Adequately Plead Successor Liability Against EFG ............... 23

        1.   Plaintiff's Claims of Successor Liability Fail Under Swiss Law ........... 23

        2.   Plaintiff's Claims of Successor Liability Fail Under Illinois Law .......... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs., Inc. v. Biovalve Techs., Inc.*,
  543 F. Supp. 2d 913 (N.D. Ill. 2008) ....................................................................12

*In re Alcon Shareholder Litigation*,
  719 F. Supp. 2d 263 (S.D.N.Y. 2010)....................................................................16

*Batton v. Nat'l Ass'n of Realtors*,
  No. 21-cv-00430, 2024 U.S. Dist. LEXIS 28521 (N.D. Ill. Feb. 20, 2024) ...........................12

*Baxi v. Ennis Knupp & Assocs.*,
  Case No. 10-cv-6346, 2011 U.S. Dist. LEXIS 99857 (N.D. Ill. Sept. 2, 2011) ...............24, 25

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) .................................................................................10

*Bovinett v. HomeAdvisor, Inc.*,
  Case No. 17 C 6229, 2018 U.S. Dist. LEXIS 39404 (N.D. Ill. Mar. 9, 2018) .......................24

*Brady v. Sperian Energy Corp.*,
  No. 18 C 6968, 2019 U.S. Dist. LEXIS 82674 (N.D. Ill. May 16, 2019) ..............................13

*Broadmark Capital Corp. v. GlobalNet, Inc.*,
  169 F. Supp. 2d 873 (N.D. Ill. 2001) ....................................................................22

*Brown Bark III, L.P. v. Haver*,
  219 Cal. App. 4th 809 (Cal. Ct. App. 2013) ..........................................................23

*CBF Indústria de Gusa S/A v. Amci Holdings, Inc.*,
  650 F. Supp. 3d 228 (S.D.N.Y. 2023)....................................................................24

*Continental Assurance Co. v. Geothermal Resources Int'l, Inc.*,
  Case No. 89 C 8858, 1991 U.S. Dist. LEXIS 13925 (N.D. Ill. Sept. 26, 1991) ....................19

*Corridor Capital LLC v. Perla Global Capital Advisors, LLC*,
  No. 15 C 5757, 2016 U.S. Dist. LEXIS 17730 (N.D. Ill. Feb. 12, 2016)..............................15

*Dale v. Deutsche Telekom AG*,
  No. 1:22-cv-03189, 2023 U.S. Dist. LEXIS 196872 (N.D. Ill. Nov. 2, 2023) ........................12

*Deb v. Sirva, Inc.*,
  832 F.3d 800 (7th Cir. 2016) ................................................................................15

*Dickson Marine v. Air Sea Broker*,
   969 F. Supp. 389 (E.D. La. 1997) ........................................................................................16

*Felland v. Clifton*,
   682 F.3d 665 (7th Cir. 2012) ...............................................................................................9

*Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*,
   No. 06 C 3183, 2007 U.S. Dist. LEXIS 80130 (N.D. Ill. Oct. 30, 2007) .............................23

*Greenberg v. Miami Children's Hosp. Research Inst., Inc.*,
   208 F. Supp. 2d 918 (N.D. Ill. 2002) ..................................................................................11

*Greenhill v. Vartanian*,
   917 F.3d 984 (7th Cir. 2019) ...............................................................................................20

*Heiman v. Bimbo Foods Bakeries Distrib. Co.*,
   No. 17 CV 4065, 2017 U.S. Dist. LEXIS 172183 (N.D. Ill. Oct. 18, 2017) .........................19

*Hobart Corp. v. Dayton Power & Light Co.*,
   Case No. 3:13-cv-115, 2014 U.S. Dist. LEXIS 20952 (S.D. Ohio Feb. 18,
   2014) ..................................................................................................................................25

*Hogan v. Amazon.com, Inc.*,
   Case No. 21 C 3169, 2022 U.S. Dist. LEXIS 58347 (N.D. Ill. Mar. 30, 2022) ...................22

*In re Honey Transshipping Litig.*,
   87 F. Supp. 3d 855 (N.D. Ill. 2015) ....................................................................................12

*Horbach v. Kaczmarek*,
   288 F.3d 969 (7th Cir. 2002) ...............................................................................................22

*Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*,
   312 F.3d 833 (7th Cir. 2002) ...............................................................................................11

*JP Morgan Chase Bank v. Kowalski*,
   No. 19-cv-05770, 2020 U.S. Dist. LEXIS 205649 (N.D. Ill. Nov. 4, 2020) .........................20

*LaSala v. UBS, AG*,
   510 F. Supp. 2d 213 (S.D.N.Y. 2007) ............................................................................16, 23

*Robbins ex rel. Martins v. Physicians for Women's, LLC*,
   90 A.3d 925 (Conn. 2014) ...................................................................................................23

*Medicor AG v. Arterial Vascular Eng'g*,
   No. 97-15465, 1998 U.S. App. LEXIS 5528 (9th Cir. Mar. 19, 1998) .................................16

*Menzies v. N. Trust Corp.*,
   Case No. 15-cv-3403, 2021 U.S. Dist. LEXIS 9497 (N.D. Ill. Jan. 19, 2021) .....................12

*Michael Lewis Co. v. Int'l Consol. Airlines Grp., S.A.*,
  Case No. 1:21-cv-01751, 2022 U.S. Dist. LEXIS 50349 (N.D. Ill. Mar. 22,
  2022) ...........................................................................................................17

*Midwest Biomedical Res., Inc. v. Breas Med., Inc.*,
  No. 21 C 954, 2021 U.S. Dist. LEXIS 97779 (N.D. Ill. May 24, 2021) ................................14

*Miglin v. Mellon*,
  No. 07 C 6863, 2008 U.S. Dist. LEXIS 54565 (N.D. Ill. July 17, 2008) ...............................13

*Mueller v. Apple Leisure Corp.*,
  880 F.3d 890 (7th Cir. 2018) ......................................................................................13, 16

*NewSpin Sports, Ltd. Liability Co. v. Arrow Electronics, Inc.*,
  910 F.3d 293 (7th Cir. 2018) .............................................................................19, 20, 21

*Paulsen v. Abbott Lab'ys & Abbvie Inc.*,
  39 F.4th 473 (7th Cir. 2022) ......................................................................................19

*Philips Med. Sys. (Cleveland), Inc. v. Buan*,
  No. 19-cv-02648, 2021 U.S. Dist. LEXIS 140744 (N.D. Ill. July 28, 2021) ..................17, 18

*Ploense v. Electrolux Home Prods.*,
  377 Ill. App. 3d 1091, 882 N.E. 2d 653 (Ill. App. Ct. 2007) ....................................................12

*PNC Bank, Nat'l Ass'n v. Rising Sun Holdings, Inc.*,
  No. 17-cv-2245, 2019 U.S. Dist. LEXIS 233471 (N.D. Ill. Mar. 29, 2019) ...........................10

*Rosario Veiga v. World Meteorological Organisation*,
  486 F. Supp. 2d 297 (S.D.N.Y. 2007) ....................................................................................16

*Schwarz v. Sellers Mkts., Inc.*,
  812 F. Supp. 2d 932 (N.D. Ill. 2011) ....................................................................................13

*Stifel v. Lac DU Flambeau Band of Lake Superior Chippewa Indians*,
  807 F.3d 184 (7th Cir. 2015) ......................................................................................14

