**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

TONI KUKOC,

               Plaintiff,

     v.

BANCA SVIZZERA ITALIANA and
EFG INTERNATIONAL AG,

              Defendants.

Case No. 23 C 261

Judge Sharon Johnson Coleman

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Jonathan S. Quinn (jquinn@nge.com)
Andrew G. May (amay@nge.com)
Benjamin Boris (bboris@nge.com)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street
Chicago, IL  60602-3801
(312) 269-8000

*Counsel for Defendants BSI SA,*
*incorrectly named as Banca Svizzera*
*Italiana, and EFG International AG*

# TABLE OF CONTENTS

**Page**

I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ........................................................................................ 2

     A.    Plaintiff's Breach of Contract Claim Fails to Adequately Plead Personal Jurisdiction Over the Defendants .............................................................. 2

         1.    Whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois ................................. 4

         2.    Whether payment was to be made in Illinois ............................ 5

         3.    Whether the defendant was ever physically present in Illinois in connection with the contract .................................................... 5

         4.    Whether the Illinois plaintiff or the out of state defendant initiated the transaction ........................................................................... 5

         5.    The occurrence of telephone calls or other communications to and from Illinois ............................................................................. 6

     B.    Plaintiff's Intentional Tort Claims Fail to Adequately Plead Personal Jurisdiction Over the Defendants ............................................................. 6

     C.    Banfi's Acts Cannot be Imputed to BSI to Establish Personal Jurisdiction ......... 7

II.    THE DOCTRINE OF FORUM NON CONVENIENS REQUIRES THAT PLAINTIFF'S CLAIMS BE LITIGATED IN SWITZERLAND ................................... 9

     A.    The Swiss Forum Selection Clauses Are Enforceable and Control .................... 9

     B.    Switzerland Is an Available and Adequate Forum ........................................... 11

III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ............................................................................................... 12

     A.    Plaintiff's Claims Are Barred by the Illinois Statute of Limitations ................. 12

     B.    Plaintiff's Aiding and Abetting Claims Fail Under Swiss Law ......................... 14

     C.    Plaintiff Fails to Adequately Plead Successor Liability Against EFG ............... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addison v. State*,
    21 Cal. 3d 313 (1978) ...................................................................................................13

*American Family Mut. Ins. Co. v. Plunkett*,
    2014 IL App (1st) 131631..........................................................................................13

*Batton v. Nat'l Ass'n of Realtors*,
    No. 21-cv-00430, 2024 U.S. Dist. LEXIS 28521 (N.D. Ill. Feb. 20, 2024) .............................8

*Bogie v. Rosenberg*,
    705 F.3d 603 (7th Cir. 2013) ......................................................................................2

*Buckner v. Atlantic Plant Maintenance*,
    182 Ill. 2d 12, 694 N.E. 2d 565 (1998) .....................................................................8

*Campbell v. Marshall Int'l, LLC*,
    623 F. Supp. 3d 927 (N.D. Ill. 2022) ......................................................................10

*Cleary v. Sterenbuch*,
    No. 01 C 5109, 2001 U.S. Dist. LEXIS 14050 (N.D. Ill. Sept. 6, 2001)...............................11

*Domanus v. Lewicki*,
    645 F. Supp. 2d 697 (N.D. Ill. 2009) ......................................................................11

*Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*,
    No. 06 C 3183, 2007 U.S. Dist. LEXIS 80130 (N.D. Ill. Oct. 30, 2007) ..............................15

*Forty-Eight Insulations Inc. v. Johns-Manville Prods. Corp.*,
    472 F. Supp. 385 (N.D. Ill. 1979) .............................................................................4

*Green v. Advance Ross Electronics Corp.*,
    86 Ill. 2d 431, 427 N.E.2d 1203 (1981) ....................................................................7

*Greenhill v. Vartanian*,
    917 F.3d 984 (7th Cir. 2019) ...................................................................................12

*Hassebrock v. Ceja Corp.*,
    2015 IL App (5th) 140037 .......................................................................................14

*Hermitage Corp. v. Contractors Adjustment Co.*,
    166 Ill. 2d 72, 651 N.E.2d 1132 (1995) ..............................................................13, 14

*Jimenez v. Illinois*,
   No. 11-cv-4707, 2012 U.S. Dist. LEXIS 6993 (N.D. Ill. Jan. 18, 2012)................................14

*Johnke v. Espinal-Quiroz*,
   Case Nos. 14-cv-6992, 14-cv-7364, 14-cv-7917, 2016 U.S. Dist. LEXIS
   14057 (N.D. Ill. Feb. 5, 2016)....................................................................................................9

