UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TONI KUKOC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | Case No. 23-CV-00261 |
| v. ) | |
| ) | |
| BANCA SVIZZERA ITALIANA and ) | Judge Sharon Johnson Coleman |
| EFG INTERNATIONAL AG ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Toni Kukoc ("Plaintiff") filed his First Amended Complaint, bringing the same four claims against Defendants Banca Svizerra Italiana[1] ("Defendant BSI") and Defendant EFG International AG ("Defendant EFG") (together "Defendants). Plaintiff alleges the following against Defendant BSI: (1) aiding and abetting fraud; (2) civil conspiracy; (3) aiding and abetting civil theft; (4) aiding and abetting breach of fiduciary duty; and (5) breach of contract. Plaintiff brings the same claims against Defendant EFG via successor liability. Defendants move to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) and *forum non conveniens*. The Court heard oral argument on the motion on March 20, 2025. For the reasons below, the Court grants in part and denies in part Defendants' motion to dismiss [97].

---

[1] Defendants contend that the listed name is the incorrect name of the entity. For the purpose of resolving this motion, the Court will refer to the name of the entity as referenced in the case caption.

1

**BACKGROUND**

While the Court presumes the parties are familiar with the pertinent facts underlying this litigation, as outlined in the Court's prior order granting Defendants' motion to dismiss, the Court will describe facts relevant to the pending motion as pled in Plaintiff' First Amended Complaint.

Plaintiff complains that non-parties, Paolo Banfi ("Banfi"), Plaintiff's former financial advisor, and Paolo Zola ("Zola"), an employee of Defendant BSI during the relevant period and Plaintiff's personal banker, conspired to defraud Plaintiff of over $11,000,000 USD. Plaintiff claims the purported scheme began in 2004 when Banfi and Zola advised Plaintiff to open a line of credit at Defendant BSI to fund the construction, and ultimate purchase, of a hotel near St. Moritz, Switzerland. Defendant BSI sent Plaintiff two documents, the Lombard Line of Credit and the Charge/Declaration of Pledge, to open a line of credit for the hotel to Plaintiff's home in Highland Park, Illinois. Plaintiff executed the documents and returned them to Zola/Banfi on or about May 25, 2004. The Charge/Declaration of Pledge required Defendant BSI to provide Plaintiff with written notice to his Highland Park home if a default on the Lombard Line of Credit occurred. Despite Banfi and Zola causing several defaults, Plaintiff contends he never received any written notice from Defendant BSI.

On or about June 1, 2004, Zola and Banfi sent a limited power of attorney agreement ("Limited POA Agreement") to Plaintiff's Highland Park home. The Limited POA Agreement required Defendant BSI to obtain written approval from the construction company and Banfi before Defendant BSI distributed money from the Lombard Line of Credit. Plaintiff alleges that Zola caused Defendant BSI to breach the Limited POA Agreement because Zola allowed Banfi to transfer funds from the Lombard Line of Credit more than 300 times based solely on Banfi's verbal requests rather than the necessary written approvals.

In an effort to continue the fraud, Plaintiff contends that Defendant BSI and Zola addressed letters and messages to Plaintiff's Highland Park home in an effort to lull Plaintiff into a false sense

2

of security as the communications did not contain information about the illicit activities. Plaintiff alleges he received over 100 instances of communications, including wire requests, that list his Highland Park address. Some of these communications involve payments to U.S. financial entities. Upon discovery of the fraudulent scheme, Plaintiff initiated debt enforcement proceedings in Switzerland on January 22, 2014. In April 2021, Plaintiff learned he would not receive relief from his debt proceedings in Switzerland which led him to file this lawsuit in August 2022.

On March 29, 2024, the Court granted Defendants' motion to dismiss pursuant to 12(b)(2) without prejudice. In its ruling, the Court determined that Plaintiff failed to allege sufficient facts to show that Defendants purposefully availed themselves of Illinois. On May 20, 2024, Plaintiff filed his First Amended Complaint. Defendants filed the pending motion to dismiss on July 19, 2024. Like the prior motion to dismiss, Defendants argue that the First Amended Complaint must be dismissed for lack of personal jurisdiction, failure to state a claim, and for *forum non conveniens*.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pled factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).