*Stroitelstvo Bulg. Ltd. v. Bulgarian-American Enter. Fund*,
  589 F.3d 417 (7th Cir. 2009) .............................................................................15, 16, 17, 18

*Todd v. Bridges*,
  No. 19 C 1677, 2020 U.S. Dist. LEXIS 119233 (N.D. Ill. July 8, 2020) ...............................20

*Troya Int'l, Ltd. Sti. v. Bird-X, Inc.*,
  Case No. 15 C 9785, 2017 U.S. Dist. LEXIS 201223 (N.D. Ill. Dec. 7, 2017) ......................21

*Xado Tech, LLC v. US Envirotech, Inc.*,
  No. 13 C 6901, 2014 U.S. Dist. LEXIS 109059 (N.D. Ill. Aug. 5, 2014) ...............................14

*Yavuz v. 61 MM, Ltd.*,
    576 F.3d 1166 (10th Cir. 2009) ............................................................................16

**Statutes**

735 ILCS 5/13-205 ............................................................................20

735 ILCS 5/13-206 ............................................................................21

735 ILCS 5/13-215 ............................................................................22

805 ILCS 5/11.50(2) ............................................................................24

## <u>INTRODUCTION</u>

This Court previously concluded that there is no personal jurisdiction over Defendants BSI SA (incorrectly named as Banca Svizzera Italiana) ("<u>BSI</u>") and EFG International AG ("<u>EFG</u>") (collectively, "<u>Defendants</u>") and dismissed Plaintiff's original complaint because "Plaintiff did not suffer from any *forum-related* activities." (Dkt. 86, p. 7) (emphasis in original). While Plaintiff's Amended Complaint adds some details regarding the particulars of how Plaintiff was allegedly defrauded, the Amended Complaint fails to rectify the jurisdictional shortcomings of Plaintiff's original pleading. Even with the benefit of having six months to comb through the thousands of pages of bank records produced by Defendants during jurisdictional discovery regarding the two bank accounts at issue, the jurisdictional allegations in the Amended Complaint boil down to only a handful of communications that Plaintiff contends were sent to him in Illinois by BSI approximately 20 years ago. These scant contacts between BSI and Illinois—over the course of Plaintiff's three-decade long relationship with BSI—fall far short of the sustained contact between a defendant and the forum needed to establish personal jurisdiction.

Plaintiff attempts to compensate for these jurisdictional deficiencies by seeking to impute the alleged forum-related activities of non-party Paolo Banfi (Plaintiff's chosen personal financial adviser) to BSI. However, much like Plaintiff's misguided efforts to shift the blame for Banfi's criminal conduct to BSI, Plaintiff's attempt to exert personal jurisdiction over the Defendants vis-à-vis Banfi fails because this Court does not recognize the "co-conspirator" theory of jurisdiction. At the end of the day, Plaintiff's claims—just like those in his original filing—arise out of a "general banking relationship" with BSI, which was neither formed in Illinois nor performed in Illinois, and which did not involve any conduct that was purposefully "aimed" at Illinois. (Dkt. 86, pp. 5-6.)

Because this Court dismissed Plaintiff's original complaint for lack of personal jurisdiction, the Court did not have occasion to consider the other deficiencies of Plaintiff's original complaint. The Amended Complaint suffers from the same host of fatal defects that plagued the first complaint and which require dismissal in the unlikely event the Court determines that personal jurisdiction exists here.

*First*, Plaintiff agreed to have all disputes arising out of his banking relationship with BSI litigated in Switzerland. The Amended Complaint references four agreements between Plaintiff and BSI – each of which contains a forum selection clause which mandates that Plaintiff's claims be litigated in Switzerland under Swiss law. The Court should enforce Plaintiff's choice of forum by dismissing this action pursuant to the doctrine of *forum non conveniens.*

*Second*, Plaintiff's claims are barred by the statute of limitations. Plaintiff became aware of his causes of action against BSI in January 2014. Plaintiff's tort claims are subject to a five-year statute of limitations that expired in 2019 and Plaintiff's breach of contract claim, which is premised on alleged events between 2004 and 2010, is subject to a ten-year statute of limitations that expired in 2020. By the time Plaintiff filed this suit in 2022, all of his claims were untimely.

*Third*, Plaintiff's claims against BSI are substantively flawed. As discussed above, Plaintiff's claims are governed by Swiss law. There is no precise analogue to aiding and abetting under Swiss law, and consequently, Plaintiff's three claims premised on aiding and abetting require dismissal. Similarly, Plaintiff's claims against EFG—which are premised solely on a theory of successor liability—must all be dismissed because Plaintiff fails to state a claim against BSI in the first instance, and in any event, such claims fail under either Swiss or Illinois law.

For each of these separate and independent reasons, the Amended Complaint fails as a matter of law and should be dismissed with prejudice.

**FACTUAL BACKGROUND**

As this Court will recall, this case arises out of a scheme to defraud perpetrated by Plaintiff's former personal financial adviser, Paolo Banfi – a non-party who was criminally prosecuted and convicted of stealing millions of dollars from Plaintiff. (Am. Compl., Dkt. 90, ¶ 30.) In this lawsuit, Plaintiff attempts to shift the blame for Banfi's actions to BSI (the Swiss bank where those funds were kept), alleging that Plaintiff's banker at BSI, Paolo Zola, aided and abetted Banfi and conspired with him in carrying out his fraudulent activities. (*Id.*, ¶ 1.) Plaintiff also asserts claims against EFG—a Swiss bank with whom Plaintiff had no business dealings—on the theory that EFG is liable as BSI's successor-by-merger. (*Id.*, ¶¶ 22-27.)

Plaintiff's banking relationship with BSI began in 1991 – long before any of Banfi's fraudulent activities are alleged to have occurred. (*Id.*, ¶ 43.) Plaintiff does not allege that BSI did anything to solicit Plaintiff's business in Illinois; to the contrary, Plaintiff acknowledges that he "became a BSI customer on the advice of [Plaintiff's] financial advisor, Banfi." (*Id.*) According to Plaintiff, Banfi's fraudulent scheme centered around the construction of a hotel in St. Moritz, Switzerland that was initially funded with a line of credit from BSI and later with an additional loan secured by a mortgage on the hotel property. More specifically, Plaintiff alleges that in May 2004, "on Banfi's advice," Plaintiff entered into an agreement with an unnamed construction company to build a hotel near St. Moritz, Switzerland, and "on Banfi's recommendation," Plaintiff took out a Lombard loan[1] to finance the project (the "Lombard LOC"). (*Id.*, ¶¶ 48-50.) The Lombard LOC was approved by BSI on June 18, 2004 and secured by Plaintiff's existing bank account at BSI ending in XX5713 (the "Vedetta Account"), which had been opened prior to January 2004. (*Id.*, ¶¶ 4, 46-47, 51, 54.) Plaintiff asserts that the Lombard

---

[1] A Lombard loan allows the debtor, here Plaintiff, to withdraw money up to a granted amount and pay interest on the borrowed amount. (*Id.*, ¶ 49.)

LOC "was the primary instrument used by Banfi and Zola to defraud Kukoc." (*Id.*, ¶¶ 4, 55.) Plaintiff claims that BSI sent two documents to his home in Highland Park, Illinois to open the Lombard LOC; although neither of those documents is addressed to Plaintiff's home in Illinois and one of them appears to have been faxed to Plaintiff by BAM Enterprise – an entity that Plaintiff acknowledges was "owned and controlled by Banfi." (*See* Ex. 1-2 to Am. Compl and ¶ 87.) The agreement for the Lombard LOC contains a Swiss choice of law and forum selection clause. (Ex. 2 to Am. Compl.)