*Knaus v. Guidry*,
   389 Ill. App. 3d 804, 906 N.E.2d 644 (Ill. App. Ct. 2009)......................................................8

*Kochert v. Adagen Medical Int'l, Inc.*,
   491 F.3d 674 (7th Cir. 2007) ...................................................................................................10

*Miyano Machinery USA v. Zonar*,
   No. 92 C 2385, 1994 U.S. Dist. LEXIS 6772 (N.D. Ill. May 19, 1994) ................................15

*Mueller v. Apple Leisure Corp.*,
   880 F.3d 890 (7th Cir. 2018) ...................................................................................................12

*Ploense v. Electrolux Home Prods.*,
   377 Ill. App. 3d 1091, 882 N.E. 2d 653 (Ill. App. Ct. 2007)....................................................8

*Richter v. Instar Enters. Int'l, Inc.*,
   594 F. Supp. 2d 1000 (N.D. Ill. 2009) .......................................................................................6

*Sayles v. DirectSat USA, LLC*,
   No. 10 C 2879, 2011 U.S. Dist. LEXIS 10392 (N.D. Ill. Feb. 3, 2011)................................10

*Schwarz v. Sellers Mkts., Inc.*,
   812 F. Supp. 2d 932 (N.D. Ill. 2011) ......................................................................................10

*Soria v. Chrysler Can., Inc.*,
   2011 IL App (2d) 101236 .........................................................................................................15

*Troya Int'l, Ltd. Sti. V. Bird-X, Inc.*,
   No. 15 C 9785, 2017 U.S. Dis. LEXIS 201223 (N.D. Ill. Dec. 7, 2017)................................14

*United Labs., Inc. v. Savaiano*,
   2007 U.S. Dist. LEXIS 85710 (N.D. Ill Nov. 19, 2007).....................................................13, 14

**Statutes**

735 ILCS 5/13-217 ..........................................................................................................................13

Illinois Code Section 13-217 ..........................................................................................................13

**Other Authorities**

Fed. R. Civ. Proc. 44.1................................................................................................................12, 14

## INTRODUCTION

Plaintiff's opposition fails to address the multiple fatal deficiencies that necessitate the dismissal of the Amended Complaint. Chief among those shortcomings is the lack of minimum contacts between Defendants and Illinois. Despite Plaintiff's allegations of "extensive communications" addressed to Illinois, Plaintiff attaches only four "examples" of such communications to his Amended Complaint; and yet, even those do not evidence any communications that were actually sent by Defendant to Plaintiff in Illinois. Recognizing that Defendants' contacts with Illinois are virtually non-existent, Plaintiff's opposition doubles-down on his efforts to impute the acts of his independent personal investment advisor, Banfi, to Defendants via the "co-conspirator" theory of personal jurisdiction. But as noted in Defendants' motion, this theory is no longer viable in Illinois, and after removing Banfi's alleged forum-related acts from the equation, Plaintiff's theory of jurisdiction quickly falls apart. This Court dismissed Plaintiff's complaint once before for lack of personal jurisdiction and it should do so again.

Plaintiff likewise has no substantive retort to the Swiss forum selection clauses that he freely and knowingly signed. Not just once, but four separate times, Plaintiff agreed to litigate "all legal actions" and "all disputes" with Defendants in Switzerland. Plaintiff's argument that these forum selection clauses are unenforceable because he is an "unsophisticated consumer" rings hollow. Having deliberately pursued a banking relationship with a Swiss private bank to handle the millions of dollars Plaintiff made playing professional basketball, Plaintiff cannot now feign surprise that the agreements he signed with that Swiss private bank require that any disputes be litigated in Switzerland, where the bank is located.

Plaintiff is also unable to explain why he waited more than eight years after learning of his causes of action in January 2014 to file suit against Defendants here.  Plaintiff concedes his claims are time-barred, and he should not be allowed to avoid the consequences of his own inaction by invoking novel theories of "equitable tolling" not previously recognized under Illinois law.  Likewise, Plaintiff is unable to cite any authority to refute Defendants' argument that his claims of aiding and abetting and successor liability fail substantively under Swiss law – the law that Plaintiff agreed would govern and control his claims in this case.

 Plaintiff has been afforded every opportunity to demonstrate the viability of his claims. Having failed to do so yet again, the Amended Complaint should be dismissed once and for all with prejudice.