A motion to dismiss pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *Curry v. Revolution Lab'ys, LLC,* 949 F.3d 385, 392 (7th Cir. 2020). Although the plaintiff bears the burden of establishing personal jurisdiction, when ruling on a Rule 12(b)(2) motion to dismiss where defendant only submits written materials, a plaintiff need only make a prima facie showing of personal jurisdiction. *Matlin v. Spin Master Corp.,* 921 F.3d 701, 705 (7th Cir. 2019). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Curry,* 949 F.3d at 393 (citation omitted).

**DISCUSSION**

  I.  *Forum Non Conveniens*

Defendants move to dismiss Plaintiff's First Amended Complaint pursuant to the Switzerland forum selection clause in the relevant contracts, arguing that Illinois is not the appropriate forum in which to bring this lawsuit. The Court will first consider whether the Switzerland forum selection clause would "render[] any examination of the defendant's contacts with the forum state" as well as the sufficiency of the claims unnecessary. *See LKQ Corp v. Thrasher,* 785 F.Supp.2d 737, 742 (N.D. Ill. May 23, 2011) (Castillo, J.)

Illinois law holds that a forum selection clause is "prima facie valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances." *Jackson v. Payday Fin., LLC,* 764 F.3d 765, 777 (7th Cir. 2014) (internal citations omitted). The Supreme Court has recognized three situations where a forum selection clause is unreasonable: (1) the clause was a result of "fraud, undue influence, or overweening bargaining power;" (2) "the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court;" or (3) the enforcement of the clause "would contravene a strong public policy of the forum in which the suit is brought, declared by statute of judicial decision." *Bonny v.*

*Society of Lloyd's,* 3 F.3d 156, 160 (7th Cir. 1993) (internal citations and quotations omitted). A forum selection clause contained in boilerplate language suggests unequal bargaining power and greatly reduces the significance of the clause. *Jackson,* 764 F.3d at 777.

Defendants argue that all contracts have forum selection clauses that mandate litigation in Switzerland. Relevant here, Plaintiff argues that the Swiss forum selection clauses in the Lombard Line of Credit and Charge/Declaration of Pledge Agreement are unenforceable because the forum selection clause is the result of unequal bargaining power between an unsophisticated consumer, like Plaintiff, and large banks with great influence with Switzerland agencies. The Court agrees.

As pled, the facts state that Defendant BSI sent the Lombard Line of Credit and Charge/Declaration of Pledge Agreement, which contained the forum selection clause, to Plaintiff for execution, suggesting that Plaintiff did not negotiate the terms of the agreements, including the Swiss forum selection clause. Defendants argue that Plaintiff's background as a professional basketball player, coupled with the substantial amount of money he sought to invest, undermines his classification as an "unsophisticated consumer." However, Defendants fail to cite any caselaw that holds that an individual's prior occupation, much less his financial status, is a factor in determining whether someone is considered a "sophisticated businessperson." To the contrary, the facts demonstrate that Plaintiff relied on the financial advice from his financial advisor in investing his money with Defendant BSI; he did not seek out this investment opportunity on his own volition. There are no facts suggesting that being a former professional athlete gave Plaintiff the financial knowledge needed to make smart investments or negotiate agreements like a "sophisticated businessperson."

Importantly, the Lombard Line and Credit and Charge/Declaration of Pledge Agreement, which Plaintiff alleges were breached as part of the perpetrated fraud, contain boilerplate language in the Swiss forum selection clause. This is underlined by the forum selection clause mandating

5

Switzerland as the appropriate forum for lawsuits brought by Plaintiff, but permitting Defendant BSI to bring the lawsuit at Plaintiff's domicile "or any other competent jurisdiction." This one-sided clause reeks of unequal bargaining power in an effort to take advantage of unsophisticated businesspersons, such as Plaintiff. The Court, therefore, finds the forum selection clause unreasonable and unenforceable.

## II. Rule 12(b)(6) Motion to Dismiss[2]

Defendants argue that Plaintiff's First Amended Complaint should be dismissed under 12(b)(6) because his claims are time-barred, his tort claims fail under Swiss law, and Plaintiff fails to adequately plead successor liability against Defendant EFG.

### a. *Statute of Limitations*

Defendants claim Plaintiff's breach of contract claim is barred by the ten-year statute of limitations, which expired in 2020 as Defendants contend the last breach occurred in 2010. Defendants also argue that Plaintiff's tort law claims are barred by the five-year statute of limitations, which expired on January 22, 2019, five years after Plaintiff instituted the debt enforcement proceedings in Switzerland.