Plaintiff alleges that on June 1, 2004, he signed a letter which granted Banfi a limited power of attorney (the "Limited POA") to draw on Lombard LOC on Plaintiff's behalf, provided that the construction supervisor of the hotel project also signed off on the disbursal of any funds. (*Id.*, ¶ 52.) Although Plaintiff claims that "Zola faxed" the Limited POA to him in Illinois, this allegation is contradicted by the Limited POA itself, which is attached to the Amended Complaint and shows that it was faxed to Plaintiff by Banfi's entity, BAM Enterprise – not BSI. (*Id.*, ¶ 87 and Ex. 3 to Am. Compl.)

Plaintiff alleges that Banfi pilfered Plaintiff's Vedetta account by drawing on the Lombard LOC and using those funds for Banfi's own personal gain. (*Id.*, ¶ 57.) Once there were no more funds in the Vedetta account left for Banfi to steal, Plaintiff alleges that Banfi arranged for Plaintiff to borrow money from BSI through a loan secured by the hotel property in St. Moritz, Switzerland. (Am. Compl., ¶ 67.) BSI approved a loan to Plaintiff in December 2006 (which Plaintiff refers to as the "St. Moritz Loan") and Plaintiff opened a new bank account at BSI in January 2007 ending in XX2221 (the "2221 Account") for the purpose of receiving the funds from the St. Moritz Loan. (*Id.*, ¶¶ 68, 77.) Unlike the Lombard LOC, there are no allegations that any of the paperwork for the St. Moritz Loan or the 2221 Account was ever sent to Plaintiff in Illinois. To the contrary,

4

Plaintiff claims that he never received the paperwork for the loan and that "on information and belief" either "Zola and/or Banfi" forged his signature on one of the five documents he needed to sign in order to effectuate the loan. (Ex. 4 to Am. Compl. and ¶ 10.) The account agreement for the 2221 Account also contains a Swiss choice of law and forum selection clause. (Ex. 5 to Am. Compl.)

The crux of the alleged scheme to defraud is that instead of using the Lombard LOC and the St. Moritz Loan to finance Plaintiff's Swiss hotel project, "Banfi personally enriched himself with money" from Plaintiff's accounts. (*Id.*, ¶ 113.) Plaintiff alleges that Zola's role in the scheme was to process certain transactions with respect to these loans at the sole direction of Banfi and without Plaintiff's knowledge or direct approval. For example, Plaintiff alleges that Zola disbursed money from the Lombard LOC based on Banfi's oral requests alone on over three hundred occasions (*id.*, ¶¶ 6-7), transferred funds from Plaintiff's Vedetta Account to pay down the Lombard LOC without providing notice to Plaintiff (*id.*, ¶¶ 9, 58-60), and increased the credit limit for the Lombard LOC without securing the approval of Plaintiff (*id.*, ¶¶ 9, 65, 152) or providing written notice to Plaintiff "at his address in Highland Park" (*id.*, ¶ 60). Plaintiff alleges that, in carrying out these activities, Zola "directed communications" to Plaintiff in Chicago, "addressed letters" to Plaintiff in Chicago and provided wire requests that "display [Plaintiff's] residence or address in Highland Park." (*Id.*, ¶¶ 36-39.) However, Plaintiff does not allege that any of these communications was actually sent to or received by Plaintiff in Illinois.

There are no allegations in the Amended Complaint that Zola or BSI ever received any of the funds misappropriated by Banfi. Although Plaintiff claims that the Lombard LOC accumulated interest over the course of its existence, Plaintiff acknowledges that he defaulted on both the Lombard LOC and St. Moritz Loan and fails to allege whether BSI was ever made whole as a

result of his defaults. (*Id.*, ¶¶ 18, 81.) Moreover, Plaintiff alleges that the Lombard LOC "was used by Banfi for his own benefit" but does not allege that Zola ever used any money allegedly stolen from Plaintiff for his benefit. (*Id.*, ¶¶ 56-57.) Nor does Plaintiff identify any motive to explain why Zola allegedly conspired with Banfi to engage in the fraudulent scheme. And, whereas Plaintiff notes that "Banfi has been convicted by a Swiss court of committing fraud against [Plaintiff]" and other individuals not alleged to have any connection to BSI (*id.*, ¶ 30), Plaintiff does not—and cannot—claim that Zola was ever criminally charged for any wrongdoing, despite having spoken with the Swiss authorities investigating Banfi's wrongdoing himself. (*Id.*, ¶ 70.)

Starting on January 22, 2014, Plaintiff began filing annual requests for debt enforcement proceedings in Switzerland to toll the statute of limitations for the claims asserted in this lawsuit under Swiss law. (*Id.*, ¶ 91.) A decade later, Plaintiff commenced this lawsuit on August 23, 2022 by filing a complaint (the "Original Complaint") against the Defendants. (*Id*., ¶ 95.) Defendants moved to dismiss the Original Complaint on several grounds, including personal jurisdiction. (*See* Dkt. 35.) After nearly eight months of jurisdictional discovery during which Defendants produced all Vedetta and 2221 Account bank records, this Court dismissed the Original Complaint without prejudice for lack of personal jurisdiction. March 29, 2024, Memorandum Opinion and Order (Dkt. 86), (the "MTD Ruling"). Plaintiff filed an Amended Complaint on May 20, 2024. (Dkt. 90.)

## ARGUMENT

## I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

The Amended Compliant—like the original one—should be dismissed for lack of personal jurisdiction. As this Court previously noted, personal jurisdiction can be either general or specific. (MTD Ruling, p. 3). Plaintiff does not allege that Defendants are subject to general jurisdiction in

Illinois.  Accordingly, to be able to proceed in Illinois, Plaintiff must be able to allege sufficient facts to subject Defendants to specific personal jurisdiction in Illinois.

This Court already concluded that the allegations of the Original Complaint were insufficient to establish specific personal jurisdiction.  (MTD Ruling, pp. 5-7.)  As set forth below, Plaintiff's Amended Complaint suffers from the same jurisdictional inadequacies as his original filing and, therefore, this action should be dismissed once and for all.

### A. Plaintiff's Breach of Contract Claim Fails to Adequately Plead Personal Jurisdiction Over the Defendants

To assess specific personal jurisdiction in connection with a breach of contract claim, the Court considers "(1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois."  (MTD Ruling, pp. 4-5.)  In dismissing the Original Complaint for breach of contract, this Court identified at least five deficiencies of Plaintiff's jurisdictional allegations – none of which Plaintiff is able to cure here. (*Id.*, p. 5.)