## **ARGUMENT**

## I. **THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

### A. **Plaintiff's Breach of Contract Claim Fails to Adequately Plead Personal Jurisdiction Over the Defendants**

Unable to dispute that his breach of contract claim arises from a "general banking relationship" with BSI that pre-dates the transactions at issue, Plaintiff's opposition narrowly focuses on what he characterizes as "four separate BSI contracts": (1) the Lombard Line of Credit; (2) the Charge/Declaration of Pledge; (3) the Limited POA Agreement; and (4) the St. Moritz Loan account.  (Opp. 7.)  Plaintiff argues that "BSI (not Kukoc) initiated all of these contracts" and that each of these documents was "sent to Kukoc in Illinois" and "signed [by Kukoc] in Illinois."  (*Id.*)  Contrary to these assertions, the exhibits appended to the Amended Complaint show that ***none*** of these documents was actually sent by BSI to Plaintiff in Illinois. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly

contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

*First,* the request for the Lombard Line of Credit (Exhibit 1) is a letter sent ***from*** Plaintiff ***to*** BSI in which Plaintiff requests that BSI "grant us a credit line" of $6.5 million Swiss Francs. (Dkt. 90-1.) The letter is signed by Plaintiff and addressed to BSI at an address in Lugano, Switzerland. The document shows on its face: (i) that it was sent by Kukoc (not BSI), (ii) that it was Plaintiff who "initiated" the contract by requesting a line of credit, and (iii) that the letter was sent to Switzerland(and not from Switzerland to Illinois, as Kukoc alleges).

*Second*, the Charge/Declaration of Pledge (Exhibit 2) was neither sent by BSI nor signed by Plaintiff in Illinois. (Dkt. 90-2.) As noted in Defendants' Motion to Dismiss, the Charge/Declaration of Pledge contains a fax marking at the top of the page showing that it was sent by ***BAM Enterprises*** (Banfi's entity) – not BSI. In addition, Plaintiff's signature at the bottom of the Charge/Declaration of Pledge shows that it was signed by Plaintiff ***in Lugano, Switzerland*** on May 25, 2004. In other words, Plaintiff's assertions that the Charge/Declaration of Pledge was "sent to Kukoc in Illinois" and "signed [by Kukoc] in Illinois" (Opp. 7) are contradicted by the document itself. (Dkt. 90-2.)

*Third*, the Limited POA Agreement (Exhibit 3) is a letter signed by Plaintiff and addressed to BSI in Switzerland in which Plaintiff authorizes Banfi to act as his attorney-in-fact. (Dkt. 90-3.) A copy of that letter to BSI was then faxed to Plaintiff by BAM Enterprises – as evidenced by both the fax cover sheet and the fax marking at the top of the second page, both of which identify BAM Enterprises as the sender. (*Id.*) There is simply no basis for Plaintiff's unfounded assertion that this communication was sent by BSI to Plaintiff in Illinois or that BSI in some way "initiated" the power-of-attorney granted by Plaintiff to Banfi. (Opp. 6-7.)

*Fourth*, the St. Moritz Loan account opening document (Exhibit 4)—*by Plaintiff's own admission*—was neither sent by BSI to Plaintiff in Illinois nor signed by Plaintiff in Illinois. (Dkt. 90-4.) Plaintiff alleges that on December 19, 2006, Zola created the letter attached as Exhibit 4 to the Amended Complaint, but "Zola never sent the letter to Kukoc for approval." (Dkt. 90, ¶ 68.) Rather, Plaintiff claims that his signature was "forged" and that "[he] did not see the forged letter agreement until years later, despite it being addressed to…his Highland Park address." (*Id.*) It is impossible to square these allegations with Plaintiff's subsequent assertion in his opposition brief that this December 19, 2006, letter was "sent (or hand delivered) by or on behalf of BSI to Illinois." (Opp. 7.) Moreover, Plaintiff concedes that the paperwork for the 2221 Account that was opened in connection with the St. Moritz loan (Exhibit 5) was signed when "*Banfi* flew to Chicago to meet with Kukoc," that "*Banfi* directed Kukoc to sign" the paperwork and that "*Banfi* explained" the purposes for which the funds would be used. (Dkt. 90, ¶ 73 (emphasis added); *see also* Dtk. 90-5.) There are no allegations this account opening documentation was ever sent by BSI to Plaintiff in Illinois.

Not only is Plaintiff unable to identify a single communication that BSI ever sent to Plaintiff in Illinois, but Plaintiff's opposition also fails to meaningfully address the five factors identified by this Court in its MTD Ruling which govern the jurisdictional analysis:

1. <u>Whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois</u>

It is indisputable that there are no allegations of any contract negotiations taking place in Illinois. Nor are there any allegations of any contract being "executed" by BSI in Illinois or "performed" in Illinois. At most, Plaintiff alleges that he signed certain documents in Illinois – but even if that were true (which is dubious, as noted above), that alone would be insufficient to give rise to personal jurisdiction. *See Forty-Eight Insulations Inc. v. Johns-Manville Prods.*

4

*Corp.*, 472 F. Supp. 385, 390 (N.D. Ill. 1979) ("[T]he place that the contracts were signed is a formality of contract execution which is no more significant than had the parties executed the contract by use of the mails or the telephone.").