A party can raise a statute of limitations defense in a motion to dismiss if "the allegations in the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009) (internal citations omitted). Illinois law recognizes that for breach of contract claims and tort claims arising out of a contractual relationship, as they do here, the causes of action "ordinarily accrue[] at the time of the breach of contract, not when a party sustains damages." *Hermitage Corp v. Contractors Adjustment Co.,* 166 Ill.2d 72, 77 (1995).

---

[2] As the statute of limitations is dispositive of Plaintiff's tort claims, the Court will address Defendants' 12(b)(6) motion first.

6

As to the breach of contract claim, Plaintiff requests that the Court apply the discovery rule. Courts have applied the discovery rule where literal application of the statute of limitations would result in harsh consequences. *Hermitage Corp.,* 166 Ill.2d at 77. The discovery rule "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Id.* at 77. The First Amended Complaint alleges that Defendant BSI "had an ongoing banking and contractual relationship with [Plaintiff], and through its ongoing acts of concealment continued this relationship through at least [] December 2012." (Dkt. 90, at ¶ 93). Further, Plaintiff alleges that he submitted requests for debt proceedings in Switzerland on January 22, 2014. (*Id.* at ¶ 91). Based on the facts alleged, the Court finds that the discovery rule applies and the statute of limitations for Plaintiff's breach of contract claim did not accrue until, at the earliest, December 2012 and, at the latest, January 22, 2014. Plaintiff initially filed this action on August 23, 2022. Accordingly, under either the December 2012 or January 2014 date, the Court finds that the breach of contract claim is not barred by the statute of limitations.

Plaintiff's tort claims, however, tell a different story. Plaintiff requests that the Court apply the equitable tolling doctrine during the period when Plaintiff requested debt enforcement proceedings in Switzerland, beginning in January 2014 to April 2021, when Plaintiff learned he could not receive relief through the Swiss proceedings.

Illinois courts have applied equitable tolling of the statute of limitations where (1) defendant has actively misled the plaintiff; (2) plaintiff was prevented from asserting his rights in an extraordinary way; or (3) plaintiff has mistakenly asserted his rights in the wrong forum. *American Family Mut. Ins. Co. v. Plunkett,* 2014 IL App (1st) 131631, at ¶ 32. Rather than arguing that any of these circumstances applies to Plaintiff's lawsuit, Plaintiff offers a 1978 California state case where the court applied equitable tolling when plaintiff was presented with several legal remedies and pursued one legal remedy

7

in good faith to lessen the extent of his injuries within the statute of limitations period. *Addison v. State of California,* 21 Cal.3d 313, 317, 578 P.2d 941, 943 (1978). The Court finds this case totally inapplicable. To start, the *Addison* holding is from 1978 from a California state court, whereas the issues presented in this case are in front of a federal district court in Illinois adjudicating a motion in 2025. Additionally, the doctrine of equitable tolling is "rarely applied" in Illinois, whereas California has taken a more expansive approach, applying the doctrine "much more liberally." *American Family Mut. Ins. Co.,* 2014 IL App (1st) 131631, at ¶ 37. The First Amended Complaint does not plead any facts that would overcome the application of the statute of limitations and Plaintiff does not argue that any of the identified situations where Illinois courts have applied the equitable tolling doctrine are relevant here. Accordingly, the Court dismisses Plaintiff's tort law claims.[3]

### b. Successor Liability

In arguing that Plaintiff's claims against Defendant EFG via successor liability fail, Defendants contend that there is a conflict of law issue between Swiss law and Illinois law concerning successor liability, which requires the Court to determine whether Swiss law or Illinois law applies to Plaintiff's claims against Defendant EFG. Defendants argue that Swiss law applies and because Swiss law does not recognize successor liability, Plaintiff's claims against Defendant EFG fail. Defendants also contend that if the Court concludes that Illinois law applies, Plaintiff's claims still fail on its merits because Plaintiff fails to plead facts that show Defendant EFG assumed the liabilities of Defendant BSI through the merger of the entities.