*First*, this Court observed that Plaintiff's breach of contract claim arises out of Plaintiff's "general banking relationship" with BSI, but noted that Plaintiff failed to allege "how and where the[] contracts were negotiated and executed."  (MTD Ruling, p. 5.)  In the Amended Complaint, Plaintiff concedes that his banking relationship with BSI began in December 1991 (long before the alleged fraudulent activities), and there are no allegations that the formation of the parties' business relationship had any connection to Illinois whatsoever.  (Am. Compl., ¶ 43.)  *Second*, this Court noted that the contracts at issue were "performed in Switzerland, as they concerned BSI's

control and access to Plaintiff's Swiss accounts." (MTD Ruling, p. 5.) The same holds true again: nothing in the Amended Complaint changes the fact that all of Plaintiff's bank accounts with BSI were located in Switzerland and BSI's performance under those contracts occurred exclusively in Switzerland. *Third*, this Court noted that Plaintiff "never met or had discussions with [Zola] in Illinois." (*Id.*, p. 5.) The Amended Complaint does not add any allegations that Zola (or anyone else from BSI) ever met with Plaintiff in Illinois. *Fourth*, this Court noted that "Plaintiff initiated the contract, not BSI, as Banfi encouraged Plaintiff to bank with BSI." (*Id.*, p. 5.) Like the Original Complaint, the Amended Complaint acknowledges that Plaintiff became a "BSI customer on the advice of [Plaintiff's] financial advisor, Banfi" – not through any outreach on the part of BSI. (Am. Compl., ¶ 43.) *Fifth*, this Court noted that the only "mailings Plaintiff cites were sent after the parties entered into the contracts." (MTD Ruling, p. 5.). That remains so, as the Amended Complaint does not identify any mailings from BSI to Plaintiff in 1991 when the parties' business relationship was formed.

This Court made clear to Plaintiff what he needed to do to plead personal jurisdiction with respect to Plaintiff's breach of contract claim. Plaintiff failed to do so. Accordingly, the breach of contract claim should be dismissed for lack of personal jurisdiction (this time, with prejudice).

### B. Plaintiff's Intentional Tort Claims Fail to Adequately Plead Personal Jurisdictional Over the Defendants

The jurisdictional allegations in the Amended Complaint concerning Plaintiff's intentional tort claims fare no better. When a plaintiff alleges a tort claim, the Court considers whether the Defendants "engaged in intentional and tortious conduct, aimed at the forum state, with the knowledge that the tortious conduct would injure the Plaintiff." (*Id.*, pp. 5-6.) In its MTD Ruling, this Court observed that the Original Complaint failed to "sufficiently allege the conduct was aimed at the forum state." (*Id.*, p. 6) The only difference between the Original Complaint and the

8

amended one is that the Amended Complaint now cites a handful of different alleged communications from BSI to Plaintiff. But once again, these sparse communications fall well short of establishing personal jurisdiction.

*First*, Plaintiff alleges that BSI "sent the Lombard [LOC] request and Charge/Declaration of Pledge"—which are attached as Exhibits 1 and 2 to the Amended Complaint, respectively—to him in Illinois. (Am. Compl., ¶¶ 3, 4, 33.) As an initial matter, nothing on the face of these documents suggests they were actually sent by BSI to Plaintiff in Illinois, and to the contrary, the fax marking at the top of Exhibit 2 indicates the document was sent from "BAM Enterprise," which is "owned or controlled by Banfi" and is the same entity to which Plaintiff instructed BSI send correspondence related to his Vedetta and 2221 Accounts. (*Id.*, ¶ 87, Ex. 2.) But even accepting Plaintiff's allegation as true for purposes of this motion, Plaintiff's injuries did not "arise[] from" the Defendants alleged transmission of the documents to Illinois. *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). While Plaintiff claims that the Lombard LOC "was the primary instrument used by Banfi and Zola to defraud Kukoc," (Am. Compl., ¶¶ 4, 55), Plaintiff does not allege that BSI sent the Lombard LOC documentation for the *purpose* of defrauding Plaintiff. As this Court previously held, Plaintiff must allege that the allegedly tortious conduct was "aimed at the forum state, *with knowledge* that the tortious conduct would injure the Plaintiff." (MTD Ruling, pp. 5-6) (emphasis added). Plaintiff does not allege that the Lombard LOC documentation was transmitted to him "with knowledge" it would be used for tortious conduct that would injure Plaintiff.

*Second*, Plaintiff alleges that "on June 1, 2004, Zola faxed a Limited POA Agreement", attached as Exhibit 3 to the Amended Complaint, to Plaintiff's home in Illinois. (Am. Compl., ¶¶ 52, 6, 33.) But the fax message accompanying the Limited POA contradicts Plaintiff's allegation that this document was actually sent to him by BSI because it shows that it was sent by an

individual named Paolo Casali on behalf of "BAM Enterprise SA." (*Id.*, ¶ 87, Ex. 3 at p. 2.) "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Thus, the alleged transmission of the Limited POA does not constitute a "contact" between BSI and Illinois because it was not sent by BSI to Plaintiff in Illinois.

*Third*, Plaintiff alleges that on September 14, 2006, following Plaintiff's agreement to wire transfer money to Banfi, "Zola sent wire instructions to [Plaintiff's] financial advisor in the Chicago-area." (Am. Compl., ¶¶ 85-87, 90.) But again, Plaintiff does not allege BSI in any way induced Plaintiff to wire these funds to Banfi or otherwise transmitted these wire instructions "with knowledge" that they would be used for tortious conduct that would injure Plaintiff. (*See* MTD Ruling, p. 5-6.) Equally important, Plaintiff does not allege that the $1,000,000 allegedly wired to Banfi was either transferred from or to any bank account located in *Illinois*. Plaintiff merely alleges that the funds were transferred from an unspecified bank account in the "United States" to another unspecified account at BSI owned by BAM Enterprise. (*Id.*, ¶¶ 85-88.) And even if the funds *were* transferred from a bank account in Illinois (which Plaintiff does not allege), "wire transfers from an Illinois account" are insufficient to establish personal jurisdiction. *PNC Bank, Nat'l Ass'n v. Rising Sun Holdings, Inc.*, No. 17-cv-2245, 2019 U.S. Dist. LEXIS 233471, at *1-3 (N.D. Ill. Mar. 29, 2019) (Coleman, J.).

*Finally*, Plaintiff alleges that in 2011, "Zola called [Plaintiff] in Chicago, telling [Plaintiff] that he should wire $2 million to his other currency accounts." (*Id.*, ¶ 90.) However, Plaintiff concedes that he "did not transfer this money," and, therefore, Plaintiff has no plausible basis to contend that any injuries could have "arisen from" this alleged contact between BSI and Illinois. (*Id.*)

Aside from these sparse communications, Plaintiff alleges in conclusory fashion that there are hundreds of other unidentified communications that BSI allegedly "addressed to", "directed toward" or "display" Plaintiff's Illinois address. (*See, e.g.*, *Id.*, ¶¶ 34, 36, 38, 39.) But Plaintiff's carefully chosen verbiage is insufficient to demonstrate such communications were ever sent to or received in Illinois. To the contrary, Plaintiff completed an "Address for Notification" section in the account agreements for both the Vedetta Account and 2221 Account whereby he specifically instructed BSI to send all account-related correspondence to an address in *Switzerland*, not Illinois. (*See* August 25, 2023 Declaration of Athos Padlina, Dkt. 64-1, ¶¶ 9-10); (Ex. 5 to Am. Compl., at p. 3.) In other words, although Plaintiff alleges that "hundreds" of communications and documents display Plaintiff's Highland Park address on them, he does not and cannot allege those communications and documents were ever actually *mailed* to Illinois because Plaintiff opted to have all bank correspondence sent to Banfi in Switzerland. (Dkt. 64-1, ¶¶ 9-10.) Plaintiff even admits that the only document attached to the Amended Complaint displaying his Highland Park, Illinois address was not sent there and that Vedetta account statements were routinely not sent to him in Illinois. (*See* Ex. 4 to Am. Compl., and ¶¶ 63, 68.)