2.      Whether payment was to be made in Illinois

Plaintiff makes no attempt to argue that any payment was made in Illinois. That omission is noteworthy because, in opposing Defendants' previous motion to dismiss, Plaintiff argued that there were "repeated" and "extensive" wire transfers to Illinois and sought extensive discovery on this subject. (Dkt. 75, p. 13.) Tellingly, Plaintiff does not now identify a single wire transfer or other payment that was ever sent by BSI to Plaintiff in Illinois.

3.      Whether the defendant was ever physically present in Illinois in connection with the contract

Plaintiff conceded in the first iteration of his complaint that "Zola and [Plaintiff] never actually met in person in Chicago for any reason." (Dkt. 1-2, ¶ 26.) The Amended Complaint does not add any new allegations that Zola or anyone from BSI ever met with Plaintiff in Illinois. While Plaintiff alleges that Banfi traveled to Chicago in 2007 and "upon information and belief" did so "at the direction and agreement of Zola," he pleads no facts to support this conclusory allegation. (Dkt. 90, ¶ 13.) In any event, Banfi's contacts with the forum cannot be imputed to BSI for purposes of personal jurisdiction (as discussed further below).

4.      Whether the Illinois plaintiff or the out of state defendant initiated the transaction

Contrary to Plaintiff's assertions, the documents appended to the Amended Complaint demonstrate that BSI did not "initiate" any of the transactions at issue. Rather, it was either Plaintiff himself or Plaintiff's own independent investment advisor, Banfi, who initiated all those transactions. Moreover, Plaintiff's opposition ignores the fact that Plaintiff had a prior banking relationship with BSI dating back to 1991 – long before any of the transactions at issue here.

5

(*Id.*, ¶¶ 43-44.)  Over the thirty-year lifespan of his dealings with BSI, Plaintiff fails to identify a single instance in which BSI ever initiated any transactions with Plaintiff in Illinois.

       5.      <u>The occurrence of telephone calls or other communications to and from Illinois</u>

Other than the documents appended to his Amended Complaint, Plaintiff's opposition fails to identify any phone calls or mailings to and from Illinois of any kind.  Plaintiff vaguely references "hundreds of *non-fraudulent* communications from BSI to Kukoc," but identifies none.  (Opp. 7) (emphasis in original).  Moreover, Plaintiff does not dispute that he completed the "Address for Notification" section in both of the account opening agreements at issue, wherein he instructed BSI to send all account-related correspondence to an address in Switzerland, not Illinois.  (Dkt. 64-1, ¶¶ 9-10, Exs. A, B); (Dkt. 90-5, p. 3.)  Having failed to submit a counter-affidavit to rebut Defendants' sworn testimony on this point, it must be "accept[ed] as true" that none of the unidentified communications that BSI allegedly "addressed to," "directed toward," or "display[ed]" Plaintiff's Illinois address were actually mailed to Illinois by BSI.  *Richter v. Instar Enters. Int'l, Inc.*, 594 F. Supp. 2d 1000, 1005 (N.D. Ill. 2009) (when assessing personal jurisdiction, "the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs").

**B.     Plaintiff's Intentional Tort Claims Fail to Adequately Plead Personal Jurisdiction Over the Defendants**

The absence of any minimum contacts with Illinois is equally fatal to Plaintiff's tort claims.  Not only is there no evidence that BSI tortiously "aimed" any communications to Plaintiff in Illinois, but there are also no allegations that the transmittal of any documents was undertaken "with the knowledge that the tortious conduct would injury Plaintiff."  Though Plaintiff faults Defendants for "quibbl[ing]" on this point (Opp. 8), the Court made clear in its prior opinion that such allegations were essential to establish jurisdiction.  (MTD Order, pp. 5-6.)

In an effort to compensate for the lack of allegations concerning Defendants' knowledge, Plaintiff argues that Defendants "ignore the allegation that Zola caused Banfi to deliver the St. Moritz Loan account opening documents to Illinois *for the express purpose of further defrauding Kukoc*." (Opp. 8) (emphasis in original). Yet, this response is puzzling because, as noted above, Plaintiff's theory of the case is that he never saw or signed any of the documents establishing the St. Moritz Loan and was unaware of the St. Moritz loan until many years later. (Dkt. 90, ¶¶ 10, 68-69.) How could BSI have knowingly sought to injure Plaintiff by sending a document that it never actually sent? Plaintiff has no answer.