A court exercising diversity jurisdiction applies the choice of law rules for the state in which the court sits, here, Illinois. *W Side Salvage Inc., RSUI Indem. Co.,* 878 F.3d 219, 223 (7th Cir. 2017). However, before engaging in a choice of law analysis, the party seeking such determination must show

---

[3] As Plaintiff's tort law claims are dismissed, the Court denies Defendant's argument that Swiss law applies to the tort claims as moot.

the existence of an outcome-determinative conflict that depends on the application of law. *West Side Salvage, Inc.,* 878 F.3d at 223. Defendants argue that Swiss law and Illinois law conflict with one another because Swiss law does not recognize successor liability while Illinois law does. Defendants' cite *CBF Industria De Gusa S/A v. AMCI Holdings, Inc.,* 650 F. Supp. 3d 228 (S.D.N.Y. 2023) as support. In *CBF Industria De Gusa S/A,* the Southern District of New York, at summary judgment, held that Swiss law does not recognize successor liability based off plaintiff's counsel's in-court representation that Swiss law does not recognize successor liability based on information provided by plaintiff's expert. *CBF Industria De Gusa S/A,* 650 F.Supp.3d at 250. The Court does not find this holding applicable. Not only was the determination in *CBF Industria* made at the summary judgment stage, it was also based on one party's unnamed experts in a non-binding jurisdiction. This case is still at the beginning stages; indeed, there has been no expert discovery on Swiss law to allow this Court to make such a determination. Accordingly, the Court finds there is no conflict of law at this time.

Under Illinois law, "a successor entity does not assume the liability of its predecessor," *Moriarty v. Svec,* 164 F.3d 323, 327 (7th Cir. 1998) (internal citations omitted) except "(1) [w]here there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for fraudulent purpose of escaping liability for the seller's obligation." *Vernon v. Schuster,* 179 Ill.2d 338, 345 (Ill. 1997). In arguing that Plaintiff's successor liability claims fail under Illinois law, Defendants focus only on the second exception, without addressing the applicability of the other three exceptions. In other words, Defendants have failed to show that the merger between Defendant BSI and Defendant EFG is not subject to *any* of the exceptions to the general rule. Therefore, the Court finds that Defendants have failed to prove that Plaintiff's successor liability claims fails under Illinois law.

### III. Rule 12(b)(2) Motion to Dismiss

In resolving a Rule 12(b)(2) motion to dismiss, the Court must determine whether it has personal jurisdiction over Defendants. To do so, the Court must resolve whether Defendants have adequate "minimum contacts" with the forum state, Illinois, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010) (internal citations omitted). Personal jurisdiction may be specific or general. *Id.* at 701-02.

Here, Plaintiff seeks to establish specific jurisdiction. In the absence of a forum selection clause, specific jurisdiction exists where (1) the defendant's minimum contacts with the forum state demonstrate it "purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state;" (2) plaintiff's injury "arises out of or relates to the defendant's forum-related activities;" and (3) "the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice." *Kukoc v. Banca Svizzer[a] Italiana,* No. 23-cv-00261, 2024 WL 1363636, at *2 (N.D. Ill. March 29, 2024) (Coleman, J.) (internal citations and quotations omitted) ("*Kukoc I*"). In determining whether the first prong is satisfied, that Defendants "purposefully availed" themselves of the forum state, the Court must consider the types of claims at issue. *Felland v. Clifton,* 682 F.3d 665, 674 (7th Cir. 2012).

The remaining claim in Plaintiff's First Amended Complaint is his breach of contract claim. The parties focus on the first prong of the specific personal jurisdiction inquiry: purposeful availment in their respective arguments. To determine whether purposeful availment is met in a breach of contract claim, the Court considers "(1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or out of state defendant initiated the transaction; [and] (5) [] the occurrence of telephone calls or other communications to and from Illinois." *Kukoc I,* 2024 WL

10

1363636, at *3 (internal citations omitted). Importantly, the purposeful availment analysis should focus on the parties' conduct during the contract formation. *See Clifton,* 682 F.3d 665, 674 (7th Cir. 2012).

Here, the contracts that form the basis of Plaintiff's breach of contract claim concern authorization protocols related to Plaintiff's general banking agreements with Defendants as well as the Charge/Declaration of Pledge Agreement and Limited POA Agreement with respect to the Lombard Line of Credit. As Plaintiff's general allegations regarding the authorization protocols does not differ from his prior allegations, which were previously dismissed by the Court (*see Kukoc I,* 2024 WL 1363636, at *3), the Court will focus on the Charge/Declaration of Pledge Agreement and Limited POA Agreement in its purposeful availment analysis for the breach of contract claim.

    a. *Charge/Declaration of Pledge Agreement*

Plaintiff attaches the Charge/Declaration of Pledge Agreement to his First Amended Complaint. Defendants argue that the Charge/Declaration of Pledge Agreement does not satisfy the purposeful availment requirement because the document was sent by BAM Enterprises based on the fax marking at the top of the document and that the document states that Plaintiff signed the document in Switzerland, not Illinois. At oral argument, Plaintiff contended that the reference to BAM Enterprises on the fax line did not negate Plaintiff's allegation that Defendant BSI sent Plaintiff the Charge/Declaration of Pledge Agreement and that Plaintiff sent the executed copy back. Rather, Plaintiff argued that the fax line merely showed that the document, at some point in time, was faxed to BAM Enterprises.