Of course, even if the Court accepts as true Plaintiff's allegation that BSI had *some* communications with Plaintiff in Illinois, such isolated and sporadic contacts are manifestly insufficient as a matter of law to subject Defendants to personal jurisdiction here. *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n*, 312 F.3d 833, 847 (7th Cir. 2002) (holding exercise of personal jurisdiction over defendant solely on the basis of certain letters it sent to plaintiff in the forum is improper, especially where defendant sent the letters to the forum at plaintiff's request); *see also Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 208 F. Supp. 2d 918, 926 (N.D. Ill. 2002) (same). The few instances identified in the Amended Complaint where BSI allegedly

contacted Plaintiff in Illinois fail to show "sustained contact" that is "not random, fortuitous, or attenuated" as is required to establish personal jurisdiction. *Abbott Labs., Inc. v. Biovalve Techs., Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008). Accordingly, Plaintiff's intentional tort claims should be dismissed with prejudice.

### C.     The Acts of Banfi Cannot be Imputed to BSI to Establish Personal Jurisdiction

Perhaps recognizing that Defendants lack the requisite contacts with Illinois to be subject to personal jurisdiction here, Plaintiff insinuates that the acts of Banfi can be imputed to Defendants for purposes of personal jurisdiction by alleging, for the first time, a conspiracy between Banfi and Zola. (*See, e.g.*, Am. Compl., ¶¶ 33, 35, 73, 126.) But any attempt to impute the alleged tortious acts committed in the forum by Banfi to Defendants is misguided because Illinois has "scuttl[ed] 'the theory of jurisdiction'…whereby a coconspirator commits a tortious act in Illinois as agent for his coconspirators." *Ploense v. Electrolux Home Prods.*, 377 Ill. App. 3d 1091, 1105, 882 N.E. 2d 653, 666 (Ill. App. Ct. 2007) (citing *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 23-24, 694 N.E. 2d 565, 571 (1998)). In recognition of this, "courts in this [Northern] District [of Illinois] have almost uniformly rejected the viability of conspiracy theory of personal jurisdiction." *Batton v. Nat'l Ass'n of Realtors*, No. 21-cv-00430, 2024 U.S. Dist. LEXIS 28521, *42-43 (N.D. Ill. Feb. 20, 2024); *see also Dale v. Deutsche Telekom AG*, No. 1:22-cv-03189, 2023 U.S. Dist. LEXIS 196872, *21 (N.D. Ill. Nov. 2, 2023); *Menzies v. N. Trust Corp.*, Case No. 15-cv-3403, 2021 U.S. Dist. LEXIS 9497, *11-12 (N.D. Ill. Jan. 19, 2021). Accordingly, the exercise of personal jurisdiction over Defendants based on a co-conspirator theory of jurisdiction stretches "the bounds of Illinois law and the bounds of federal due process" and fails as a matter of law. *In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 873 (N.D. Ill. 2015).

## II. THE DOCTRINE OF *FORUM NON CONVENIENS* REQUIRES THAT PLAINTIFF'S CLAIMS BE LITIGATED IN SWITZERLAND

Even if Plaintiff could establish personal jurisdiction over Defendants in Illinois (which he cannot), Switzerland—not Illinois—is the appropriate venue for this dispute. As set forth below, *each* of the four agreements at issue here includes a forum selection clause which mandates that all disputes between Plaintiff and BSI be litigated in Switzerland. Furthermore, all relevant witnesses and documents are located in Switzerland, the relevant documents are predominantly in Italian, and the four contractual agreements between Plaintiff and BSI all contain a Swiss choice-of-law provision. For these reasons, the case should be dismissed based on *forum non conveniens*.

### A. The Swiss Forum Selection Clauses Control

"A forum-selection clause channeling litigation to a nonfederal forum is enforced through the doctrine of forum non conveniens." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 892 (7th Cir. 2018). Although a *forum non conveniens* analysis typically involves the consideration of public and private interest factors, where a forum selection clause is involved, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 894. In this respect, mandatory forum selection clauses are routinely upheld and "prima facie valid" – even where they designate a foreign country as the forum. *Schwarz v. Sellers Mkts., Inc.*, 812 F. Supp. 2d 932, 936, 941 (N.D. Ill. 2011) (citing *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 886 (7th Cir. 2004)). Moreover, courts construe forum selection clauses "very broadly" and enforce such provisions even where, as here, a plaintiff also asserts non-contractual causes of action. *Miglin v. Mellon*, No. 07 C 6863, 2008 U.S. Dist. LEXIS 54565, *3 (N.D. Ill. July 17, 2008); *Brady v. Sperian Energy Corp.*, No. 18 C 6968, 2019 U.S. Dist. LEXIS 82674, *6-7 (N.D. Ill. May 16, 2019).

The two loans that are the focus of Plaintiff's claims are the Lombard LOC and the St. Moritz Loan. In the case of the Lombard LOC, both the account opening documentation for the Vedetta Account (which secured the Lombard LOC) as well as the "Charge/Declaration of pledge" establishing the Lombard LOC contain mandatory Swiss form selection clauses providing that the place for all disputes shall be "the Bank's place of domicile" or the "registered office/branch of the Bank where the account or custody account is held" – which is Switzerland. (July 17, 2024 Declaration of Athos Padlina, Dkt. 99, ¶ 11, Ex. B); (Ex. 2 to Am. Compl., at p. 3); (April 10, 2023 Declaration of Athos Padlina, Dkt. 37, at ¶ 12). Likewise, with respect to the St. Moritz Loan, both the account opening documentation for the 2221 Account (which secured the St. Moritz loan) and the "Charge/Declaration of pledge" governing the St. Moritz Loan, attached hereto as Exhibit A, have identical mandatory Swiss forum selection clauses providing that the "exclusive venue for all legal actions shall be the location of the Bank's office with which the contractual relationship exists" – which is, again, Switzerland. (Ex. 5 to Am. Compl., at p. 5); (Ex. A, at p. 2); (Dkt. 37, at ¶ 9).

While Plaintiff seeks to avoid these mandatory forum selection clauses by claiming that he was fraudulently induced into signing the account opening documentation for the 2221 Account, (Am. Compl., ¶¶ 73-74), this argument fails because "[c]laims of fraudulent inducement or duress to enter into a contract generally are insufficient to avoid a forum-selection clause," *Midwest Biomedical Res., Inc. v. Breas Med., Inc.*, No. 21 C 954, 2021 U.S. Dist. LEXIS 97779, *7 (N.D. Ill. May 24, 2021), unless it can be shown that "'[the] forum selection clause...*itself* was procured by fraud.'" *Stifel v. Lac DU Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 199 (7th Cir. 2015) (emphasis in original); *see also Midwest Biomedical Res., Inc.*, 2021 U.S. Dist. LEXIS 97779 at *7; *Xado Tech, LLC v. US Envirotech, Inc.*, No. 13 C 6901, 2014 U.S. Dist.

LEXIS 109059, *14 (N.D. Ill. Aug. 5, 2014). Plaintiff does not allege that any of the forum selection clauses *themselves* were procured by fraud and, in any event, Plaintiff does not allege he was fraudulently induced into signing the account opening documentation for the Vedetta Account, which pre-dates Plaintiff's claims of wrongdoing. Thus, even if the subsequent forum selection clauses were somehow deemed unenforceable (which they are not), the Swiss forum selection clause in the Vedetta Account alone mandates dismissal of this action on the grounds of *forum non conveniens*. *Corridor Capital LLC v. Perla Global Capital Advisors, LLC*, No. 15 C 5757, 2016 U.S. Dist. LEXIS 17730, *9-10 (N.D. Ill. Feb. 12, 2016).

### B. Switzerland Is an Available and Adequate Forum and the Public and Private Factors Weigh in Favor of Switzerland Being the Forum for this Litigation

Not only is Switzerland the situs designated by the parties in each agreement between them, it is also the most appropriate venue for this dispute. The threshold issue in a *forum non conveniens* analysis is whether the alternative forum is both "available and adequate." *Stroitelstvo Bulg. Ltd. v. Bulgarian-American Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). If so, the district court then considers whether *forum non conveniens* dismissal would serve the private interests of the parties and the public interests of the alternative forums. *Id.* at 424. As set forth below, both elements are satisfied here.

#### 1. Switzerland is an "available and adequate" forum

An alternative forum is "available" if all the parties are amenable to process and within the forum's jurisdiction. *Deb v. Sirva, Inc.,* 832 F.3d 800, 807 (7th Cir. 2016). As Defendants are both headquartered in Switzerland, (Am. Compl., ¶¶ 20-21), they are subject to process within Switzerland's jurisdiction, rendering it an "available" forum. *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 421.

An alternative forum is "adequate" when it provides some potential avenue for redress and will treat the parties fairly. *Deb*, 832 F.3d at 807. Courts have repeatedly recognized Switzerland as an adequate forum in cases such as this. *See, e.g.*, *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1177 (10th Cir. 2009) ("Swiss courts have routinely been held adequate for contract and tort claims [such as fraud]."); *Medicor AG v. Arterial Vascular Eng'g*, No. 97-15465, 1998 U.S. App. LEXIS 5528, at *2 (9th Cir. Mar. 19, 1998) ("Switzerland offers a clearly adequate forum."); *Dickson Marine v. Air Sea Broker*, 969 F. Supp. 389, 392 (E.D. La. 1997); *In re Alcon Shareholder Litigation*, 719 F. Supp. 2d 263, 279 (S.D.N.Y. 2010). Swiss law recognizes civil claims based on contract and tort and portions of Swiss law are even designed specifically "to prevent banks from facilitating money laundering." *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007); *do Rosario Veiga v. World Meteorological Organisation*, 486 F. Supp. 2d 297, 304 (S.D.N.Y. 2007).

Importantly, the Court "need not be certain" Plaintiff will succeed on his claims in Switzerland in order to find it an "adequate" forum, and it is "not necessary that the forum's legal remedies be as comprehensive or as favorable as the claims a plaintiff might bring in an American court." *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 421; *see also In re Alcon*, 719 F. Supp. 2d at 273. "Instead, this alternative forum inquiry directs courts to consider whether the foreign court would be capable of litigating the 'essential subject matter' of the dispute." *In re Alcon*, 719 F. Supp. 2d at 274. The only salient question is whether the alternative forum "provides the plaintiff with a fair hearing to obtain some remedy for the alleged wrong." *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 421. Because Switzerland is both an available and adequate forum, it is the appropriate venue for this dispute.

2.     Public and Private Interest Factors Weigh in Favor of Dismissal

As noted above, when a *forum non conveniens* motion involves a forum selection clause, it is generally unnecessary for the court to consider the public and private interest factors. *Mueller*, 880 F.3d at 894. But even if the Court were to analyze the public and private interest factors, those factors only reinforce why Switzerland is the more appropriate forum for this dispute.

*First*, the public factors weigh in favor of having this dispute litigated in Switzerland. Public interest factors include: (1) "the administrative difficulties stemming from court congestion"; (2) "the local interest in having localized disputes decided at home"; (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"; (4) "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19-cv-02648, 2021 U.S. Dist. LEXIS 140744, *14 (N.D. Ill. July 28, 2021).

Here, not only do the contracts governing the loans and bank accounts at issue contain forum selection clauses, they each contain Swiss choice-of-law provisions. (Am. Compl., Ex. 2 at p. 3, Ex. 5 at p. 5); (Ex. A, at p. 2); (Dkt. 99-2). Where a contract underlying the dispute contains a foreign choice-of-law provision, dismissal to the foreign jurisdiction is favored. *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 426. Given that Plaintiff's claims turn on the application of Swiss law, it makes sense to have this case litigated "in a forum that is at home with the law that must govern the action" and where the Court can avoid problems arising from the "application of foreign law." *Philips*, 2021 U.S. Dist. LEXIS 140744 at *14. Moreover, Illinois's "local interest in having localized controversies decided at home" does not supersede a forum selection clause unless the local interest is exceptional or unusual – which is not the case here. *Michael Lewis Co. v. Int'l Consol. Airlines Grp., S.A.*, Case No. 1:21-cv-01751, 2022 U.S. Dist. LEXIS 50349, *15-16 (N.D.

Ill. Mar. 22, 2022) (holding local interest not exceptional enough to override forum selection clause where the complaint was "brought by an Illinois company . . . regarding services that were provided in Illinois").

*Second*, the private interest factors also weigh in favor of dismissal of this lawsuit to be litigated in Switzerland. Private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to compel the attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses"; (3) "whether the premises may be viewed"; (4) "[t]he enforceability of the judgment, if one is obtained"; and (5) "all other practical problems that make trial [] easy, expeditious[,] and inexpensive." *Philips*, 2021 U.S. Dist. LEXIS 140744 at *13. Where the witnesses and documents pertaining to the dispute are located primarily in a foreign forum, it "follows that most of the discovery in this case will take place in [the foreign forum], and transporting all of the evidence and witnesses to Chicago would be unnecessarily expensive." *Stroitelstvo Bulg. Ltd.*, 589 F.3d at 425 (holding private interest factors weigh in favor of dismissal).

Here, (1) all witnesses who performed work on behalf of BSI in connection with Plaintiff's BSI bank accounts did so in Switzerland, (Dkt. 37, ¶ 10); (2) many of the documents relevant to this dispute are in Italian and would require translation to English, (*Id.*, ¶ 14) (Ex. 3 to Am. Compl., at pp. 4-5); (3) all funds deposited by Plaintiff into his BSI bank accounts would have been held in Switzerland, (Dkt. 37, ¶ 13); and (4) any effort to seek discovery in Switzerland would necessitate compliance with the Hague Evidence Convention and any ensuing depositions would need to be conducted in accordance with Swiss civil procedure (which generally requires witnesses to be examined by the court). 4 U.S.T. 2558-2559, T.I.A.S. No. 7444.

For each of these reasons, dismissal based on *forum non conveniens* is appropriate.

### III. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Though the Court need not reach the merits of this dispute for the reasons outlined above, the Amended Complaint also fails to state a claim upon which relief can be granted because, as set forth below, Plaintiff's claims are both time-barred and substantively deficient.

#### A. Plaintiff's Claims Are Barred by The Illinois Statute Of Limitations

Plaintiff's claims are barred by the applicable Illinois statute of limitations. "[I]n Illinois, '[s]tatutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought, and do not alter substantive rights.'" *NewSpin Sports, Ltd. Liability Co. v. Arrow Electronics, Inc.*, 910 F.3d 293, 300 (7th Cir. 2018) (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351, 770 N.E.2d 177, 194 (Ill. 2002)). Under Illinois's choice of law rules, all "procedural" matters are governed by Illinois law, regardless of the applicable substantive law. *Id.*; *Paulsen v. Abbott Lab'ys & Abbvie Inc.*, 39 F.4th 473, 477 (7th Cir. 2022). "This is so even when the parties have included a choice-of-law provision in their contract." *Heiman v. Bimbo Foods Bakeries Distrib. Co.*, No. 17 CV 4065, 2017 U.S. Dist. LEXIS 172183, *10 (N.D. Ill. Oct. 18, 2017). Thus, because Plaintiff filed this lawsuit in Illinois, the Illinois statute of limitations applies.

##### 1. Plaintiff's Tort Claims Are Barred by the Five-Year Statute of Limitations

Plaintiff alleges tort claims for (1) Aiding and Abetting Fraud (Count I); (2) Civil Conspiracy (Count II), (3) Aiding and Abetting Civil Theft (Count III); and (4) Aiding and Abetting Breach of Fiduciary Duty (Count IV). (Am. Compl., ¶¶ 108-145.) Each of these tort claims is subject to a five-year statute of limitations, which expired before this lawsuit was filed.

"To determine whether an aiding and abetting claim is timely, the court must look to the statute of limitations for the primary violation." *Continental Assurance Co. v. Geothermal*

*Resources Int'l, Inc.*, Case No. 89 C 8858, 1991 U.S. Dist. LEXIS 13925, *13 (N.D. Ill. Sept. 26, 1991) (*citing Hochfelder v. Midwest Stock Exch.*, 503 F.2d 364, 374-75 (7th Cir. 1974)). Similarly, claims for civil conspiracy are governed by the statute of limitations applicable to the alleged tort upon which the conspiracy is premised, which here is fraud. *Todd v. Bridges*, No. 19 C 1677, 2020 U.S. Dist. LEXIS 119233, *8, (N.D. Ill. July 8, 2020); (Am. Compl., ¶ 122). In Illinois, claims for fraud, conversion, and breach of fiduciary duty are each governed by a five-year statute of limitations. *See* 735 ILCS 5/13-205; *NewSpin Sports*, 910 F.3d at 310 (fraud); *Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019) (conversion); *JP Morgan Chase Bank v. Kowalski*, No. 19-cv-05770, 2020 U.S. Dist. LEXIS 205649, *7 (N.D. Ill. Nov. 4, 2020) (breach of fiduciary duty). The applicable five-year statute of limitations begins to run "when the injured party 'knows or reasonably should know' of the injury and its cause." *Greenhill*, 917 F.3d at 988.

Plaintiff acknowledged in his previous complaint that he "first learned of his potential causes of action against BSI in 2014." (Dkt. 1-1, ¶¶ 51-52.) Although Plaintiff has selectively omitted that allegation from his Amended Complaint, Plaintiff acknowledges that he began submitting "requests for debt enforcement proceedings in Switzerland" in January 22, 2014 for the purpose of seeking to "toll the applicable statute of limitations" for his claims against BSI under Swiss law. (*Id.*) In other words, Plaintiff was undoubtedly *aware* of his claims as of January 2014 when he took measures intended to toll the statute of limitations. But unfortunately for Plaintiff, Illinois law—not Swiss law—governs the timeliness of his claims in this forum. Therefore, pursuant to Plaintiff's own allegations, the time to file his tort claims expired in January 2019 – long before Plaintiff filed this lawsuit on August 23, 2022. (Am. Compl., ¶ 95.)

2.    Plaintiff's Breach of Contract Claim is Barred by the Ten-Year Statute of Limitations

Plaintiff's remaining claim for breach of contract (Count V) is also untimely.  (Am. Compl., ¶¶ 146-55.)  In Illinois, claims for breach of a written contract are governed by a ten-year statute of limitations.  735 ILCS 5/13-206; *NewSpin Sports,* 910 F.3d at 301.  The ten-year limitation period on "[a]n action for breach of contract accrues when the breach of contractual duty occurs."  *Troya Int'l, Ltd. Sti. v. Bird-X, Inc*., Case No. 15 C 9785, 2017 U.S. Dist. LEXIS 201223, *26 (N.D. Ill. Dec. 7, 2017).  Each breach of a contract requiring continuing performance is separately actionable and subject to its own accrual date and limitations period.  *Id.* at *26-27.

Plaintiff alleges that BSI breached its "various agreements" with him by: (1) "disbursing money from the Lombard [LOC] based on Banfi's oral requests" on over three hundred occasions following the June 1, 2004 execution of the Limited POA (Am. Compl., ¶¶ 6-7, 152), (2) "transferring funds from [Plaintiff's] Vedetta Account to pay down the Lombard [LOC]" instead of providing written notice of the defaults of the Lombard LOC to Plaintiff via a "Simple Demand," from March 31, 2005 to May 19, 2010 (*id.*, ¶¶ 58-60, 152), (3) "increasing the credit limit for the Lombard [LOC]" on three occasions from August 2005 to October 4, 2006 without providing written notice to or securing the approval of Plaintiff (*id.*, ¶¶ 65, 152), and (4) "encumbering [his] accounts" with the St. Moritz Loan in December 2006 (*id.*, ¶¶ 68, 152).  Crucially, Plaintiff fails to identify a single breach of any agreement between him and BSI that occurred after 2010.  Thus, even for the most "recent" alleged breaches by BSI, Plaintiff's time to file a breach of contract claim expired in 2020, rendering Count V of the Amended Complaint, filed on August 23, 2022, untimely as a matter of law.  735 ILCS 5/13-206; (Am. Compl., ¶ 95).

Plaintiff's allegations that BSI sought to conceal its purported breaches of contract do not alter this analysis in light of the fact that Plaintiff knew of his injuries no later than January 2014.

(Am. Compl., ¶ 91). The Illinois limitations period applicable to fraudulently concealed claims does not apply where, as here, Plaintiff had ample time under the otherwise applicable limitations period for breach of contract to assert his claim. 735 ILCS 5/13-215; *Horbach v. Kaczmarek*, 288 F.3d 969, 972 (7th Cir. 2002) ("...the Illinois Supreme Court has held that [Section 13-215] governs only when the defendant's concealment has left the plaintiff with less than a reasonable time to sue under the otherwise-applicable statute of limitations"). Since in January 2014, even the earliest identified alleged breaches by BSI were still actionable under Section 13-206, the limitations period applicable to fraudulently concealed claims would not have afforded Plaintiff any additional time to bring suit. (Am. Compl., ¶¶ 6-7, 91.) And even if the Section 13-215 limitations period did apply, Plaintiff would have only had five years from the discovery of his claim for breach of contract to file suit – *i.e.*, no later than January 2019. 735 ILCS 5/13-215. Plaintiff did not file suit until over three years after January 2019, and thus, his breach of contract claim is nonetheless untimely.

### B. Plaintiff's Aiding and Abetting Claims Fail Under Swiss Law

Not only are Plaintiff's claims untimely, Plaintiff's three causes of action for aiding and abetting are substantively deficient as well. As noted above, the substance of this dispute is governed by Swiss law, pursuant to the Swiss choice-of-law provisions in the applicable agreements between Plaintiff and BSI. (*See, e.g.*, Am. Compl., Ex. 2, p. 3). Where valid contracts between the parties contain a choice-of-law provision, "Illinois respects a contract's choice-of-law provision as long as . . . the law chosen is not contrary to Illinois' fundamental public policy." *Hogan v. Amazon.com, Inc.*, Case No. 21 C 3169, 2022 U.S. Dist. LEXIS 58347, *9 (N.D. Ill. Mar. 30, 2022). That the law chosen differs from Illinois law does not render it contrary to Illinois fundamental public policy, as "Illinois courts have enforced choice of law provisions even when the foreign law is arguably inconsistent with an Illinois statute." *Broadmark Capital Corp. v.*

*GlobalNet, Inc.*, 169 F. Supp. 2d 873, 879 (N.D. Ill. 2001). Swiss law does not recognize a cause of action for aiding and abetting that is analogous to the theory of liability Plaintiff alleges here. *LaSala*, 510 F. Supp. 2d at 222 (holding that "Switzerland does not recognize a cause of action for aiding and abetting a breach of fiduciary duty parallel to that brought by plaintiffs" and Swiss law generally "recognizes aiding and abetting liability only in criminal context"). Accordingly, Plaintiff's attempt to hold Defendants civilly liable for allegedly "aiding and abetting" Banfi's conduct fails because that specific cause of action is not recognized under Swiss law.

### C. Plaintiff Fails to Adequately Plead Successor Liability Against EFG

Plaintiff's claims against EFG are premised solely on successor liability. Because the claims against BSI fail for the reasons articulated above, there is no basis to hold EFG liable under a "successor liability" theory. *See, e.g.*, *Robbins ex rel. Martins v. Physicians for Women's, LLC*, 90 A.3d 925, 930 (Conn. 2014) ("[T]he liability of a successor corporation is derivative in nature, and the successor may be held liable for the conduct of its predecessor only to the same extent as the predecessor"); *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 823 (Cal. Ct. App. 2013) ("Successor liability requires an underlying cause of action and merely extends the liability on that cause of action to a corporation that would not otherwise be liable."). But even if the claims against BSI survived the motion to dismiss, Plaintiff's attempt to impute the actions of BSI to EFG fails under both Swiss and Illinois law.

#### 1. Plaintiff's Claims of Successor Liability Fail Under Swiss Law

Plaintiff's claims of successor liability are governed by Swiss law and fail because Swiss law does not recognize the doctrine of successor liability.

"Successor liability is a matter of corporate law to which Illinois courts apply the 'most significant contacts' test" for purposes of a choice of law analysis. *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 U.S. Dist. LEXIS 80130, at *7 (N.D. Ill.

Oct. 30, 2007).  Switzerland would undoubtedly have the "most significant contacts" in the alleged merger or acquisition of two Swiss banks located in Switzerland, as Plaintiff tacitly recognizes by quoting from a news release issued by the Swiss Financial Market Supervisory Authority (or "FINMA") purporting to approve of EFG's "full takeover" of BSI.  (Am. Compl., ¶ 103.)  As noted recently in a federal court decision, "Swiss law is quite different than federal common law on successor liability."  *CBF Indústria de Gusa S/A v. Amci Holdings, Inc.*, 650 F. Supp. 3d 228, 249 (S.D.N.Y. 2023).  In Switzerland, "there exists no doctrine in Swiss law which is substantially similar to the . . . doctrine of 'successor liability'" under U.S. law.  *Id.*, n.19.  Thus, even if Plaintiff's claims against BSI were sound, EFG cannot be held responsible for BSI's conduct because successor liability is not recognized under Swiss law.

### 2. Plaintiff's Claims of Successor Liability Fail Under Illinois Law

Even if the Court analyzed the successor liability claims against EFG under Illinois law, Plaintiff has nonetheless failed to allege sufficient facts to sustain a claim for successor liability.

Under Illinois common law, the general rule is that a successor entity does not assume the liability of its predecessor.  *Baxi v. Ennis Knupp & Assocs.*, Case No. 10-cv-6346, 2011 U.S. Dist. LEXIS 99857, *54 (N.D. Ill. Sept. 2, 2011).  This rule is subject to certain narrow exceptions, including where "the transaction amounts to a consolidation or merger of the purchaser or seller corporation."  *Id.* at *54; *Bovinett v. HomeAdvisor, Inc.*, Case No. 17 C 6229, 2018 U.S. Dist. LEXIS 39404, *8-9 (N.D. Ill. Mar. 9, 2018).  There are two types of mergers: *de jure* (or actual) mergers and *de facto* mergers.  *Baxi*, 2011 U.S. Dist. LEXIS 99857 at *55.  In the case of a *de jure* merger, the merged corporation ceases to exist following the merger.  805 ILCS 5/11.50(2).  A *de facto* merger, on the other hand, may occur only when the following elements are present: "(1) there is a continuity of the business enterprise between seller and buyer, including continuity of management, employees, location, and assets; (2) there is a continuity of shareholders, in that

shareholders of the seller become shareholders of the buyer; (3) the seller ceases operations and dissolves as soon as possible after the transaction; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business." *Baxi*, 2011 U.S. Dist. LEXIS 99857 at *55.

Plaintiff alleges in conclusory fashion that "EFG's combination with BSI was a merger, and not an asset purchase." (Am. Compl., ¶ 24.) Yet, the Amended Complaint is devoid of facts to support this naked allegation and does not specify whether Plaintiff contends the alleged combination of EFG and BSI was a *de jure* or a *de facto* merger. It would be implausible to suggest that this transaction was a *de jure* merger given that Plaintiff has separately named and served BSI as a defendant, indicating that BSI continues to maintain an existence that is independent of and distinct from EFG. (*See* Certificate of Service, Dkt. 25) (noting that Plaintiff served "BSI SA at Viale Franscini 8, 6900 Lugano"). Nor has Plaintiff alleged any of the requisite facts sufficient to plead the existence of a *de facto* merger. *See Baxi*, 2011 U.S. Dist. LEXIS 99857 at *55. For example, Plaintiff has not alleged whether there has been a continuity of the business enterprise, whether there is an identity of officers, directors and stockholders, or whether EFG assumed the liabilities of BSI. Plaintiff's conclusory allegation that "EFG's combination with BSI was a merger"—without more—is insufficient to state a claim for successor liability against EFG. *See, e.g.*, *Hobart Corp. v. Dayton Power & Light Co.*, Case No. 3:13-cv-115, 2014 U.S. Dist. LEXIS 20952, at *14 (S.D. Ohio Feb. 18, 2014).

## **CONCLUSION**

For the foregoing reasons, Defendants BSI SA (incorrectly named as Banca Svizzera Italiana) and EFG International AG respectfully request that the Amended Complaint be dismissed in its entirety with prejudice, and that the Court grant any other and further relief it deems just and appropriate.

Dated: July 19, 2024

Respectfully submitted,

DEFENDANTS BSI SA, incorrectly named as BANCA SVIZZERA ITALIANA, and EFG INTERNATIONAL AG

By: _/s/ Jonathan S. Quinn_
      One of Their Attorneys

Jonathan S. Quinn (jquinn@nge.com)
Andrew G. May (amay@nge.com)
Benjamin Boris (bboris@nge.com)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street
Chicago, IL 60602-3801
(312) 269-8000

## <u>CERTIFICATE OF SERVICE</u>

Jonathan S. Quinn, an attorney, certifies that on July 19, 2024, he caused a copy of the

***Defendants' Memorandum of Law In Support of Their Motion to Dismiss the Amended***

***Complaint*** to be filed via this Court's CM/ECF System, which will send notice of this electronic

filing to all counsel of record receiving electronic notification.

*/s/ Jonathan S. Quinn*