Unable to muster any evidence that BSI had knowledge that its alleged conduct would injure Plaintiff in Illinois, Plaintiff asks this Court to make the logical leap that because Plaintiff had "no issues with BSI from 1991 through 2003," it is therefore "reasonable to infer" that BSI acted with intent to defraud. (Opp. 8.) This is a non-sequitur. The mere fact that Banfi's alleged fraudulent scheme began in 2004 when Zola started working with Plaintiff does not mean that Zola participated in Banfi's fraud – let alone that BSI knowingly sought to injure Plaintiff. If anything, the lack of any allegations that Zola personally benefited from any of the funds that Banfi stole makes it more "reasonable to infer" that Zola acted *without* knowledge that any of his actions would cause alleged injury to Plaintiff.

### C. Banfi's Acts Cannot be Imputed to BSI to Establish Personal Jurisdiction

Unable to identify any jurisdictional nexus between BSI and Illinois, Plaintiff's opposition doubles down on his co-conspirator theory of personal jurisdiction; however, Plaintiff's recitation of the law is both inaccurate and incomplete. It is true that the *Green* case cited in Plaintiff's opposition recognized, without applying, the co-conspirator theory of jurisdiction, premised on an understanding that "co-conspirators are each other's agents." *Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431, 441, 427 N.E.2d 1203, 1208 (1981). But in

the forty-three years since *Green* was decided, this theory of jurisdiction has been rendered obsolete under Illinois law, as modern-day decisions routinely recognize.

Indeed, the Illinois Supreme Court has held "there can be no conspiracy between a principal and an agent," undermining the very premise upon which co-conspirator jurisdiction was recognized in Illinois. *Buckner v. Atlantic Plant Maintenance*, 182 Ill. 2d 12, 24, 694 N.E. 2d 565, 571 (1998). Following *Buckner*, Illinois courts have repeatedly declined to apply the co-conspirator theory of personal jurisdiction. *Ploense v. Electrolux Home Prods.*, 377 Ill. App. 3d 1091, 1105, 882 N.E. 2d 653, 666 (Ill. App. Ct. 2007); *Knaus v. Guidry*, 389 Ill. App. 3d 804, 824, 906 N.E.2d 644, 661 (Ill. App. Ct. 2009). Nor are *Davis* and *Textor*, both decided before *Buckner*, representative of this Court's present understanding of Illinois law regarding this theory of jurisdiction. Rather, courts in the Northern District of Illinois have "almost uniformly rejected the viability of conspiracy theory of personal jurisdiction," *Batton v. Nat'l Ass'n of Realtors*, No. 21-cv-00430, 2024 U.S. Dist. LEXIS 28521, *42-43 (N.D. Ill. Feb. 20, 2024), as evidenced by the three recent decisions from this Court cited by Defendants, none of which Plaintiff chose to address. (Dkt. 98, p. 12.)

Perhaps recognizing that his co-conspirator theory of jurisdiction has been repudiated under Illinois law, Plaintiff argues, in the alternative, that Banfi was an agent of BSI. Nonsense. There are no allegations that Banfi was employed by or was otherwise an actual agent of BSI in the Amended Complaint. Nor does the Amended Complaint contain facts from which an implied agency could be reasonably inferred. Plaintiff frequently recognizes that Banfi served as ***his agent*** who acted as Plaintiff's "trusted financial advisor" and "owed Kukoc fiduciary duties." (Dkt. 90, ¶¶ 109-110.) In contrast, Plaintiff refers to Zola (not Banfi) as "BSI's employee and agent." (*Id.*, ¶ 33.) Plaintiff could not have plausibly been under the misimpression that Banfi

was an agent of BSI's because his relationship with Banfi pre-dates his banking relationship with BSI, and Plaintiff began his relationship with BSI based on Banfi's advice. (*Id.*, ¶ 43.) Where, as here, there are no facts pled to support a plausible theory of agency, the court cannot accept the theory. *Johnke v. Espinal-Quiroz*, Case Nos. 14-cv-6992, 14-cv-7364, 14-cv-7917, 2016 U.S. Dist. LEXIS 14057, *31-32 (N.D. Ill. Feb. 5, 2016).

Since Banfi's acts cannot be imputed to Defendants, personal jurisdiction must be assessed on the Defendants' alleged conduct alone and the lack of any minimum contacts by Defendants necessitates dismissal of the Amended Complaint.

## II. THE DOCTRINE OF *FORUM NON CONVENIENS* REQUIRES THAT PLAINTIFF'S CLAIMS BE LITIGATED IN SWITZERLAND

### A. The Swiss Forum Selection Clauses Are Enforceable and Control

The last time Defendants moved to dismiss based on *forum non conveniens*, Plaintiff argued that Defendants had only identified a single forum selection clause "in one of Kukoc's accounts" and failed to "present a forum selection clause that applies to . . . any accounts which may have acted as a vehicle to misappropriated funds from Kukoc." (Dkt. 76, p. 18.) Now, faced with *four separate forum selection clauses* for each of the accounts and loans at issue, Plaintiff is left to argue that these forum selection clauses are unenforceable. But Plaintiff's attempt to avoid the terms of these forum selection clauses fails and should be rejected.

Before turning to the merits of Plaintiff's enforceability arguments, it bears emphasis that Plaintiff only challenges the enforceability of *two* of the *four* forum selection clauses at issue. Plaintiff does not argue that the Swiss forum selection clauses in the account opening documents for either the Vedetta Account or 2221 Account are unenforceable (Opp. 12-13) – he merely challenges the enforceability of the clauses located in "Lombard Line of Credit paperwork and the Charge/Declaration of Pledge" agreements. (*Id.*) Therefore, the Court need not even reach

Plaintiff's enforceability arguments because there are two forum selection clauses that Plaintiff concedes are enforceable. Those forum selection clauses designate Switzerland as the exclusive venue for "all proceedings" and "all legal actions" without regard to subject matter. (Dkt. 99); (Dkt. 37); (Dkt. 90-5). Where a "forum-selection clause contains no language limiting its application to claims '[relating] to the interpretation, performance or breach' of the contract [at issue]," the clause is not "limited to claims for breach" of the particular contract in which it appears. *E.g.*, *Kochert v. Adagen Medical Int'l, Inc*., 491 F.3d 674, 679 (7th Cir. 2007).

In any event, forum selection clauses—as a general matter—are "prima facie valid," and routinely upheld, even where they designate a foreign country as the specified forum. *Schwarz v. Sellers Mkts., Inc.*, 812 F. Supp. 2d 932, 941 (N.D. Ill. 2011) (citing *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd*., 364 F.3d 884, 886 (7th Cir. 2004)). While Plaintiff seeks to invalidate two of the forum selection clauses as a result of "unequal bargaining power between a relatively unsophisticated individual consumer and a global, highly sophisticated financial institution[,]" (Opp. 13), Plaintiff's characterization of himself as an "unsophisticated consumer" strains credulity. (Dkt. 80, p. 12.) Plaintiff—who sought out a Swiss private bank to handle the millions of dollars he earned playing basketball for the Chicago Bulls—bears no resemblance to the unsophisticated litigants in the cases he cites. *E.g.*, *Sayles v. DirectSat USA, LLC*, No. 10 C 2879, 2011 U.S. Dist. LEXIS 10392, *5, (N.D. Ill. Feb. 3, 2011) (plaintiff employee, making $11.50 an hour, submitted an affidavit stating she had no time to read her offer letter containing forum selection clause prior to signing it and was not given a copy of the letter); *Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 930-31 (N.D. Ill. 2022) (plaintiff class of exotic dancers alleged they were not paid an hourly wage for their work, but instead received all their pay in the form of customer tips).

Moreover, even if Swiss law applies to determine the validity of the forum selection clauses at issue, dismissal of this action to Switzerland is still warranted. *First*, Plaintiff cites Article 114 of the Swiss Federal Act on Private International Law (the "Act") for the proposition that forum selection clauses are unenforceable. (Opp. 14.) But Article 114 only applies to contracts which "meet[] the requirements stated in Article 120 paragraph 1." Act, art. 114(1), January 7, 2022, SR 291, AS 1988 1776. Article 120 in turn applies to contracts for "goods or services of ordinary consumption intended for a consumer's ***personal…use*** and ***not connected with the consumer's professional or business activity***." *Id.*, art. 120(1) (emphasis added). But the loan documents containing the forum selection clauses Plaintiff seeks to invalidate were obtained in order to finance Plaintiff's business venture—the construction of a hotel in Switzerland. (Dkt. 90, ¶¶ 48-49, 67-68.) Thus, Articles 120 and 114 of the Act are inapplicable to the forum selection clauses at issue. *Second*, Plaintiff points to the same provisions of Section 4 of the 2007 Lugano Convention (the "Convention") he cited to in his opposition to the previous motion to dismiss. (Opp. 14-15); (Dkt. 76, pp. 13-14.) As explained in greater detail previously, Plaintiff does not qualify as a "consumer" for purposes of Section 4. (Dkt. 80, pp. 12-13.) Rather, a different Convention provision, Article 23, applies to mandate the enforcement of the forum selection clauses, which Plaintiff fails to address. (*Id*.)

## B. Switzerland Is an Available and Adequate Forum

Plaintiff does not dispute that Switzerland is an *available* forum, but argues Switzerland is not an *adequate* forum based on the theory that "Swiss law would eliminate [Plaintiff's] aiding and abetting claims and does not recognize successor liability." (Opp. 16.) However, a foreign forum is "inadequate" only where it leaves the plaintiff without *any* remedy at all. *Domanus v. Lewicki*, 645 F. Supp. 2d 697, 701-02 (N.D. Ill. 2009) (finding "plaintiffs are effectively without any remedy in Poland"); *Cleary v. Sterenbuch*, No. 01 C 5109, 2001 U.S. Dist. LEXIS 14050, *9

11

(N.D. Ill. Sept. 6, 2001) ("An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly.").[1]  The parties agree that some of Plaintiff's causes of action are actionable under Swiss law, and therefore, Plaintiff is not without "any remedy at all."

The Court's analysis should end here.  Where, as here, a *forum non conveniens* motion involves a contract containing a forum selection clause, "private interests drop out of the equation" and public interest factors "rarely" override the preselected forum.  *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 892 (7th Cir. 2018).  "[T]he practical result is that forum-selection clauses should control except in unusual cases."  *Id.*  For these reasons, the forum selection clauses are valid and should be enforced as written.

## III.  THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.  Plaintiff's Claims Are Barred by the Illinois Statute of Limitations

Plaintiff does not dispute that (i) a five-year statute of limitations applies to his four tort claims; and (ii) Plaintiff was aware of those tort claims in January 2014.  (Opp. 23.)  As such, Plaintiff's claims are time-barred because the statute of limitations began to run in January 2014 and expired in January 2019.  *Greenhill v. Vartanian*, 917 F.3d 984, 988 (7th Cir. 2019).

Recognizing that his tort claims are untimely, Plaintiff seeks to invoke the doctrine of equitable tolling.  But equitable tolling "is rarely applied" in Illinois and is only appropriate if "the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or. . . has mistakenly asserted his or her

---

[1] Plaintiff's argument that expert testimony is required to determine Swiss law is meritless. While expert testimony is a permissible means of establishing foreign law, the plain language of Rule 44.1 does not require it.  Fed. R. Civ. Proc. 44.1 ("In determining foreign law, the court ***may*** consider any relevant material or source…***whether or not submitted by a party or admissible*** under the Federal Rules of Evidence") (emphasis added).  Thus, the Court may consider the litany of cases cited by Defendants holding that Switzerland is an "adequate" forum, (Dkt. 98, p. 16), including those where the court did not weigh expert testimony on Swiss law.

rights in the wrong forum." *American Family Mut. Ins. Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶¶ 32-33 (citing *Clay v. Kuhl*, 189 Ill. 2d 603, 614, 727 N.E.2d 217, 244 (2000)). Plaintiff does not claim any of the above circumstances warrant the application of equitable tolling here. Instead, Plaintiff invites the Court to expand the boundaries of Illinois law and apply equitable tolling where he "made a good faith attempt to pursue an alternative available remedy." (Opp. 21-22.) The Court should decline Plaintiff's invitation to create new law through a radical and unprecedented expansion of the equitable tolling doctrine.

Plaintiff argues that the Illinois Supreme Court would apply equitable tolling here based on a California case decided a half-century ago and Section 13-217 of the Illinois Code. (*Id.*) But neither authority is applicable. The California case upon which Plaintiff relies involved the three-month late filing of a lawsuit in state court where plaintiffs had timely pursued their claims in federal court. *Addison v. State*, 21 Cal. 3d 313, 319 (1978). And Section 13-217 only applies where an action is dismissed "by a United States District Court" for lack of jurisdiction or improper venue or in other irrelevant circumstances. 735 ILCS 5/13-217. Here, Plaintiff did not previously assert his causes of action in a United States District Court, nor is there any indication the Swiss courts denied relief to Plaintiff on any of the grounds of jurisdiction or venue.

As for Plaintiff's breach of contract claim, the parties agree that a ten-year statute of limitations applies to Plaintiff's breach of contract claim but disagree about whether the discovery rule applies to that claim. The cases cited by Plaintiff acknowledge the validity of Defendants' argument: the statute of limitations for breach of contract claims "ordinarily accrues at the time of the breach of contract, not when a party sustains damages." *United Labs., Inc. v. Savaiano*, 2007 U.S. Dist. LEXIS 85710, *7-8 (N.D. Ill. Nov. 19, 2007); *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995). Indeed, more

recent case law reinforces that "time of breach" is the general accrual standard for contract claims under Illinois law. *Troya Int'l, Ltd. Sti. v. Bird-X, Inc.*, No. 15 C 9785, 2017 U.S. Dis. LEXIS 201223, at *26 (N.D. Ill. Dec. 7, 2017); *Hassebrock v. Ceja Corp.*, 2015 IL App (5th) 140037, ¶ 35. Plaintiff concedes that none of the breaches of contract alleged in the Amended Complaint occurred after 2010. (Dkt. 98, p. 21.) Therefore, under the ordinary accrual standard, Plaintiff's breach of contract claim is time barred as of 2020. *Jimenez v. Illinois*, No. 11-cv-4707, 2012 U.S. Dist. LEXIS 6993, *13-14 (N.D. Ill. Jan. 18, 2012) (holding that a statute-of-limitations defense is properly raised in a 12(b)(6) motion to dismiss where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense...").

Nevertheless, Plaintiff argues the discovery rule should apply instead to "delay the starting of the statute of limitations." (Opp. 21.) While courts have occasionally applied the discovery rule to breach of contract claims to avoid "harsh results" stemming from the "mechanical application of a statute of limitations in situations where an individual would be barred from suit *before* he was aware that he was injured," *Savaiano*, 2007 U.S. Dist. LEXIS 85710 at *10; *Hermitage*, 166 Ill. 2d at *77-78, here Plaintiff discovered his contract claims sometime between December 2012 and January 2014. (Opp. 21-22.) Despite having six or more years to timely file his claim in Illinois, he did not do so. This is not the sort of "harsh result" courts have applied the discovery rule to avoid.

### B. Plaintiff's Aiding and Abetting Claims Fail Under Swiss Law

Unable to find authority to counter Defendants' argument that Swiss law does not recognize his claims for aiding and abetting, Plaintiff argues that it would be premature to arrive at this conclusion pursuant to Rule 44.1. (Opp. 23.) As discussed above, "the court may consider any relevant material or source" when determining foreign law, and Plaintiff does not explain how another United States District Court's interpretation of Swiss law is an irrelevant

source for this Court to consider. (*See* supra, p. 11, n.1.) Likewise, Plaintiff's argument that the Swiss choice-of-law provisions are contrary to Illinois' "fundamental public policy" fails because Plaintiff does not identify any fundamental public policy of Illinois that the Swiss choice-of-law provisions violate. (Opp. 23.) Plaintiff's citation to *Soria* (which did not involve a choice-of-law provision) is not relevant here, as Plaintiff did not suffer a personal injury in Illinois. *Soria v. Chrysler Can., Inc*., 2011 IL App (2d) 101236, ¶ 37. And the mere fact that Swiss law does not recognize Plaintiff's aiding and abetting claims is not grounds for invalidating those choice of law provisions. *See Miyano Machinery USA v. Zonar*, No. 92 C 2385, 1994 U.S. Dist. LEXIS 6772, at *9 (N.D. Ill. May 19, 1994); *see also* Dkt. 80, pp. 17-18.

### C.     Plaintiff Fails to Adequately Plead Successor Liability Against EFG

Plaintiff does not dispute that Illinois courts apply the "most significant contacts" test for purposes of a successor liability choice of law analysis. *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc*., No. 06 C 3183, 2007 U.S. Dist. LEXIS 80130, at *7 (N.D. Ill. Oct. 30, 2007). Nor does Plaintiff dispute that Switzerland has the "most significant contacts" to the alleged merger or acquisition of EFG and BSI. Instead, Plaintiff acknowledges that Swiss law does not recognize successor liability and, for that reason, argues Illinois courts would decline to apply Swiss law on public policy grounds. (Opp. 24.) But, again, Plaintiff fails to identify any authority providing that successor liability is a strong or fundamental policy of Illinois. Because Plaintiff does not dispute that Switzerland has the most significant contacts with the alleged transaction or that Swiss law does not recognize a claim for successor liability, Plaintiff's claims against EFG fail and should be dismissed.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Amended Complaint be dismissed in its entirety with prejudice.

Dated: October 18, 2024

Respectfully submitted,

DEFENDANTS BSI SA, incorrectly named
as BANCA SVIZZERA ITALIANA, and
EFG INTERNATIONAL AG

By:  */s/ Jonathan S. Quinn*
      One of Their Attorneys

Jonathan S. Quinn (jquinn@nge.com)
Andrew G. May (amay@nge.com)
Benjamin Boris (bboris@nge.com)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street
Chicago, IL  60602-3801
(312) 269-8000

## <u>CERTIFICATE OF SERVICE</u>

Jonathan S. Quinn, an attorney, certifies that on October 18, 2024, he caused a copy of the ***Defendants' Reply Brief in Further Support of Their Motion to Dismiss the Amended Complaint*** to be filed via this Court's CM/ECF System, which will send notice of this electronic filing to all counsel of record receiving electronic notification.

*/s/ Jonathan S. Quinn*