In the First Amended Complaint, Plaintiff alleges that Defendants suggested that Plaintiff open a line of credit at Defendant BSI to fund construction of the hotel. (Dkt. 90, at ¶ 2). Thereafter, Plaintiff contends that Defendants sent the Charge/Declaration of Pledge Agreement to Plaintiff's home in the Chicago Area. (Dkt. 90, at ¶ 3) and Zola, on behalf of Defendant BSI, sent the

11

Charge/Declaration of Pledge Agreement to Plaintiff for his signature. (*Id.* at ¶ 51). Plaintiff contends that he signed the document in Highland Park, Illinois on or about May 25, 2004 and, thereafter, transmitted it back to Zola and Banfi via fax and DHL courier. (*Id.*) These actions satisfy the first prong of the purposeful availment analysis. Plaintiff further alleges that he "regularly transferred money to and from the United States to his accounts at [Defendant] BSI," (Dkt. 90, at ¶ 37), that Defendant BSI "addressed letters and messages to [Plaintiff] in Illinois," (*Id.* at ¶ 38), and that there are "over 100 instances of communications… produced by Defendants that display [Plaintiff's] residence or address in Highland Park, Illinois. Some of these communications involve payments to U.S. entities." (*Id.* at ¶ 39.) Such allegations satisfy the second and fifth prong of the analysis. While the third and fourth prongs of the purposeful availment analysis are a closer call, the Court finds that based on the totality of the circumstances, when viewing the facts in the light most favorable to the Plaintiff, Defendants purposefully availed themselves of the forum through the Charge/Declaration of Pledge Agreement.

### b. *Limited POA Agreement*

Plaintiff likewise attaches the Limited POA Agreement to his First Amended Complaint. Like the Charge/Declaration of Pledge Agreement, Defendants contend that the presence of the name BAM Enterprise in the fax line of the document belies the conclusion that the communication was initiated by Defendant BSI and that Defendant BSI sent the document to Plaintiff in Illinois. During oral argument, Defendants quoted an employee affidavit which stated that Plaintiff requested that all mailings went to his Switzerland address, not Illinois, in support of its argument that no communications were sent to Plaintiff's residence in Highland Park throughout the banking relationship. Plaintiff responded that the purported affidavit was not submitted in support of either of Defendants' motions to dismiss, but rather in a motion to compel briefing in front of the magistrate judge. Plaintiff argued that his request that mailings be sent to Plaintiff's Switzerland address was

made for the 1991 account opening agreement when Plaintiff was playing basketball in Croatia, not Chicago. Plaintiff contended that the terms of his 1991 account mailings is not relevant to this contract, which, like the Charge/Declaration of Pledge, specifically state that the communications, including notification of default, should be sent to Plaintiff's last known address of record (which was his Highland Park address).

In the First Amended Complaint, Plaintiff alleges that, shortly after executing the Charge/Declaration of Pledge Agreement, Zola faxed the Limited POA Agreement to Plaintiff in Highland Park, representing that the document would prevent Defendant BSI from disbursing the Lombard Line of Credit without the agreement of the construction supervisor of the hotel project and Banfi's signature. (Dkt. 90, at ¶ 52). This satisfies the fourth prong of the purposeful availment analysis. Plaintiff signed the Limited POA Agreement on June 1, 2024 in Highland Park. (*Id.*) This satisfies the second prong of the purposeful availment analysis. Plaintiff alleges the same claims concerning the transfer of money and communications for the Limited POA Agreement as he does for the Charge/Declaration of Pledge Agreement. *Id.* at ¶¶ 38, 39. These allegations satisfy the fifth prong of the purposeful availment analysis. While the third prong is more disputed, like the Charge/Declaration of Pledge Agreement, the Court finds that purposeful availment is satisfied for the Limited POA Agreement. Accordingly, the Court can exercise personal jurisdiction over Defendants for the breach of contract claim.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss [97]. The Court directs Plaintiff to file a Second Amended Complaint to comply with this Order within 30 days of the date of this Order.

**IT IS SO ORDERED.**

Date: 6/11/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge